UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

              v.

JAVIER MARTIN-ARTAJO and JULIEN
G. GROUT,

                    Defendants.

No. 13 Civ. 5677 (GBD)

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW CONSENTING TO THE APPLICATION OF
THE U.S. ATTORNEY'S OFFICE FOR A PARTIAL STAY OF DISCOVERY**

SECURITIES AND EXCHANGE COMMISSION

Joseph Boryshansky
Peter Altenbach
Joshua Brodsky
Daniel Michael

Brookfield Place
200 Vesey Street
New York, NY 10281
Tel: (212) 336-1100

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................1

ARGUMENT .........................................................................................................3

I.      A PARTIAL STAY IS WARRANTED BECAUSE DEFENDANTS ARE
        FUGITIVES FROM JUSTICE AND THUS DISENTITLED TO DISCOVERY
        THAT MIGHT COMPROMISE THE RELATED CRIMINAL CASE ............................3

        A.      The Fugitive Disentitlement Doctrine ....................................................4

        B.      A Stay Is Warranted Under the Fugitive
                Disentitlement Doctrine ........................................................................5

        C.      The Appropriate Relief Under the Doctrine is Either a Full
                or Partial Stay ......................................................................................9

II.     A PARTIAL STAY IS ALSO WARRANTED UNDER THE ANALYSIS
        APPLIED TO NON-FUGITIVE DEFENDANTS .........................................................9

        A.      Overlap of Issues ................................................................................10

        B.      Status of the Case................................................................................11

        C.      Plaintiff's Interests .............................................................................11

        D.      Defendants' Interests ..........................................................................12

        E.      The Court's Interests ...........................................................................13

        F.      The Public Interest ..............................................................................13

CONCLUSION......................................................................................................15

## TABLE OF AUTHORITIES

### Cases

BCCI Holdings, S.A. v. Pharaon,
  No. 94 Civ. 3058, 1995 WL 489426, at *4 (S.D.N.Y. Aug. 11, 1995)............................passim

Bd. of Governors of Fed. Reserve Sys. v. Mahfouz,
  No 92 Civ. 5096, 1992 WL 183556 (S.D.N.Y. July 23, 1992) ........................................passim

Bd. of Governors of Fed. Reserve Sys. v. Pharaon,
  140 F.R.D. 634 (S.D.N.Y. 1991) ...............................................................................................6

Benevolence Int'l Found., Inc. v. Ashcroft,
  200 F. Supp. 2d 935 (N.D. Ill. 2002) ...............................................................................10, 11

Booth v. Spjute,
  No. 07 Civ. 609, 2009 WL 1458268 (E.D. Cal. May 26, 2009)...............................................10

Collazos v. U.S.,
  368 F.3d 190 (2d Cir. 2004) ......................................................................................................8

Degen v. U.S.,
  517 U.S. 820 (1996)..........................................................................................................passim

Empire Blue Cross & Blue Shield v. Finkelstein,
  111 F.3d 278 (2d Cir. 1997) ..................................................................................................4, 8

Garrett v. Cassity,
  No. 09 Civ. 1252, 2011 WL 2689359 (E.D. Mo. July 11, 2011) ............................................10

Louis Vuitton Malletier S.A. v. LY USA, Inc.,
  676 F.3d 83 (2d Cir. 2012) ........................................................................................................9

Morris v. Am. Fed'n of State, County & Mun. Emps.,
  No. 99 Civ. 5125, 2001 WL 123886 (S.D.N.Y. Feb. 9, 2001)................................................14

SEC v. Boock,
  No. 09 Civ. 8261, 2010 WL 2398918 (S.D.N.Y. June 15, 2010)............................................12

SEC v. Chestman,
  861 F.2d 49 (2d Cir. 1988) ......................................................................................................12

SEC v. Doody,
  186 F. Supp. 2d 379 (S.D.N.Y. 2002).....................................................................................14

SEC v. Gordon,
  822 F. Supp. 2d 1144 (N.D. Okla. 2011) ................................................................................13

SEC v. Lee,
    No. 08 Civ. 9961 (GBD) (S.D.N.Y.)...................................................................14

SEC v. Lorin,
    No. 90 Civ. 7461, 1991 WL 155767 (S.D.N.Y. Aug. 7, 1991) ................................14

SEC v. Nicholas,
    569 F. Supp. 2d 1065 (C.D. Cal. 2008) ...................................................................13

SEC v. Oakford Corp.,
    181 F.R.D. 269 (S.D.N.Y. 1998) ..............................................................................12

SEC v. One or More Unknown Purchasers of Sec. of Global Indus.,
    No. 11 Civ. 6500, 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) ............................11

SEC v. Rajaratnam,
    622 F.3d 159 (2d Cir. 2010) .....................................................................................13

