**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

   -against-

JAVIER MARTIN-ARTAJO and
JULIEN GROUT

              Defendants.

No.  13 Civ. 5677 (GBD)

**DEFENDANT JAVIER MARTIN-ARTAJO'S MEMORANDUM OF LAW IN
OPPOSITION TO THE MOTION OF THE U.S. ATTORNEY TO INTERVENE AND
FOR A STAY OF DISCOVERY**

FULBRIGHT & JAWORSKI LLP
William J. Leone, admitted *pro hac vice*
1200 17th Street
Suite 1000
Denver, CO 80202-5835

Richard C. Smith, admitted *pro hac vice*
Stephen M. McNabb, admitted *pro hac vice*
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Felice B. Galant
666 Fifth Avenue
New York, NY 10103-3198

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF ARGUMENT ................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 5

ARGUMENT ........................................................................................................ 7

    I.      THE U.S. ATTORNEY HAS FAILED TO MAKE THE REQUISITE
          SHOWING FOR A STAY ................................................................ 7

          A.     A Denial of the Motion Would Not Prejudice the Criminal Case ............ 8

          B.     The SEC Will Not Be Prejudiced by Proceeding with Discovery ........... 13

          C.     Mr. Martin-Artajo Should be Allowed to Engage in Each Type of
                  Discovery That the Government Seeks to Block ..................................... 14

          D.     The Jencks Act Does Not Support a Stay ............................................... 18

    II.     THE FUGITIVE DISENTITLEMENT DOCTRINE IS INAPPLICABLE ....... 19

    III.   THE REQUEST FOR A STAY IS OVERBROAD AND PREMATURE ......... 25

CONCLUSION ..................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   No. 11-MD-2221, 2012 U.S. Dist. LEXIS 118036 (E.D.N.Y. July 13, 2012) ........................17

*BCCI Holdings v. Pharaon*,
   No. 94 Civ. 3058, 1995 WL489426 (S.D.N.Y. Aug. 11, 1995) ............................................24

*Bd. of Governors of the Fed. Res. Sys. v. Mahfouz*,
   1992 U.S. Dist. LEXIS 10866 (S.D.N.Y. Jul. 23, 1992) ....................................................22, 23

*Degen v. United States*,
   517 U.S. 820 (1996)...........................................................................20, 21, 22, 23, 24

*Diversified Indus. v. Meredith*,
   572 F.2d 596 (8th Cir. 1978) ................................................................................17

*Empire Blue Cross & Blue Shield v. Finkelstein*,
   111 F.3d 278 (2d Cir. 1997)...............................................................................20, 21

*FDIC v. Pharaon*,
   178 F.3d 1159 (11th Cir. 1999) ...............................................................................21

*Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*,
   11 Civ. 6202 (DLC), 2014 U.S. Dist. LEXIS 26130 (S.D.N.Y. Feb. 28, 2014) ...................15

*In re John Doe Corp.*,
   675 F.2d 482 (2d Cir. 1982)...................................................................................16

*In re Johns-Manville/Asbestosis Cases*,
   93 F.R.D. 853 (N.D. Ill. 1982)................................................................................16

*Kaiser v. Stewart*,
   No. 96-6643, 1997 U.S. Dist. LEXIS 1377 (E.D. Pa. Feb. 6, 1997) ......................................25

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1995) ..............................................................................7, 14

*Lasala v. Needham & Co.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005)..................................................................................7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012)..............................................................................8, 19

*Motorola Credit Corp. v. Uzan*,
   115 Fed. Appx. 473 (2d Cir. 2004) .......................................................................20

*Nakash v. United States*,
    708 F. Supp. 1354 (S.D.N.Y. 1988)................................................................10, 11

*Ortega-Rodriguez v. United States*,
    507 U.S. 234 (1993)...........................................................................................20

*Permian Corp. v. United States*,
    665 F.2d 1214 (D.C. Cir. 1981).........................................................................17

*SEC v. ARVCO Capital Research, LLC*,
    No. 12-CV-221, 2013 U.S. Dist. LEXIS 100035 (D. Nev. July 16, 2013),
    *aff'd, SEC v. ARVCO Capital Research, LLC*, No. 12-CV-221, 2014 U.S.
    Dist. LEXIS 2141 (D. Nev. Jan. 6, 2014) (D.J. Du)..........................................13

*SEC v. Chakrapani*,
    Nos. 09 Civ. 325, 1043, 2010 U.S. Dist. LEXIS 65337 (S.D.N.Y. June 29,
    2010) ......................................................................................8, 11, 12, 15

*SEC v. Cioffi*,
    No. 08 Civ. 2457, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ......................8, 9, 10, 13, 25

*SEC v. Doody*,
    186 F. Supp. 2d 379 (S.D.N.Y. 2002)................................................................19

*SEC v. Downe*,
    No. 92 Civ. 4092, 1993 U.S. Dist. LEXIS 753 (S.D.N.Y. Jan. 26, 1993)..........11

*SEC v. Dresser Indus. Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980)...........................................................................7

*SEC v. Fraser*,
    No. 09-CV-443, 2009 U.S. Dist. LEXIS 50379 (D. Ariz. May 29, 2009) ...........7, 8

*SEC v. Gupta*,
    No. 11 Civ. 7566 2011 U.S. Dist. LEXIS 142125 (S.D.N.Y. Nov. 29, 2011) .......15

*SEC v. Healthsouth Corp*,
    261 F. Supp. 2d 1298 (N.D. Ala. 2003)..............................................................14

*SEC v. Kornman*,
    No. 04-CV-1803, 2005 U.S. Dist. LEXIS 48585 (N.D. Tex. Dec. 20, 2005),
    *aff'd, SEC v. Kornman*, No. 04-CV-1803, 2006 U.S. Dist. LEXIS 2107 (N.D.
    Tex. Jan 18, 2006) (D.J. Lindsay)......................................................................12

*SEC v. Nadel*,
    11-CV-215, 2013 U.S. Dist. LEXIS 36251 (E.D.N.Y. March 15, 2013)..............16

*SEC v. Oakford Corp.*,
   181 F.R.D. 269 (S.D.N.Y. 1998) ...............................................................12, 25

*SEC v. One or More Unknown Purchasers of Sec. of Global Indus., Ltd.*,
   No. 11 Civ. 6500, 2012 U.S. Dist. LEXIS 162772 (S.D.N.Y. Nov. 9, 2012) ........................10

*SEC v. Razmilovic*,
   738 F.3d 14 (2d Cir. 2013)...............................................................22

*SEC v. Roman*,
   1996 U.S. Dist. LEXIS 860 (S.D.N.Y. Jan. 30, 1996)................................22, 23, 24

*SEC v. Saad*,
   229 F.R.D. 90 (S.D.N.Y. 2005) ...................................................9, 13, 14, 15, 18

*SEC v. Sandifur*,
   No. 05-CV-1631, 2006 U.S. Dist. LEXIS 89428 (W.D. Wash. Dec. 11, 2006) ..........9, 13, 14

*SEC v. Sentinel Management Group, Inc.*,
   No. 07 C 4684, 2010 U.S. Dist. LEXIS 127355 (N.D. Ill. Dec. 2, 2010) ..............................16