SEC v. Razmilovic,
    738 F.3d 14 (2d Cir. 2013) .............................................................................. 10, 12

SEC v. Roman,
    No. 94 Civ. 3621, 1996 WL 34146 (S.D.N.Y. Jan. 30, 1996).........................passim

SEC v. Saad,
    384 F. Supp. 2d 692 (S.D.N.Y. 2005) ......................................................................12

SEC v. Saltsman,
    No. 07 Civ. 4370, 2008 WL 360995 (E.D.N.Y. Feb. 11, 2008)..............................12

SEC v. Treadway,
    No. 04 Civ. 3464, 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) ................. 11, 12, 14

SEC. v. Winburn,
    No. 94 Civ. 342, 1999 WL 151413 (D.C. Cir. Feb. 3, 1999) ....................................7

U.S. v. $45,940,
    739 F.2d 792 (2d Cir. 1984) ......................................................................................6

U.S. v. All Funds on Deposit at Citigroup Acc. No. 600-00338,
    617 F. Supp. 2d 103 (S.D.N.Y. 2007).....................................................................5, 7

U.S. v. Awadalla,
    357 F.3d 243 (2d Cir. 2004) ......................................................................................7

U.S. v. Chung Cheng Yeh,
    No. 10 Cr. 231, 2013 WL 2146572 (N.D. Ca. May 15, 2013) ...............................5, 6

iv

U.S. v. Eng,
    951 F.2d 461 (2d Cir. 1991) ........................................................................ 4, 6, 7, 8

U.S. v. Gayatrinath,
    No. 02 Cr. 673, 2011 WL 873154 (Mar. 11, 2011) .......................................... 6, 7

U.S. v. Hernandez,
    No. 09 Cr. 625, 2010 WL 2652495 (S.D.N.Y. June 30, 2010) ................................ 7

U.S. v. Kashamu,
    656 F. Supp. 2d 863, 867 (N.D. Ill. 2009) ............................................................ 8

U.S. v. Mann,
    No. 00 Cr. 632, 2003 WL 1213288 (S.D.N.Y. Mar. 17, 2003) ................................ 6

## **Statutes**

Section 14 of the Civil Asset Forfeiture Reform Act of 2000,
    28 U.S.C. § 2466 ............................................................................................ 10

## **Other Authorities**

Treaty on Extradition between U.S. and Spain, May 29, 1970 .................................... 2

The SEC respectfully submits this brief consenting to the motion for a partial stay of discovery of the U.S. Attorney's Office for the Southern District of New York ("USAO").

## PRELIMINARY STATEMENT

Defendants Martin-Artajo and Grout, who are fugitives from justice, seek to circumvent the criminal discovery process by obtaining a level of discovery that even criminal defendants who play by the rules and face the criminal charges against them typically do not get—all while protecting their own criminal defense by indefinitely staying their depositions and remaining abroad.  And they ask to burden the resources of the Court and the SEC with their overreaching discovery demands, while remaining safe from any adverse judgments that may issue based on this discovery.  As fugitives flouting the authority of the United States Courts, they are entitled to none of this.  Accordingly, and for the further reasons set forth below, the partial stay sought by the USAO is warranted.

## BACKGROUND

The SEC filed this action on August 14, 2013 alleging that Defendants engaged in a scheme to fraudulently conceal mark-to-market trading losses.  (Complaint ¶¶ 1-5, 17, 26-57, Docket Entry ("DE") 1.)  Five days earlier, on August 9, 2013, the USAO filed criminal complaints against Defendants alleging the same scheme, and a grand jury returned indictments on September 16, 2013.  (U.S. v. Martin-Artajo & Grout, No. 13 Cr. 707, DE 5.)

Both before and during the events alleged in the indictments and SEC complaint, Defendants resided and worked in the United Kingdom.  (Grout's Answer ¶ 13, DE 25; Martin-Artajo's Answer ¶ 12, DE 26; Transcript of Jan. 8, 2014 Initial Conference ("Tr.") at 22:13-15.)  In August 2013, around the time that press reports disclosed that U.S. authorities were seeking his arrest, Martin-Artajo travelled to Spain, a country where the prospects of his extradition to

the United States are less favorable,[1] and he currently is fighting extradition. After learning of the USAO's and SEC's investigations, Grout left the United Kingdom for France, which, as his counsel put it, "does not extradite [its] own citizens."[2] Neither Defendant has returned to the United Kingdom or indicated that they would appear to face the criminal charges.

Martin-Artajo accepted service of the SEC's complaint. (Aff. of Service, DE 11.) Grout did not agree to accept service, forcing the SEC to seek to serve him instead through the Clerk of Court (Cert. of Mailing, DE 10) and the Hague Service Convention. Attempts by the French authorities to serve Grout under the Hague Convention have, to date, been unsuccessful.