*SEC v. Stanard*,
   06 Civ. 7736, 2007 U.S. Dist. LEXIS 46432 (S.D.N.Y. June 26, 2007)................................18

*SEC v. Thrasher*,
   No. 92-CV-6987, 1995 U.S. Dist. LEXIS 1355 (S.D.N.Y. Feb. 7, 1995)..............................16

*Smith v. United States*,
   94 U.S. 97 (1876).........................................................................20

*Southeast Recovery Grp., LLC v. BP America, Inc.*,
   278 F.R.D. 162 (E.D. La. 2012)..........................................................14

*In re Steinhardt Partners, L.P.*,
   9 F.3d 230 (2d Cir. 1993)...............................................................16

*Thomas v. Arn*,
   474 U.S. 140 (1985)....................................................................20

*Torres v. New York*,
   976 F. Supp. 249 (S.D.N.Y. 1997) ......................................................21

*United States v. All Funds on Deposit*,
   767 F. Supp. 36 (E.D.N.Y. 1991) .........................................................9

*United States v. Carneglia*,
   256 F.R.D. 366 (E.D.N.Y. 2009).....................................................15, 16

*United States v. Eng,*
  951 F.2d 461 (2d Cir. 1991) .......................................................................... 22, 23

*United States v. FINRA,*
  607 F. Supp. 2d 391 (E.D.N.Y. 2009) ...................................................................... 9

*United States v. Kordel,*
  397 U.S. 1 (1970) .......................................................................................................... 7

*United States v. Little Al,*
  712 F.2d 133 (5th Cir. 1983) ..................................................................................... 7

*United States v. Morgan,*
  254 F.3d 424 (2d Cir. 2001) ..................................................................................... 21

*United States v. Trevino,*
  556 F. 2d 1265 (5th Cir. 1977) ............................................................................... 19

*United States v. Weidman,*
  572 F. 2d 1199 (7th Cir. 1978) ............................................................................... 19

*Volmar Distribs., Inc. v. New York Post Co.,*
  152 F.R.D. 36 (S.D.N.Y. 1993) ................................................................................. 8

## RULES AND STATUTES

Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 2466 (2012) ............................ 21, 23, 24

Fed. R. Civ. P. 26 ................................................................................................. 14, 15

Fed. R. Civ. P. 37 ......................................................................................................... 21

Fed. R. Civ. P. 41 ......................................................................................................... 22

Fed. R. Civ. P. 41(b) ................................................................................................... 21

Fed. R. Crim. P. 16 ..................................................................................................... 11

Fed. R. Evid. 804(b)(1) ............................................................................................... 15

Jencks Act, 18 U.S.C. § 3500 ........................................................................... 2, 18, 19

## OTHER AUTHORITIES

Ben Protess & Raphael Minder, *Former JPMorgan Trader Surrenders in Spain in
  'London Whale' Case,* DealBook (Aug. 27, 2013),
  http://dealbook.nytimes.com/2013/08/27/spanish-authorities-arrest-former-
  jpmorgan-employee/. ................................................................................................. 5

Emily Flitter, *U.S. Charges Two Ex-JPMorgan Bankers over 'London Whale' Loss*, Reuters, Aug. 14, 2013 ....................................................................................5

Jonathan Stempel, *U.S. Indicts Ex-traders in JPMorgan 'London Whale' Scandal*, Reuters, Sep. 16, 2013, http://www.reuters.com/article/2013/09/16/us-jpmorgan-whale-indictment-idUSBRE98F13K20130916 .......................................................5

Defendant Javier Martin-Artajo respectfully submits this memorandum of law in opposition to the motion of the U.S. Attorney for the Southern District of New York ("U.S. Attorney") to intervene and for a stay of discovery.

## SUMMARY OF ARGUMENT

Before a single deposition has been noticed, or a single document produced, the U.S. Attorney seeks a wide-ranging stay of discovery without the requisite showing. A party to a civil proceeding is entitled to seek discovery of all relevant information that is either admissible in evidence or that might lead to admissible evidence. Such discovery includes all relevant documents, testimony of relevant witnesses, and information that could be reasonably obtained from a party through its employees.

The U.S. Attorney seeks to stay all depositions, and the production of all interview notes and testimony transcripts of all persons "whom the Government asserts may be called as a witness in the criminal prosecution, until the conclusion of the parallel criminal case." (Gov't Mem. 1, Docket No. 30). The U.S. Attorney does not name those potential witnesses but instead asks for a blanket discovery stay. There is no basis in law or fact for this stay. The stay sought would also be deeply prejudicial to Mr. Martin-Artajo's ability to defend himself in this case.

This has become standard operating procedure for the U.S. Government. The Securities and Exchange Commission ("SEC"), and the Department of Justice ("DOJ", collectively, the "Government") jointly investigate a case, utilizing the SEC's or another agency's investigative powers when the grand jury is inconvenient, and using the grand jury when the SEC's processes are insufficient. Then, on the same day, the SEC and DOJ announce civil and criminal charges with great fanfare. In the civil suit, the SEC seeks to force the defendant to either assert his or her right against self-incrimination and endure an adverse inference, or waive his or her Fifth Amendment rights. The SEC seeks to use all its powers of civil discovery to gather information

for the criminal case, since the grand jury can no longer be used for that purpose, while the DOJ attempts to prevent the defendant from doing likewise on the ostensible ground that such discovery would allow the defendant to obtain material defined by 18 U.S.C. § 3500 ("3500 material") prior to when the defendant would receive such evidence in the criminal trial.

Most courts faced with this obvious tactical cross-fire have developed procedures to protect the defendant's substantive rights while advancing the civil case.  Generally, courts permit the defendant to assert his or her Fifth Amendment right during the civil case and stay completion of discovery pending the criminal case, but do not stay all depositions and discovery of testimonial evidence.  Instead, the courts require the Government to justify a stay, on a specific basis, with respect to those witnesses about whom there is a legitimate concern.  The courts then impose a limited stay on specific discovery.  The Defendant advocates that approach.

This case lacks the typical concerns that support a stay of discovery.  Neither the U.S. Attorney nor the SEC have expressed concerns about the possibility of witness tampering or intimidation, unfair surprise, or destruction of evidence.  The defendant is no longer employed by J.P. Morgan Chase & Co. ("JP Morgan").  JP Morgan has conducted its own internal investigation and publicized the investigation results.  Selected quotes from witness interviews are in publicly available Congressional reports.  As part of its internal investigation, JP Morgan preserved, gathered, organized, and provided to the Government relevant documents, such as notes from interviews of current and former JP Morgan employees, including potential witnesses in this case.  The Defendant has had limited access to these documents.

The only unfair surprise here is that inflicted on Mr. Martin-Artajo if he must defend a criminal or civil case alleging billions in losses and hundreds of millions in improper valuations of complex derivative positions without having significant, advance opportunity to understand

the nature of the evidence against him and prepare to rebut it.  This is not a drug kingpin case—there are no violent crimes or allegations of obstruction.  Rather, this case involves complex issues surrounding valuation methodology for esoteric derivative positions, arcane accounting rules for valuing those positions, and the quantum of evidence needed to sustain a valuation.