While both Defendants have evaded the jurisdiction of the U.S. courts, they nonetheless seek discovery that goes far beyond what criminal defendants who are not fugitives typically get. Defendants want to "be permitted to take up to 40 depositions of fact witnesses" and obtain "full document discovery" including witness statements. (Joint Initial Report & Discovery Plan at 2-3, DE 27.) As to their own depositions, however, they want those indefinitely stayed until the criminal case against them (which they apparently have no intention of appearing in) is resolved. (Id.) And despite requests for confirmation, Defendants have not indicated if they will respond to the SEC's document demands.

The USAO's motion seeks to stay depositions, interrogatories, admission requests, and production of testimony transcripts or witness statements until resolution of the criminal

---

[1]   Compare Treaty on Extradition between U.S. and Spain, May 29, 1970, Art. IV ("Neither of the Contracting Parties shall be bound to deliver up its own nationals") (available at http://photos.state.gov/libraries/spain/164311/tratados_bilaterales_2013/Extradition_TIAS_7136.pdf), with U.S. Embassy, London, U.K., FAQs on the US-UK Extradition Relationship (stating that under current treaty U.K. has refused only 10 of 130 extradition requests by U.S.) (available at http://london.usembassy.gov/gb176.html).

[2]   Reuters, Aug. 28, 2013, "JPMorgan's former 'London Whale' supervisor arrested in Spain" (available at http://www.reuters.com/article/2013/08/27/us-jpmorgan-whale-idUSBRE97Q0D620130827).

proceeding.  At the initial conference, Martin-Artajo's counsel acknowledged the need to conduct discovery "without doing any damage or undue interference to the government's case in their parallel proceeding."  (Tr. at 19:12-17.)  And Grout's counsel's asserted that "[w]ith respect to depositions . . . I think it is just premature at this point."  (Id. at 22:24-25.)

To date, no discovery has been exchanged or taken.  Initially, in December 2013, after learning that the USAO would not object to the SEC producing certain documents, the SEC informed Defendants that it would be willing to produce such materials if Defendants would similarly respond to the SEC's requests.  At the initial conference, however, the Court intimated that if the SEC were to produce any documents, that might undercut a request for a discovery stay.  (Tr. at 15:9-21.)  As the SEC stated at the conference, the Supreme Court's decision in Degen v. United States, 517 U.S. 820 (1996) indicates that limited document discovery does not prejudice the USAO's request for a partial discovery stay, and the SEC initially sought an arrangement consistent with this precedent.  However, since the Court has suggested that producing any documents might prejudice the stay application, the SEC has not produced—and will not produce—any materials until the Court rules on the stay application.

## ARGUMENT

### I. A PARTIAL STAY IS WARRANTED BECAUSE DEFENDANTS ARE FUGITIVES FROM JUSTICE AND THUS DISENTITLED TO DISCOVERY THAT MIGHT COMPROMISE THE RELATED CRIMINAL CASE

Courts in this District and elsewhere have limited, or altogether barred, civil discovery under the fugitive disentitlement doctrine where a defendant fails to appear in a parallel criminal case—regardless of whether he was in the United States when he committed his crimes or when he was indicted.  The limited discovery stay the USAO seeks here is appropriate under this doctrine and in the interests of justice.

A.    <u>The Fugitive Disentitlement Doctrine</u>

The fugitive disentitlement doctrine "prevent[s] a fugitive from justice from using the 'resources of the civil legal system while disregarding its lawful orders in a related criminal action.'" <u>SEC v. Roman</u>, No. 94 Civ. 3621, 1996 WL 34146, at *1 (S.D.N.Y. Jan. 30, 1996) (quoting <u>U.S. v. Eng</u>, 951 F.2d 461, 464 (2d Cir. 1991), <u>abrogated on other grounds by</u> <u>Degen</u>, 517 U.S. 820 (1996)).  The doctrine reflects the principle "that one who flaunts the legal system is not entitled to benefit from it," <u>id.</u>, and serves to preclude a defendant "from enjoying the benefits of the legal system while simultaneously flouting that system by fleeing the jurisdiction, or by 'constructively fleeing' by resisting extradition or refusing to appear at his arraignment." <u>Bd. of Governors of Fed. Reserve Sys. v. Mahfouz</u>, No 92 Civ. 5096, 1992 WL 183556, at *1 (S.D.N.Y. July 23, 1992).  The doctrine serves four rationales: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flight from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." <u>Empire Blue Cross & Blue Shield v. Finkelstein</u>, 111 F.3d 278, 280 (2d Cir. 1997).