The U.S. Attorney and SEC have already conducted thorough investigations of the allegations, settling with multiple parties, including JP Morgan.  The Permanent Subcommittee on Investigations of the U.S. Senate conducted an investigation and hearing, resulting in a 300-page report and hundreds of pages of exhibits, including liberal quotations from witness interviews that accompanied JP Morgan's internal investigation.  The U.K. Financial Conduct Authority ("UK FCA") also conducted an investigation, generating numerous transcripts of testimony (the "UK FCA Transcripts"), including that of the Defendants, and which resulted in a settlement with JP Morgan documented in a 60-page Final Notice.  The SEC, the DOJ, JP Morgan, Congress, the media, the general public on a selective basis when it has benefited the Government, and foreign investigators all are privy to what witnesses have said about the alleged conduct.  There is no ongoing investigation—both the criminal indictment and civil complaint have been filed.  Only discovery and trial preparation remain.  However, if the U.S. Attorney's motion is granted, the one person with the greatest need to know what the evidence is, the one who needs to prepare to address it at trial, will be deprived of access to it.

The U.S. Attorney has not demonstrated any prejudice that it would suffer if discovery proceeded.  The only purported prejudice is that, in the context of a criminal case, the Defendants would ordinarily obtain this discovery later.  But this is a civil case which the SEC brought, in coordination with the U.S. Attorney, at the same time.  The Government cannot seek the benefits of bringing a civil action and be relieved of its discovery burdens.  If the

Government was concerned about this issue, it could have brought only a criminal action and stood on those rules.  Moreover, the prejudice asserted by the Government is not a "legitimate" prejudice.  To say that the Government is prejudiced by the Defendant's ability to understand and prepare to meet the charges against him stands the Constitution and *Jencks* on their heads.

The Government's contention that Mr. Martin-Artajo is a fugitive who fled the jurisdiction and is barred from discovery under the fugitive disentitlement doctrine is wrong. Mr. Martin-Artajo is a Spanish citizen and resident and, while employed by JP Morgan, was a UK resident.  Upon learning of his arrest warrant, he surrendered to Spanish authorities.  Since then, he has been exercising his rights in an extradition proceeding under U.S. and Spanish laws. The fugitive disentitlement doctrine has no bearing on this motion.  While some courts have recognized this doctrine to address post-judgment or verdict settings in civil cases, or where the defendant makes a claim as to his property in a forfeiture case, they have done so in limited circumstances, none of which are present here.  There is no controlling authority that supports what the U.S. Attorney seeks—to punish Mr. Martin-Artajo for participating in the extradition process by barring his right to discovery in a civil case.  The U.S. Attorney's attempt to invoke the doctrine should be rejected as incorrect on the law and the facts.

The motion for a stay is also premature and overbroad.  The U.S. Attorney is seeking a blanket stay of all depositions and other forms of testimonial evidence, before a subpoena has been served for testimony of any of the 129 different potential witnesses identified in the parties' Rule 26(a)(1) disclosures.  If the U.S. Attorney is entitled to any stay, it should have to make a particularized showing as to which witnesses need shielding from discovery, in whole or in part.

A stay of discovery is an extraordinary remedy.  The stay sought here is especially extraordinary, due to its breadth and lack of the requisite showing.  A stay that denies

Mr. Martin-Artajo the opportunity to review the testimony of potential witnesses or to preserve their testimony while memories are fresh, would be wholly unfair.  Mr. Martin-Artajo, therefore, respectfully requests that the Court deny the U.S. Attorney's motion to stay.

## FACTUAL BACKGROUND

On August 14, 2013, the U.S. Attorney held a joint press conference with the SEC announcing unsealed criminal charges against the Defendants.[1]  That same day, the SEC filed this action.  The U.S. Attorney charged Messrs. Martin-Artajo and Grout with claims based on the alleged mismarking of JP Morgan's Credit Synthetic Portfolio in the first quarter of 2012.  The SEC's Complaint alleges claims for securities fraud arising from the same alleged conduct.

On August 27, 2013, Mr. Martin-Artajo surrendered to Spanish authorities.[2]  He is participating in Spanish extradition proceedings.  The Spanish National Court hearing on the extradition request has not been scheduled.  It is unclear when those proceedings will conclude.

On September 16, 2013, a grand jury issued an indictment against the Defendants relating to the conduct alleged in the criminal complaint and the SEC's complaint.[3]

On September 19, 2013, Mr. Martin-Artajo agreed to accept service of the SEC's Complaint, and has participated fully through counsel in this case.  On December 10, 2013, he answered the Complaint, denying the material allegations and asserting a number of defenses.

On December 27, 2013, the parties held a Rule 26(f) conference.  During the conference, the SEC agreed to begin producing documents the following week, without formal discovery

---

[1] Emily Flitter, *U.S. Charges Two Ex-JPMorgan Bankers over 'London Whale' Loss*, Reuters, Aug. 14, 2013, http://www.reuters.com/article/2013/08/14/us-jpm-whale-charges-idUSBRE97D0QU20130814.

[2] Ben Protess & Raphael Minder, *Former JPMorgan Trader Surrenders in Spain in 'London Whale' Case*, DealBook (Aug. 27, 2013), http://dealbook.nytimes.com/2013/08/27/spanish-authorities-arrest-former-jpmorgan-employee/.

[3] Jonathan Stempel, *U.S. Indicts Ex-traders in JPMorgan 'London Whale' Scandal*, Reuters, Sep. 16, 2013, http://www.reuters.com/article/2013/09/16/us-jpmorgan-whale-indictment-idUSBRE98F13K20130916.

requests, including documents it had collected from JP Morgan and other third parties, as well as transcripts of interviews with the SEC.  It also agreed to produce documents received from other U.S. governmental agencies, subject to claims of privilege by those agencies.  The SEC said that it expected the U.S. Attorney to seek a stay of depositions and interrogatories, and purported 3500 material, but not document discovery.  It said further that the U.S. Attorney objected to the SEC's production of the UK FCA Transcripts.  The SEC estimated that it had collected nearly a terabyte of data, of which approximately 800 gigabytes were from JP Morgan.

On January 2, 2014, the parties agreed to the terms of a proposed Civil Case Management Plan and Scheduling Order, and a Joint Initial Report and Discovery Plan (the "Report"). (Docket No. 27.)  The Report provides for depositions of 40 witnesses per side, and the Scheduling Order contains an April 2015 fact discovery deadline.  The SEC "agreed to begin producing certain readily identifiable materials forthwith." (Report 1-3, Docket No. 27.)

On January 8, 2014, at the Initial Pretrial Conference, the Court adopted the Civil Case Management Plan and Scheduling Order and Report.  At that conference, the SEC, for the first time, stated that the Defendants were not entitled to any type of discovery, notwithstanding its agreement to engage in full document discovery, on the ground that the Defendants were fugitives from justice.  The SEC told the Court:  "[Messrs. Martin-Artajo and Grout] are fugitives from justice.  They don't typically get anything, certainly cannot appeal to your Honor for the exercise of your discretion in their favor." (Tr. 14:23-15:1, Docket No. 35.)  Nowhere in the Report, and at no time during the Rule 26(f) conference, had the SEC made such an assertion.