"The Second Circuit has applied [the fugitive disentitlement doctrine] both to criminal cases, and to civil cases related to a criminal case." <u>Mahfouz</u>, 1992 WL 183556, at *1; <u>see also</u> <u>Finkelstein</u>, 111 F.3d at 280 (doctrine applies to "variety of civil cases").  The doctrine applies regardless of "whether the civil action was initiated by the fugitive or by another party." <u>Roman</u>, 1996 WL 34146, at *1; <u>accord</u> <u>Eng</u>, 951 F.2d at 466 ("Who initiates the proceedings is irrelevant[.]").  Moreover, the doctrine applies even where the civil and related criminal actions are not pending before the same judge or court. <u>BCCI Holdings, S.A. v. Pharaon</u>, No. 94 Civ. 3058, 1995 WL 489426, at *4 (S.D.N.Y. Aug. 11, 1995) (applying doctrine until defendant "appears before the various courts in which the indictments are pending").

Judges in this District and beyond have "specifically applied [the fugitive disentitlement doctrine] to deny discovery to a defendant in a civil action who was a fugitive in a related criminal action." Roman, 1996 WL 34146, at *1 (barring discovery "while [defendants] are fugitives"); accord BCCI, 1995 WL 489426, at *4 (defendant "is barred from conducting any discovery . . . until he relinquishes his fugitive status"); Mahfouz, 1992 WL 183556, at *3 (same); U.S. v. Chung Cheng Yeh, No. 10 Cr. 231, 2013 WL 2146572, at *1-3 (N.D. Cal. May 15, 2013) (fugitive could not "utilize the resources of the court . . . to obtain . . . discovery"). As Judge Wood has explained, disentitling a fugitive from obtaining discovery prevents him from gaming the judicial system:

> [A] person who flouts the judicial system should not be able to enjoy access to the system when he decides he would like it or that it would be to his advantage. . . . [P]ermitting defendant unbridled discovery in the civil action would potentially provide defendant with greater strategic position in the criminal litigation against him.

Mahfouz, 1992 WL 183556, at *3. Faced with a similar attempt by a fugitive to obtain discovery that "could threaten the integrity of the ongoing criminal cases against him," Judge Mukasey observed that "[d]isentitlement was designed to prevent just such abuse of legal processes." BCCI, 1995 WL 489426, at *4.

**B.     A Stay Is Warranted Under the Fugitive Disentitlement Doctrine**

The doctrine plainly applies here. This civil case is based on the same allegations as those in the related criminal action.[3] U.S. v. All Funds on Deposit at Citigroup Acct. 600-00338, 617 F. Supp. 2d 103, 124 (S.D.N.Y. 2007) (civil action "directly related to criminal case" for purposes of disentitlement "because both arise out of the same alleged fraud scheme").

---

[3]   Compare U.S. v. Martin-Artajo & Grout, No. 13 Cr. 707, Indictment ¶ 17, DE 5 (alleging that Defendants "manipulated and inflated the value of position markings in the SCP . . . in order to hide the true extent of significant losses in that trading portfolio") with SEC v. Martin-Artajo & Grout, No. 13 Civ. 5677, Complaint ¶ 2, DE 1 (alleging that Defendants "fraudulently mark[ed] the SCP's investments to conceal the true extent of the . . . losses").

Further, both Defendants are fugitives from justice.  When a defendant "refuses to appear at his arraignment, he has constructively fled the United States and is thus a fugitive."  Eng, 951 F.2d at 466.  Consistent with this principle, litigants have repeatedly been held to be fugitives by merely failing to appear in a related criminal case, even if they were indicted or committed their crimes while abroad.[4]

Here, Grout and Martin-Artajo are plainly fugitives because they have known since August 2013 of the pending criminal charges against them but have "ma[d]e no effort to return to the United States to face charges."  U.S. v. Gayatrinath, No. 02 Cr. 673, 2011 WL 873154, at *2 (S.D.N.Y. Mar. 11, 2011) (defendant with "no legal impediment to . . . voluntary" appearance in U.S. was fugitive); Roman, 1996 WL 34146, at *1 ("For the purpose of the disentitlement doctrine, anyone who knowingly fails to appear for an arraignment is a fugitive.") (citing U.S. v. $45,940, 739 F.2d 792, 796 (2d Cir. 1984)); Kashamu, 656 F. Supp. 2d at 867 ("Courts define the term 'fugitive' as someone who seeks to evade prosecution by either actively avoiding the authorities, or remaining in a geographic location that is out of the authorities' reach.").  Indeed, after learning that they could be charged, Defendants traveled to countries with less favorable