On January 22, 2014, the parties exchanged Rule 26(a)(1) disclosures.  In those disclosures, the parties identified 129 distinct potential witnesses (SEC-56, Defendant Grout-85, and Defendant Martin-Artajo-55).  On January 25, 2014, the U.S. Attorney filed this motion,

seeking a stay of all "depositions, interrogatories, requests for admission, and production of transcripts of testimony before the Securities and Exchange Commission (SEC) and notes of interview with, and any form of discovery that would constitute 3500 material."  The motion does not expressly define "3500 material" nor state what the U.S. Attorney views as such.  On February 7, 2014, the SEC filed its memorandum consenting to the relief sought in the motion.

## ARGUMENT

## I.    THE U.S. ATTORNEY HAS FAILED TO MAKE THE REQUISITE SHOWING FOR A STAY

The U.S. Attorney and the SEC have not demonstrated the "special circumstances" and "the need to avoid 'substantial and irreparable prejudice'" required for the exercise of the Court's discretion to stay discovery in this case until the parallel criminal case concludes.  *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983); *SEC v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing *United States v. Kordel*, 397 U.S. 1, 11-12 (1970)) ("In the absence of such 'special circumstances' the Court recognized that prompt investigation of both civil and criminal claims can be necessary to the public interest."); *see also Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *SEC v. Fraser*, No. 09-CV-443, 2009 U.S. Dist. LEXIS 50379, at *10-11 (D. Ariz. May 29, 2009) ("[A stay of discovery requested by the government when the government brought simultaneous civil and criminal suits] is improper absent a specific showing of prejudice that cannot be remedied by anything other than a complete stay.").  The party moving for the stay has the burden of showing it is warranted.  *Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

To determine whether a stay of discovery in a civil case is warranted when there is a parallel criminal case, courts consider:  (1) the extent to which the issues in the civil and criminal cases overlap; (2) the private interests of, prejudice to, and burden on the parties; (3) the status of

the case, including whether the defendants have been indicted; (4) the interests of the courts; and (5) the public interest. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012); *see also SEC v. Chakrapani*, Nos. 09 Civ. 325, 1043, 2010 U.S. Dist. LEXIS 65337 (S.D.N.Y. June 29, 2010); *SEC v. Cioffi*, No. 08 Civ. 2457, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008); *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). The most important factor is the avoidance of prejudice. *Volmar*, 152 F.R.D. at 39; *Cioffi*, 2008 U.S. Dist. LEXIS 86088, at *39.

This test is not a mechanical one and permits the Court to exercise discretion in determining how to approach civil discovery in a way that produces a just result for the parties. *Louis Vuitton Malletier*, 676 F.3d at 99 (This test "[is] not [a] mechanical device[] for churning out correct results in overlapping civil and federal proceedings, replacing the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court.").

## A.  A Denial of the Motion Would Not Prejudice the Criminal Case.

The U.S. Attorney has failed to demonstrate prejudice. Its generalized complaint about the availability of broad discovery in a civil case does not constitute the requisite prejudice to justify a stay of discovery. *See Chakrapani*, 2010 U.S. Dist. LEXIS 65337, at *34 ("The Court . . . is unaware of any legal requirement entitling the government to preserve its cooperators from examination before trial. . . . In short, the Court finds that the government has failed to demonstrate that a stay of discovery is warranted in this case."); *Fraser*, 2009 U.S. Dist. LEXIS 50379, at *9 ("Such a blanket assertion is not sufficient to establish the 'substantial prejudice[]' . . . that is necessary to warrant granting a stay.").

In *Cioffi*, the Court noted that "[c]ourts are justifiably skeptical of blanket claims of prejudice by the government where—as here—the government is responsible for the simultaneous proceedings in the first place." *Cioffi*, 2008 WL 4693320, at *1 (citing *SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005)). In *Saad*, this Court found it "strang[e] … that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously." 229 F.R.D. at 91; *see also SEC v. Sandifur*, No. 05-CV-1631, 2006 U.S. Dist. LEXIS 89428, at *8-9 (W.D. Wash. Dec. 11, 2006) (denying stay because "the United States worked directly with the SEC and voluntarily chose to institute both civil and criminal actions at the same time").

The U.S. Attorney cannot possibly claim prejudice due to the conduct of discovery in this case. It cooperated with the SEC in its investigation and the two agencies voluntarily chose to file their cases at the same time. *Sandifur*, 2006 U.S. Dist. LEXIS 89428, at *9; *see United States v. FINRA*, 607 F. Supp. 2d 391, 394 (E.D.N.Y. 2009) ("[T]he only 'prejudice' the Court can discern is that allowing the [civil proceeding] to go forward will result in the criminal defendants having more information than they would otherwise be entitled to at this stage under the Federal Rules of Criminal Procedure. This loss of the government's usual tactical advantage is insufficient to justify enjoining the [civil proceeding]."); *United States v. All Funds on Deposit*, 767 F. Supp. 36, 42 (E.D.N.Y. 1991) ("[M]ere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery . . . will not avail on a motion for a stay."). While the Defendants may receive discovery that it would have obtained at a later time in the criminal case, any loss of an ephemeral tactical advantage to the U.S. Attorney does not constitute prejudice.

The U.S. Attorney has failed to demonstrate how its criminal case will be prejudiced by the discovery it seeks to stay.  To establish prejudice based on "a civil defendant's access to, and use of, civil discovery to gain otherwise unavailable insight into a criminal proceeding," the Government must show that the policy justifications for more limited criminal discovery are threatened.  *SEC v. One or More Unknown Purchasers of Sec. of Global Indus., Ltd.*, No. 11 Civ. 6500, 2012 U.S. Dist. LEXIS 162772, at *15 (S.D.N.Y. Nov. 9, 2012) (finding a stay was warranted because the policy justifications for more limited criminal discovery were compromised in that case).  Those policy justifications are not present here.

The typical public interest justifications for placing certain limits on civil discovery when there is a parallel criminal case include where:

> (1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence;
> (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and
> (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Cioffi*, 2008 WL 4693320, at *2 (quoting *Nakash v. United States*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988)).

The U.S. Attorney, the SEC, JP Morgan, the Senate subcommittee, and the UK FCA have already conducted extensive investigations of the allegations underlying the criminal indictment and civil complaint.  There is, therefore, no credible threat of perjury or manufactured evidence, or of surprise to the U.S. Attorney.  The identity of prospective witnesses in the criminal case is also widely known, having been disclosed in this case through the parties' initial disclosures, and having been covered extensively in the media, a Senate report, and the documents the Senate posted to its website.  There is, therefore, no credible threat of witness intimidation.  *Cf.*

*Chakrapani*, 2012 U.S. Dist. LEXIS 65337, at *19 ("Because [the witness] is a known cooperator, there is no concern about revealing his identity.").