---

[4]   See, e.g., U.S. v. Mann, No. 00 Cr. 632, 2003 WL 1213288, at *2-3 (S.D.N.Y. Mar. 17, 2003) (longtime Mexican resident was fugitive "as a matter of law" because he "failed to return to the jurisdiction to face the charges"); BCCI, 1995 WL 489426, at *2 (Saudi Arabian citizen was fugitive because he "had notice of the indictments against him, yet has continued to resist appearing"); Bd. of Governors of Fed. Reserve Sys. v. Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (defendant who "has not surrendered [after bench warrant issued] must therefore be characterized as a fugitive"); Mahfouz, 1992 WL 183556, at *2 (defendant who neither fled jurisdiction nor committed crimes in U.S. was fugitive because he "refused to appear at his arraignment"); U.S. v. Kashamu, 656 F. Supp. 2d 863, 867 (N.D. Ill. 2009) (defendant who lived and committed crimes abroad was fugitive because he was "aware of the charges against him and is purposefully absenting himself from the United States to avoid arrest and arraignment'"); Chung Cheng Yeh, 2013 WL 2146572, at *1-3 (Taiwanese defendant who "has never come to the United States" was fugitive because he failed to appear for arraignment in U.S.).

extradition prospects, see Roman, 1996 WL 34146, at *1 (defendant who fled after learning of investigation was fugitive), and have since evinced no intent of ever facing the criminal charges.[5]

Furthermore, as to Martin-Artajo, "[s]o long as [he] continues to resist extradition, he . . . remains a fugitive." Eng, 951 F.2d at 466; Gayatrinath, 2011 WL 873154, at *3 (defendant who "resisted the Government's efforts to extradite him" was a fugitive); Mahfouz, 1992 WL 183556, at *1 (defendant "'constructively flee[s]' by resisting extradition"). It is irrelevant that Martin-Artajo might be "asserting valid rights" under Spanish law, as his counsel contended. (Tr. at 19:2-4.) The Second Circuit made clear that a defendant "may elect to oppose extradition, but that choice has negative consequences [under the fugitive disentitlement doctrine] that he may not evade." Eng, 951 F.2d at 462.

Since it is plain that in all senses Defendants are fugitives, the fugitive disentitlement doctrine should appropriately be applied to them. "'[I]n civil cases, the most persuasive justifications for disentitlement are . . . (1) the inability to enforce a decision by the [district] court, and (2) the need to avoid prejudice to the other party resulting from the defendant's fugitive status.'" U.S. v. Awadalla, 357 F.3d 243, 246 (2d Cir. 2004). In addition, courts consider whether defendants "demonstrated disrespect for the legal process." All Funds on Deposit at Citigroup, 617 F. Supp. 2d at 126. All justifications warrant the requested stay.

First, since they appear to have no intention of subjecting themselves to the jurisdiction of U.S. courts, Defendants' absence renders any adverse judgment against them in this case unenforceable. See SEC v. Winburn, No. 94 Civ. 342, 1999 WL 151413, at *1 (D.C. Cir. Feb. 3,

---

[5]   In any event, Defendants' fugitive status does not turn on whether they fled the U.K. to avoid extradition, but on whether they knowingly failed to appear in the criminal case, which they did. See Eng, 951 F.2d at 464 (one who "refuses to appear at his arraignment . . . has constructively fled the United States and is thus a fugitive"); Roman, 1996 WL 34146, at *1 (fugitive is "anyone who knowingly fails to appear for an arraignment"); U.S. v. Hernandez, No. 09 Cr. 625, 2010 WL 2652495, at *5 (S.D.N.Y. June 30, 2010) ("[H]ow the person became a 'fugitive' is not necessarily relevant because the focus is on the intent to return and appear before the court.").

1999) (disentitling defendant whose "absence from the country renders the judgment against him unenforceable"); see also Kashamu, 656 F. Supp. 2d at 866.  As the Second Circuit put it, there is "no reason to entertain the cause of one who will respond to a judgment only if it is favorable." Finkelstein, 111 F.3d at 280-82 (fact that "absence rendered . . . judgment against [defendants] unenforceable' . . . weigh[ed] heavily in favor of disentitlement").

The second justification—the prejudice caused by a defendant's fugitive status—further supports disentitlement.  While asking that their depositions be indefinitely stayed, Defendants seek expansive discovery that will severely strain the Court's and SEC's resources and compromise the criminal prosecution.  Although the SEC typically accepts this burden when bringing an action, here Defendants have ensured that all costs run only one way.  Under their proposal, they would get the benefit of circumventing the criminal discovery process and, should the discovery they seek support a finding of liability, leave the Court and the SEC with no more than the prospect of an unenforceable judgment.

Third, by avoiding the orders of this Court in the criminal case, Defendants have demonstrated disrespect for the legal process.  Accordingly, their selective use of the resources and jurisdiction of the U.S. courts should be rejected.  See Roman, 1996 WL 34146, at *1 ("One who has removed himself from the jurisdiction of the courts has no claim upon them which would require the delivery of the files of the United States government to his hiding place."). To allow them to circumvent the criminal discovery process would not only prejudice the criminal prosecution, but also lead to "the unseemly spectacle recognized by the Supreme Court in Degen and [the Second Circuit] in Eng of a criminal defendant who . . . attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him [his interests] while carefully shielding himself from the possibility of a penal sanction." Collazos v. U.S., 368 F.3d 190, 200 (2d Cir. 2004).  The requested stay will avert this perversion of justice.