The Defendants will not unfairly surprise the U.S. Attorney at a criminal trial with information developed through the discovery that it seeks to stay. The U.S. Attorney has already had substantial access to all of the information that could be obtained by Mr. Martin-Artajo in discovery for over a year. It has documents and testimony from its completed grand jury investigation. It has received information through its cooperation with the SEC and UK FCA, and JP Morgan, which provided access to its employees, documents, and the contents of its internal investigation. Its sister agency will attend the depositions and, no doubt, share the results immediately. There is no legitimate basis to claim unfair surprise.

Nor will proceeding with this discovery threaten the integrity or secrecy of the criminal investigation, as the indictment has already issued. *See Nakash*, 708 F. Supp. at 1365; *cf. SEC v. Downe*, No. 92 Civ. 4092, 1993 U.S. Dist. LEXIS 753 (S.D.N.Y. Jan. 26, 1993) (finding government had shown sufficient cause for stay of certain discovery as to one of the defendants who was cooperating with government in ongoing grand jury investigation).

While the U.S. Attorney baldly asserts it could lose a tactical advantage in the criminal trial, it is hard to imagine how that is true, in the face of the enormous "head start" it has had. In any event, such an advantage is not guaranteed. As the Court in *Chakrapani* noted, "the discovery advantage enjoyed by the government under Rule 16 of the Federal Rules of Criminal Procedure is not a right guaranteed or even recognized by *Rule 26 of the Federal Rules of Civil Procedure*. Thus, the government's assertion that '[d]iscovery in a civil proceeding may not be used to circumvent the limitations on discovery in a criminal action' is simply incorrect." 2010 U.S. Dist. LEXIS 65337, at *22-23. In *Chakrapani*, the Court rejected the government's

argument that "its interest in preserving its cooperating witness for the criminal trial [was] synonymous with" the interest of nonparties to the civil litigation and the public interest and therefore warranted a stay.  *Id.* at *32-34.  The Court reasoned that:

> [I]t is unaware of any legal requirement entitling the government to preserve its cooperators from examination before trial.  What the government deems to be a right is, in fact, a litigator's preference to avoid cross-examination and related impeachment of prized witnesses. . . . The reality, however, is that prized witnesses often must testify more than once in both civil and criminal proceedings. . . . The fact that criminal trials typically precede civil trials does not elevate the preservation of a cooperator's testimony into a government right.

*Id.* at *33-34.[4]

And here, the possible loss of that advantage does not justify the burden the proposed stay would impose on the parties, the courts, and the public.  *See SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage").   The U.S. Attorney has "no monopoly on access to potential witnesses in a criminal case."  *SEC v. Kornman*, No. 04-CV-1803, 2005 U.S. Dist. LEXIS 48585, at *7-8 (N.D. Tex. Dec. 20, 2005) (M.J. Sanderson), *aff'd*, *SEC v. Kornman*, No. 04-CV-1803, 2006 U.S. Dist. LEXIS 2107 (N.D. Tex. Jan 18, 2006) (D.J. Lindsay).

---

[4]  The Court also granted the defendant's motion to compel the production of the FBI 302s in redacted form that the government had withheld based on law enforcement privilege, because, as here, none of the underlying concerns addressed by the law enforcement privilege were present.  *Id.* at *18-23.

### B.      The SEC Will Not Be Prejudiced by Proceeding with Discovery.

It makes little sense that the SEC would consent to a stay of discovery in a case it filed. Nevertheless, the fact remains that the SEC will suffer no prejudice in the absence of a stay.

The SEC was under no procedural pressure to commence its case on the same day the U.S. Attorney filed its criminal case.  There was no expiring statute of limitations.  These parallel proceedings are not a special circumstance that would justify interfering with Mr. Martin-Artajo's right to full discovery to defend himself.  *Sandifur*, 2006 U.S. Dist. LEXIS 89428 (holding stay was inappropriate, in part, because government could have delayed filing civil suit until after criminal case completed).  Moreover, as with the U.S. Attorney, a blanket claim of prejudice is insufficient for a stay where the government brought parallel proceedings.  *See Cioffi*, 2008 WL 4693320, at *1;  *Sandifur*, 2006 U.S. Dist. LEXIS 89428, at *7.

The SEC's contention that allowing other depositions to proceed while the Defendants' are stayed would prejudice its case because it would have to retake the other depositions is disingenuous.  The SEC already has the Defendants' UK FCA transcripts and notes from their JP Morgan interviews.  *See SEC v. ARVCO Capital Research, LLC*, No. 12-CV-221, 2013 U.S. Dist. LEXIS 100035 (D. Nev. July 16, 2013) (M.J. Cobb), *aff'd, SEC v. ARVCO Capital Research, LLC*, No. 12-CV-221, 2014 U.S. Dist. LEXIS 2141 (D. Nev. Jan. 6, 2014) (D.J. Du). Moreover, complications as to the order of discovery do not generally prevent all discovery.

It is appropriate to stay the depositions of the Defendants until a later stage in the proceedings, as requested, without holding up depositions of other potential witnesses, as the Defendants may need to invoke their Fifth Amendment privilege.  *Saad*, 229 F.R.D. at 91-92. As noted in *Saad*, "it makes perfect sense in terms of the civil case, since, until the criminal case is resolved, there is a high likelihood that invocations of the Fifth Amendment privilege will play havoc with the orderly conduct of . . . these depositions."  *Id.* at 91.  However, there is "no

reason why full document discovery, as well as depositions of the non-parties, cannot proceed at this time, enabling the Court to have the civil case ready for trial within a few weeks after the completion of the criminal case." *Id.* at 92.

Accordingly, the SEC has not demonstrated that it would be prejudiced by full discovery, both testimonial and documentary, in this case.

### C. Mr. Martin-Artajo Should be Allowed to Engage in Each Type of Discovery That the Government Seeks to Block.

Under Federal Rule of Civil Procedure 26, Mr. Martin-Artajo is entitled to complete discovery of the relevant facts concerning the claims brought against him, including document discovery and depositions of potential witnesses identified by the parties. A delay in that right can be ordered only upon the showing of special circumstances, following a balancing of the factors in each case. *Southeast Recovery Grp., LLC v. BP America, Inc.*, 278 F.R.D. 162, 166-67 (E.D. La. 2012); *see also SEC v. Healthsouth Corp*, 261 F. Supp. 2d 1298, 1328, n. 48 (N.D. Ala. 2003) (quoting *Keating*, 45 F.3d at 326) ("[I]n highly publicized cases. . . decisionmakers need to be especially careful that undue consideration is not given a proceeding's impact on the public. . . . In such high visibility situations, it is especially necessary to guard the rights of defendants, and concern for the public deterrence value of an enforcement proceeding must not be allowed to override the individual defendant's due process rights."). Here, "the defendants are not just facing a criminal indictment; they are also facing a very serious SEC civil action, and they are thus fully entitled to the timely discovery that federal law grants them in defending such an action." *Saad*, 229 F.R.D. at 92; *see also Sandifur*, 2006 U.S. Dist. LEXIS 89428, at *9 ("[T]he United States worked directly with the SEC . . . As a result, the Defendants are now facing very serious civil charges, and they have a strong interest in a timely resolution.").