### C.    The Proper Relief Under the Doctrine Is Either a Full or Partial Stay

Courts routinely disentitle a defendant from obtaining any discovery until they appear in the criminal case.  See, e.g., Roman, 1996 WL 34146, at *1; BCCI, 1995 WL 489426, at *4; Mahfouz, 1992 WL 183556, at *3.  As discussed above, there is ample support for such disentitlement here.  In its stay application, however, the USAO has indicated that allowing certain document discovery would not prejudice the criminal case.  Because such discovery would not impose a significant strain on the SEC's resources, and because it would allow one portion of this case to proceed while we wait for Defendants to face the criminal charges, the SEC would not be significantly prejudiced by a partial stay that permits such discovery to go forward.  However, since the fugitive disentitlement doctrine is based on the courts' "inherent authority to protect their proceedings and judgments," Degen, 517 U.S. at 823, it is ultimately within the Court's discretion to determine whether to order a full or partial stay in this case, either of which would be appropriate.

## II.    A PARTIAL STAY IS ALSO WARRANTED UNDER THE ANALYSIS APPLIED TO NON-FUGITIVE DEFENDANTS

Even if the Court were to decline to rely on fugitive disentitlement, the requested stay is still warranted.  "A district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so."  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012).  District courts balance the following factors in deciding whether to stay a civil case:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Id. at 99.

Defendants' absence is relevant to the consideration of these factors.  In <u>Degen</u>, a civil forfeiture case against a criminal defendant located abroad, the Supreme Court found that disentitling him from <u>any</u> participation in the civil case and granting immediate judgment over his property to the government was unjustified given the Constitution's protection of rights to property.  517 U.S. at 822, 829.[6]  But, the Supreme Court noted, the district court in the civil case was still faced with the disquieting prospect "of a criminal defendant reposing [abroad], beyond the reach of our criminal courts, while at the same time mailing papers to the court in a related civil action and expecting them to be honored."  <u>Id.</u> at 828.  To address this, the Court held, district courts can—even without relying on fugitive disentitlement—use their "authority to manage discovery in a civil suit," including their power to issue "orders limiting discovery," to prevent the absent defendant "from using civil discovery to evade restrictions on discovery in criminal cases."[7]  <u>Id.</u> at 826-27.  <u>Degen</u> and the above factors merit the USAO's requested stay.

## A.    Overlap of Issues

This factor favors a stay as the USAO's indictment and the SEC's complaint charge the same defendants for the same misconduct and plead securities fraud and books and records

---

[6]    In 2000, Congress superseded <u>Degen</u>'s ruling as to civil forfeiture actions by authorizing district courts to impose absolute disentitlement in such actions.  <u>See</u> 28 U.S.C. § 2466.  In other contexts, as when discovery stays are sought, courts still rely on <u>Degen</u>.  <u>See, e.g.</u>, <u>SEC v. Razmilovic</u>, 738 F.3d 14, 26-27 (2d Cir. 2013) (citing <u>Degen</u> in affirming default judgment); <u>Garrett v. Cassity</u>, No. 09 Civ. 1252, 2011 WL 2689359 (E.D. Mo. July 11, 2011) (granting stay); <u>Benevolence Int'l Found., Inc. v. Ashcroft</u>, 200 F. Supp. 2d 935 (N.D. Ill. 2002) (same); <u>Booth v. Spjute</u>, No. 07 Civ. 609, 2009 WL 1458268 (E.D. Cal. May 26, 2009) (continuing stay).

[7]    Significantly, this authority is properly used regardless of whether the absent defendant satisfies every definition of the word "fugitive."  <u>Degen</u>, at 823, 828 (district court's means of limiting discovery appropriate "[w]ithout resolving whether [the defendant] is a fugitive in all the senses of the word debated by the parties").  Thus, while Defendants contended at the initial conference that they were not fugitives (Tr. at 18:13–19:11, 22:6–24:4)—an argument the case law rejects, <u>see</u> Point I.B, <u>supra</u>—Degen supports the USAO's stay application whether or not the Court chooses to resolve the question of whether Defendants are fugitives.

violations.  "The issues raised in the Civil Case therefore are substantially, if not entirely, encompassed within the larger-scale Criminal Case."  SEC v. One or More Unknown Purchasers of Sec. of Global Indus., No. 11 Civ. 6500, 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (grating stay in SEC case notwithstanding non-fugitive defendant's opposition).