14

The Government seeks to prevent discovery of: (1) depositions of witnesses; (2) prior witness testimony given to third parties (*e.g.,* the UK FCA); (3) prior witness statements to the SEC (including transcripts and interview notes); (4) prior witness statements to JP Morgan's internal investigators; and (5) prior witness statements to the U.S. Attorney's criminal investigators.[5]

### 1. Depositions.

Under Federal Rule 26, Mr. Martin-Artajo is entitled to take the depositions of potential witnesses on any non-privileged matter relevant to any and all claims and defenses, even when there is a parallel criminal proceeding.  *See Saad*, 229 F.R.D. at 91 (permitting deposition of non-parties); *SEC v. Gupta*, No. 11 Civ. 7566  2011 U.S. Dist. LEXIS 142125, at *4 (S.D.N.Y. Nov. 29, 2011) (permitting several depositions prior to parallel criminal trial); *Chakrapani*, 2012 U.S. Dist. LEXIS 65337, at *33-34 (permitting discovery directed at cooperating witness).

### 2. Prior Testimony.

Prior testimony would be admissible against the SEC under Federal Rule of Evidence 804(b)(1) whether taken in this or a different proceeding, and regardless of whether the SEC was a party, so long as the party in interest meets the requirements of the rule.  *See Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*, 11 Civ. 6202 (DLC), 2014 U.S. Dist. LEXIS 26130, at *3-4 (S.D.N.Y. Feb. 28, 2014) ("[W]hen objecting to the admissibility of such [[prior] testimony]," the opposing party should "explain as clearly as possible to the judge precisely why the motive and opportunity of the [party] in the first case was not adequate to develop the cross-examination which the instant [party] would have presented to the witness."); *see also United States v.*

---

[5] For the purposes of this motion, Mr. Martin-Artajo does not seek summaries of witness statements or reports of interviews prepared by the FBI or other agents exclusively as part of the criminal investigation.

*Carneglia*, 256 F.R.D. 366, 372 (E.D.N.Y. 2009) (testimony given at preliminary hearing under oath with verbatim transcription admissible);  *In re Johns-Manville/Asbestosis Cases*, 93 F.R.D. 853, 858 (N.D. Ill. 1982) (prior deposition testimony admissible).  Testimony provided to the UK FCA meets the requirements of such prior testimony and thus, the Defendants should be provided to full access to the UK FCA Transcripts.

### 3.  Witness Statements Made to the SEC.

This Court should not grant a blanket stay as to all witness statements made to the SEC, but should reserve ruling as to their discoverability as this decision must be made on a case by case basis.  *See SEC v. Sentinel Management Group, Inc.*, No. 07 C 4684, 2010 U.S. Dist. LEXIS 127355 (N.D. Ill.  Dec. 2, 2010) (analyzing with particularity each request to withhold interview notes); *SEC v. Thrasher*, No. 92-CV-6987, 1995 U.S. Dist. LEXIS 1355, at *28 (S.D.N.Y. Feb. 7, 1995) (holding notes taken during interviews were discoverable based on individualized inquiry); *In re John Doe Corp.*, 675 F.2d 482, 492-93 (2d Cir. 1982) (same).

Whether the witness statements are purely factual or include opinion work product is a relevant factor.  *SEC v. Nadel*, 11-CV-215, 2013 U.S. Dist. LEXIS 36251, at *2 (E.D.N.Y. March 15, 2013).  Additionally, production of prior statements made to the SEC can streamline the litigation.  Rather than ask the SEC to state every fact in support of its allegations, Defendant will be able to review the same material relied upon by the SEC to develop its claims.  The parties can then focus depositions on those subjects about which the witness have knowledge.

### 4.  Witness Statements Made to Internal Investigators.

Courts must determine on a case by case basis whether statements made by witnesses to internal investigators, which are then shared with the Government, waive any attorney client or work product privilege.  *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) ("Crafting rules relating to privilege in matters of governmental investigations must be done on a

case-by-case basis").  Thus, the order issued here should not preclude production of these statements.  As already noted in this case, the parties "anticipate[d] … disagreements about privilege assertions."  (Report 2, Docket No. 27).  Those disagreements have not yet arisen or been briefed.  As a result, the court should not issue a blanket stay on discovery of these prior statements based on the potential for such disagreements.

Regardless, depending on facts developed through discovery, JP Morgan may have waived any privilege as to the witness statements taken in its internal investigations already because it disclosed those statements to the SEC in an effort to settle with authorities who were adverse parties.  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221, 2012 U.S. Dist. LEXIS 118036 (E.D.N.Y. July 13, 2012) (finding privilege had been waived as to certain materials the company chose to show to the government in an effort to settle).  All or parts of these witness statements have been provided to public bodies and selected excerpts have been widely publicized.  *See, e.g.*, U.S. Senate, Permanent Subcommittee on Investigations, Majority and Minority Staff Report, JPMorgan Chase Whale Trades: A Case History of Derivatives Risks and Abuses (March 13, 2013).  Additionally, these statements were used by the company to make important business decisions including whether to restate its accounts and personnel decisions, including the suspension of Mr. Martin-Artajo and the commencement of a deeper internal investigation.  These statements are clearly relevant to this civil matter and, despite any potential privilege issues, the Court, at this time, should not make impose a blanket stay on their discovery.[6]

---

[6] Whether disclosure of work product to a government agency by a cooperating company waives the work product protection has resulted in a circuit split.  *Compare Diversified Indus. v. Meredith*, 572 F.2d 596 (8th Cir. 1978) (creating a limited waiver doctrine) *with Permian Corp. v. United States,*, 665 F.2d 1214 (D.C. Cir. 1981) (rejecting such a doctrine).  Any waiver analysis would requires a full development of relevant facts.

### D.     The Jencks Act Does Not Support a Stay.

The U.S. Attorney's argument that the Jencks Act supports the grant of a stay is simply wrong.  The Jencks Act does not preclude discovery in a civil case.  Rather:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500 (2012).  As clearly stated in the statute and confirmed by this court, "§ 3500 has no application in civil cases."  *SEC v. Stanard*, 06 Civ. 7736, 2007 U.S. Dist. LEXIS 46432, at *7, n.3 (S.D.N.Y. June 26, 2007); *see, e.g., Saad*, 229 F.R.D. at 91-92 (rejecting U.S. Attorney's argument that defense should be denied access to notes of employee reflecting conversations with cooperating criminal defendants prior to them becoming cooperating defendants).  As such, § 3500 has no applicability here, and Defendant is not seeking pure 3500 material at this time.

In addition, whether notes from interviews and prior statements would qualify as 3500 material is questionable.  In *Saad*, as here, the SEC pursued a civil case against the defendant while a parallel criminal case was pending, and the U.S. Attorney moved to stay discovery of notes of prior statements of its by-then cooperating witnesses taken during the company's internal investigation, in part, based on a claim that the notes constituted 3500 material.  The Court was not convinced the notes constituted *Jencks* material, though it said they may have been *Brady* material.  Importantly, the *Saad* Court noted that the issue was also secondary to the fact that the materials were relevant and necessary to the defendant's defense in the civil case, and denied the motion for a stay.  *Id.*

With respect to the UK FCA Transcripts, it is unclear whether that material is even "in the possession of" the U.S. Attorney.  The U.S. Attorney has represented that it does not have them and they were created by another non-U.S. agency.  *United States v. Weidman*, 572 F. 2d 1199, 1207 (7th Cir. 1978) (statements given to non-prosecutorial agency not clearly 3500 material); *United States v. Trevino*, 556 F. 2d 1265, 1271 (5th Cir. 1977) ("[I]n the possession of the United States can only be read to mean a statement in the hands of the federal prosecutor") (internal quotation marks omitted).  The SEC, however, does possess the UK FCA Transcripts. The U.S. Attorney has also failed to specify over which materials it is invoking the purported protection of 3500.  These facts should result in the denial of that aspect of the stay.