### B.     Status of the Case

This factor also favors a stay.  "[W]here, as here, formal criminal charges have been brought, there is a greater risk that limitations on criminal discovery will be circumvented by the liberal discovery permitted in civil litigation."  SEC v. Treadway, No. 04 Civ. 3464, 2005 WL 713826, at *3 (S.D.N.Y. Mar. 30, 2005).  Also, "[t]he civil proceedings are just beginning, and no discovery has taken place."  Benevolence Int'l, 200 F. Supp. 2d at 940.  It is precisely in circumstances like these, where a defendant is absent from the criminal case and the proceedings have only begun, that the Supreme Court in Degen reminded district courts that they can use their authority to stop the defendant from "gain[ing] an improper advantage in the criminal matter, prying into the prosecution's case in a manner not otherwise permitted."  571 U.S. at 826.

### C.     Plaintiff's Interests

The SEC's interests favor the requested stay.  While the SEC usually has an interest in expeditiously obtaining relief, here Defendants have undercut that interest.  Since Defendants have for months flouted the jurisdiction of U.S. courts, there is no reason to believe that they suddenly would comply with the Court's judgment once the litigation is over.  See Roman, 1996 WL 34146, at *1-2 (SEC obtained discovery stay because defendants were fugitives abroad).  Their brazen request—sent from the safety of foreign shores—to have the Court grant them leave to proceed with dozens of depositions (except their own) reveals their true goal:  to use civil discovery as a tool for their criminal defense, which is precisely what the Supreme Court urged district courts to prevent by "limiting discovery."  See Degen, 571 U.S. at 826.

## D.     **Defendants' Interests**

A denial of the stay application would not further any interests of defendants that courts typically recognize.  First, courts have observed that defendants have an "important interest in moving to trial swiftly."  <u>Treadway</u>, 2005 WL 713826, at *3.  But here Defendants control the length of any delay.  They can move swiftly to trial in both cases by facing the criminal charges.

Second, courts recognize the concern that a defendant might "face[] the choice of being prejudiced in the civil litigation if he asserts his Fifth Amendment rights or prejudiced in the criminal litigation if those rights are waived."  <u>SEC v. Boock</u>, No. 09 Civ. 8261, 2010 WL 2398918, at *1 (S.D.N.Y. June 15, 2010).  But a stay addresses this concern.  <u>Cf. SEC v. Chestman</u>, 861 F.2d 49, 50 (2d Cir. 1988).  Indeed, litigants genuinely concerned about this prejudice have consented to discovery stays.  <u>See, e.g.</u>, <u>SEC v. Saltsman</u>, No. 07 Civ. 4370, 2008 WL 360995, at *1 (E.D.N.Y. Feb. 11, 2008); <u>SEC v. Oakford Corp.</u>, 181 F.R.D. 269, 270 (S.D.N.Y. 1998).  By contrast, Defendants' request that all discovery except their depositions go forward has nothing to do with Fifth Amendment concerns (which the USAO's stay application does not implicate), but instead reveals their desire for a tactical advantage in the criminal proceeding.[8]  It also has nothing to do with a speedy or efficient resolution of this case since many of the witnesses Defendants wish to depose will need to testify a second time after Defendants offer their side of the story at deposition.

---

[8]     Even those judges who do not favor absolute stays have not gone as far as Defendants propose here.  <u>See SEC v. Saad</u>, 384 F. Supp. 2d 692, 693-94 (S.D.N.Y. 2005) (staying depositions of defendants and others who may invoke Fifth Amendment but noting that "there might be other witnesses whose depositions should not be conducted before the criminal trial."). If this Court allowed Defendants the broad discovery they seek, which would be unprecedented, the SEC will seek leave under Fed. R. Civ. P. 26(d)(2) to take their depositions immediately in New York.  This would resolve any mystery as to whether Defendants ever plan to face the charges against them or instead intend to leave the SEC with an unenforceable judgment.  <u>See SEC v. Razmilovic</u>, 738 F.3d 14, 20-22, 24-27 (2d Cir. 2013) (affirming district court orders that required defendant who left U.K. to Sweden to forestall extradition to appear in New York for deposition and then granted default judgment to the SEC after he failed to appear).

### E.      The Court's Interests

The requested stay promotes the Court's interests in efficiency, protecting the integrity of

its rulings, promoting respect for its inherent authority, and enforcing its judgment.  Resolution

of the criminal case may resolve this civil action and, in doing so, obviate the need for the Court

to decide the flurry of discovery disputes that invariably stem from a large fraud case.[9]  See SEC

v. Gordon, 822 F. Supp. 2d 1144, 1151 (N.D. Okla. 2011) ("staying the civil case 'would avoid a

duplication of efforts and a waste of judicial time and resources'").  Additionally, a stay avoids

the risk of inconsistent rulings in the two proceedings.  See SEC v. Rajaratnam, 622 F.3d 159,

186 (2d Cir. 2010) (reversing discovery ruling, noting that "[t]he more prudent course may . . .

have been to adjourn the civil trial until after the criminal trial").  As for the Court's interest in

addressing conduct that flouts its authority, the Supreme Court has recognized the substantial

"need to redress the indignity visited upon the District Court by [a defendant's] absence."