Mr. Martin-Artajo is entitled to full discovery, including the documents the SEC has collected, the depositions of potential witnesses, notes of prior interviews of potential witnesses, and all prior statements or testimony of potential witnesses.  These are materials he would be entitled to in the criminal case.  A delay would serve no other purpose than delay.[7]

## II.    THE FUGITIVE DISENTITLEMENT DOCTRINE IS INAPPLICABLE

The fugitive disentitlement doctrine does not apply.  The U.S. Attorney and SEC have misrepresented the circumstances in which the Court may, in its discretion, invoke the doctrine. The Government has not cited a single case that has applied this doctrine on similar facts.

---

[7] The U.S. Attorney seeks a stay until the conclusion of the criminal case, but there is no date for the criminal trial, and its scheduling is not imminent.  Thus, the stay would be of an indefinite duration, which weighs against its issuance.  *Cf. Louis Vuitton Malletier*, 676 F.3d at 101 (the criminal trial being imminent favored a stay).  Stays in civil cases pending resolution of a criminal case are generally granted for a finite period of time, and when the timing of the criminal trial is known or reasonably foreseeable.  *See, e.g.*, *SEC v. Doody*, 186 F. Supp. 2d 379 (S.D.N.Y. 2002).  Additionally, if the U.S. Attorney's motion were granted, it would unjustly suspend indefinitely other proceedings.  The UK FCA has stated that it has discontinued its investigation of Mr. Martin-Artajo due to the ongoing DOJ and SEC cases, but reserved its right to reopen the investigation at any time.  *See* Affidavit of Felice B. Galant, March 5, 2014, Ex. 1 and 2.  This decision by the UK FCA is in the process of being challenged by Mr. Martin-Artajo.

The fugitive disentitlement doctrine was recognized for the first time in the late 19th century as the court's discretionary power to dismiss the appeal of a criminal defendant who was a fugitive from justice. Such a person was denied access to relief from the courts, because a judgment would be rendered moot, as he would likely not appear to serve his sentence or for a retrial, if the verdict were reversed. *Smith v. United States*, 94 U.S. 97 (1876). It was later expanded to encompass both civil and criminal appeals brought by fugitives and in certain post-judgment settings. *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997) (discussing and applying the fugitive disentitlement doctrine).

The Supreme Court has made clear that the fugitive disentitlement doctrine may not be invoked simply because a party meets the legal definition of a "fugitive." Rather, first, there must be a nexus between the dispute at issue and the fugitive status. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 249 (1993). Second, the absence of the fugitive must in some way interfere with the adjudication of the dispute, and disentitlement must be a reasonable response to that specific interference. *Id.* at 244 (citing *Thomas v. Arn*, 474 U.S. 140, 146-48 (1985)) (rejecting dismissal because Supreme Court requires rationales used by appellate courts in dismissing case based on doctrine to "represent reasoned exercises of the courts' authority"); *see also Motorola Credit Corp. v. Uzan*, 115 Fed. Appx. 473, 475 (2d Cir. 2004) (declining to apply fugitive disentitlement doctrine in part because "defendants' actions have not been 'sufficiently disruptive of the appellate process that dismissal would be a reasonable response'").

In *Degen v. United States*, the Supreme Court limited the manner in which the doctrine applies. 517 U.S. 820 (1996). The doctrine could not be used to prevent fugitives from making claims in related civil forfeiture proceedings because the fugitive's status: (1) did not justify complete disentitlement; and (2) the court already had sufficient power to deal with issues that

might arise due to a defendant's fugitive status, such as its power to sanction those who defy its orders under Federal Rules of Civil Procedure 37 and 41(b). *Id.* at 825-27. Congress responded to *Degen* by passing the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), which authorizes courts to disentitle fugitives from asserting a claim in an asset forfeiture proceeding. 18 U.S.C. § 2466 (2012). No similar "disentitlement" statute has been passed in any other context.

Post *Degen*, the types of matters in which courts have invoked the fugitive disentitlement doctrine include appeals brought by fugitives in civil and criminal post-judgment settings, petitions for habeas corpus review of criminal convictions, and other claims for relief sought by fugitives in post-judgment settings. *See, e.g.*, *United States v. Morgan*, 254 F.3d 424, 427 (2d Cir. 2001) (dismissing defendant's claims post-judgment and guilty plea on appeal); *Empire Blue Cross & Blue Shield*, 111 F.3d at 280 (dismissing appeal of civil defendants who had refused to appear for post-judgment depositions noticed by plaintiff); *Torres v. New York*, 976 F. Supp. 249 (S.D.N.Y. 1997) (recommending dismissal of habeas petition).

Despite the U.S. Attorney and SEC's request that the Court do so here, the fugitive disentitlement doctrine has not been applied to prevent a defendant in a civil case from defending himself against claims brought against him. *FDIC v. Pharaon*, 178 F.3d 1159, 1161-63 (11th Cir. 1999). Neither the U.S. Attorney nor the SEC cites a single post-*Degen* case in which the doctrine has been applied to punish a defendant for not being present in the forum due to ongoing extradition proceedings, as is the case with Mr. Martin-Artajo. Moreover, as this Court noted at the Initial Pretrial Conference regarding his extradition proceedings, "whether they are fighting those proceedings is a different question than whether they are evading those

proceedings." (Tr. 23:17-19, Docket No. 35). Mr. Martin-Artajo falls within the first category, as is his right under both U.S. and Spanish law.

Furthermore, the SEC mischaracterized the scope of the doctrine, claiming, incorrectly, that "[i]n other [non-asset forfeiture] contexts, as when discovery stays are sought courts still rely on *Degen. See, e.g.*, *SEC v. Razmilovic*, 738 F.3d 14, 26-27 (2d Cir. 2013) (citing *Degen* in affirming default judgment)." (SEC Mem. 10, n.6, Docket No. 32). A discovery stay, however, was not at issue in *Razmilovic*. Rather, the Second Circuit affirmed a default judgment against the defendant based on Federal Rule of Civil Procedure 41. It rejected Razmilovic's argument that *Degen* precluded his disentitlement, because the default judgment was not based on the doctrine, but his willfully disobeying the court's orders to appear for deposition. *Razmilovic*, 738 F.3d at 26-27.