Degen, 517 U.S. at 828.  The Supreme Court also has reminded district courts of their "inherent

authority to protect their proceedings and judgments," especially where, as here, the defendant is

absent and the judgment against him "may be impossible to enforce."  Id. at 824.

### F.      The Public Interest

"The public has an interest in ensuring the criminal discovery process is not subverted."

SEC v. Nicholas, 569 F. Supp. 2d 1065, 1071-72 (C.D. Cal. 2008) (granting discovery stay over

---

[9]     Indeed, even before discovery has commenced, Defendants already have advised the Court
that they "believe that the Court may need to resolve discovery disagreements that have arisen
regarding: (1) production by the SEC of witness statements provided to the SEC either directly
by JP Morgan or its counsel, in writing or by reading, and which the SEC has indicated it may
withhold; (2) production by the SEC of transcripts obtained by it from foreign investigative
agencies and which formed part of the basis for bringing this action; and (3) production by the
SEC of various documents received by it from JP Morgan or its counsel and which are being
withheld under a claim of bank examiner privilege."  (Joint Initial Report & Discovery Plan at 3,
DE 27); Tr. at 19:24–21:11 (Martin-Artajo's counsel "foreshadow[ing]" certain discovery issues
that he "anticipate[d]  . . . would be the subject of a future contested hearing").

non-fugitive defendants' opposition) (quoting Morris v. Am. Fed'n of State, County & Mun.
Emps., No. 99 Civ. 5125, 2001 WL 123886, at *2 (S.D.N.Y. Feb. 9, 2001)).  Defendants' request
to depose "all relevant witnesses" (Joint Initial Report & Discovery Plan at 2, DE 27) makes
plain that they "seek to depose individuals who are likely to be witnesses in the criminal trial,
thus further tipping the government's hand and, in effect, giving [Defendants] an extra
opportunity to cross-examine the government's witnesses." SEC v. Doody, 186 F. Supp. 2d 379,
381 (S.D.N.Y. 2002).  In Degen, the Supreme Court observed that limiting discovery is
particularly warranted where, as here, a risk exists that a defendant might compromise a criminal
case by obtaining discovery in a related civil case.  See 517 U.S. at 826.

The public interest is not lessened by the possibility that only Martin-Artajo may be
extradited.  As this Court has ruled, it is appropriate to stay a case as to all civil defendants to
avoid prejudicing a criminal case as to one of them.  See SEC v. Lee, No. 08 Civ. 9961, Order
Granting Stay (Apr. 20, 2010), DE 49.  Other courts have similarly stayed a civil case against
one defendant to avoid compromising a criminal case against another defendant involved in
the same misconduct because, inter alia, it would be "naïve to suppose that [the civil defendant]
is not a stalking horse for [the criminal defendant]." Doody, 186 F. Supp. 2d at 381; see also
Treadway, 2005 WL 713826, at *4 ("counsel for [the criminal defendants] could certainly
monitor the depositions . . . and use it to the advantage of the defense in the criminal case").
This is especially the case where the criminal indictment and SEC complaint allege close
collaboration between Defendants in the fraud and where they appear to operate under a common
interest agreement.

The public also usually has an interest in speedy resolution of an SEC action, see SEC v.
Lorin, No. 90 Civ. 7461, 1991 WL 155767, at *1 (S.D.N.Y. Aug. 7, 1991), but Defendants have
left the Court powerless to promote this interest by arrogating to themselves the ability to dictate

the length of delay in this case.  Allowing them full discovery would not change this.  Even if all discovery were to proceed with the exception of Defendants' depositions, this case would remain in limbo indefinitely because their Fifth Amendment concerns would persist so long as they choose to evade their criminal prosecution.  And no time or resources would be saved because the SEC would likely have to depose witnesses once again after it obtains Defendants' account of relevant events.

The SEC, however, recognizes that there must at some point be a resolution to this case.  Therefore, we are prepared to provide the Court with periodic updates on the status of extradition efforts.  If extradition against Martin-Artajo is unsuccessful and efforts to obtain Grout's participation in the criminal case are hopeless, then it may be appropriate for the parties, the USAO, and the Court to consider if the stay should be lifted or other steps be undertaken.

## CONCLUSION

For the foregoing reasons, the SEC consents to the USAO's motion for a partial discovery stay pending resolution of the parallel criminal case.

Dated:  February 7, 2014
        New York, New York

SECURITIES AND EXCHANGE COMMISSION

 /s/ Joseph Borysansky

Joseph Boryshansky
Peter Altenbach
Joshua Brodsky
Daniel Michael

Brookfield Place
200 Vesey Street
New York, NY 10281
Tel: (212) 336-1100

15