The SEC's argument that the doctrine applies because a judgment against Mr. Martin-Artajo would be unenforceable puts the cart before the horse. There is no judgment to enforce. The SEC's claim that it would be prejudiced by proceeding with discovery because it will "strain the Court's and the SEC's resources" is absurd. It brought this case, and already agreed to full discovery, with limited exceptions. Furthermore, the SEC's contention that "by avoiding the orders of this Court in the criminal case, Defendants have demonstrated disrespect for the legal process" is a complete falsehood. There have been no orders issued in the criminal case. Mr. Martin-Artajo surrendered to Spanish authorities and is participating in extradition proceedings. He is also actively participating in this civil case through counsel.

The U.S. Attorney and SEC cite no cases that support the invocation of the doctrine in this case. They cite *Roman* and *Mahfouz* (which relies on *Eng*) for the proposition that the Court may use the fugitive disentitlement doctrine to disentitle a party who is disregarding orders in a

related criminal action or is otherwise flouting a court's orders.  *SEC v. Roman*, 1996 U.S. Dist. LEXIS 860 (S.D.N.Y. Jan. 30, 1996); *Bd. of Governors of the Fed. Res. Sys. v. Mahfouz*, 1992 U.S. Dist. LEXIS 10866 (S.D.N.Y. Jul. 23, 1992); *United States v. Eng*, 951 F.2d 461 (2d Cir. 1991).  However, *Mahfouz* and *Eng* are pre-*Degen* civil asset forfeiture cases in which a criminal defendant attempted to assert a claim to his property in a civil case.  Neither case remains good law after *Degen* and both are superseded by CAFRA.  *Roman* was also a pre-*Degen* case whose viability remains uncertain and is factually distinguishable.

*Eng* was a post-judgment civil forfeiture case in which Eng, a defendant indicted for operating a continuing heroin trafficking enterprise, sought the release of property seized by the government.  *Eng*, 951 F.2d 461.  He requested, in the alternative, a stay of the entire forfeiture case (not limited to discovery) pending the conclusion of his criminal case.  *Id*. at 462.  Eng had been detained in Hong Kong and was turned over to Interpol agents under a provisional arrest warrant.  The government sought the forfeiture of his property on the ground that it was purchased with the proceeds of criminal activity.  *Id*. at 463.  *Eng* is inapposite as it was a forfeiture proceeding, in which the defendant sought a stay.

*Mahfouz*, also on uncertain precedential ground post *Degen*, was similarly an asset forfeiture case.  The Federal Reserve had filed a motion the freeze the defendant's assets.  *Mahfouz*, 1992 U.S. Dist. LEXIS 10866, at *2-3.  He responded with a motion for expedited discovery.  The District Attorney's Office moved to intervene to maintain the secrecy of grand jury materials.  The Court denied the motion for expedited discovery as overbroad, but stated it would "entertain proposals from Mahfouz concerning the justifications for, and breadth of, the [freezing] order."  *Id*. at *10.  If the disentitlement doctrine were applied in "full force," "the Court would lose the benefit of an adversarial presentation in adjudicating for, and breadth of,

the [freezing] order." *Id*.  Here, there is no request for expedited discovery or to freeze assets. As noted above, there is also no need to maintain the secrecy of a grand jury.

*Roman* is also distinguishable.  In that case, two of the three defendants fled from Greece when a warrant was issued for their arrest after their counsel advised the government that they were living there; the third defendant was believed to be hiding elsewhere.  *Roman*, 1996 U.S. Dist. LEXIS 860, at *3.  The defendants in *Roman* were clearly "on the run" and unable to be found.  Mr. Martin-Artajo, on the other hand, surrendered in Spain upon a warrant being issued there and is participating in this case through counsel.  *Roman* has never been cited by other courts for the proposition that a fugitive can be disentitled based merely on his fugitive status.

The SEC cites another pre-*Degen* case, *BCCI Holdings v. Pharaon,* which is also inapposite and in the context of a forfeiture action.  No. 94 Civ. 3058, 1995 WL 489426 (S.D.N.Y. Aug. 11, 1995).  In *Pharaon*, the Court appointed the plaintiffs to liquidate BCCI's assets as a result of BCCI pleading guilty in criminal proceeding.  *Id.* at *1-2.  Pharaon and others had allegedly formed a sham company to hide BCCI's assets from U.S. regulators and BCCI's creditors and depositors.  *Id.*  Noting that whether (and to what extent) to disentitle Pharaon was discretionary, the Court found that Pharaon's discovery requests could threaten the integrity of the ongoing criminal cases, including "the identity and testimony of witnesses." *Id.* at *4.  The instant case, however, does not involve asset liquidation or a guilty plea by Mr. Martin-Artajo or an entity which he controls.  Due to the public nature of this matter, there is no threat to the integrity of the criminal case if he were permitted to conduct full discovery.

The U.S. Attorney and SEC rely on pre-*Degen*, pre-CAFRA cases with questionable precedential value.  There is no controlling law in which a court invoked the fugitive disentitlement doctrine on similar facts.

**III.      THE REQUEST FOR A STAY IS OVERBROAD AND PREMATURE**

The U.S. Attorney's motion is overbroad and premature, seeking to stay depositions and discovery for persons "whom the Government asserts may be called as a witness in the criminal prosecution, until the conclusion of the parallel criminal case."  It seeks a stay of the deposition of all 129 individuals identified as potential witnesses.  That is the definition of overbroad.

The motion is premature, as no deposition has been noticed, and no subpoena has been served.  In *Cioffi*, the Court denied the government's motion for a stay because a meaningful balancing of interests was impossible as the motion was filed before any discovery requests. 2008 WL 4693320, at *1.  The government had contended that a broad stay was necessary due to its "interest in preventing broad discovery in the civil case from compromising the criminal case."  *Id.*  The Court found that the "[t]he far more sensible approach is to allow discovery to go forward, but to allow the U.S. Attorney to object to particular requests."  *Id.*; *Kaiser v. Stewart*, No. 96-6643, 1997 U.S. Dist. LEXIS 1377 (E.D. Pa. Feb. 6, 1997) (staying discovery only to extent necessary to protect specific interests of government in ongoing criminal investigation).

Furthermore, the procedural setting warrants against a stay, as discovery has just begun. Allowing discovery to proceed in the normal course, and determining the appropriateness of protective orders upon a validly objection to a particular discovery or deposition request is the sensible and fair way to protect the interests of the parties, the Court and the public.  *Cioffi*, 2008 WL 4693320, at *2 (citing *Oakford*, 181 F.R.D. at 272).

<u>CONCLUSION</u>

For the foregoing reasons, Mr. Martin-Artajo respectfully requests that the Court deny the U.S. Attorney's motion for a limited stay of discovery in all respects.

Dated: March 5, 2014     Respectfully submitted,
   New York, NY

FULBRIGHT & JAWORSKI LLP

By: \_\_/s/ Felice B. Galant_____

Felice B. Galant
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, NY 10103-3198
Tel. No.: 212-318-3000

William J. Leone, admitted *pro hac vice*
FULBRIGHT & JAWORSKI LLP
1200 17th Street
Suite 1000
Denver, CO 80202-5835
Tel. No. 303-801-2700

Richard C. Smith, admitted *pro hac vice*
Stephen M. McNabb, admitted *pro hac vice*
FULBRIGHT & JAWORSKI LLP
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel. No.: 202-662-0200