UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

            -against-                              13 Civ. 5677 (GBD) (MHD)

JAVIER MARTIN-ARTAJO and
JULIEN G. GROUT,

                              Defendants.

**DEFENDANT JULIEN GROUT'S MEMORANDUM OF LAW IN RESPONSE TO
THE GOVERNMENT'S APPLICATION TO INTERVENE AND FOR A
<u>LIMITED STAY OF DISCOVERY</u>**

HUGHES HUBBARD & REED LLP

Edward J.M. Little
Marc A. Weinstein
John T. McGoey
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
*Attorneys for Defendant Julien Grout*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND ........................................................................................2

ARGUMENT ............................................................................................3

I.    THE FUGITIVE DISENTITLEMENT DOCTRINE DOES NOT APPLY ..............................................................................................3

    A.    Mr. Grout Is Not A Fugitive Under the Disentitlement Doctrine...........................................................................4

    B.    The Equities Do Not Warrant Application Of the Disentitlement Doctrine. ...............................................7

II.    THE GOVERNMENT HAS NOT ESTABLISHED ANY BASIS FOR A STAY OF DISCOVERY IN THE SEC CASE ............................9

    A.    The Prospect Of Civil Discovery Does Not Constitute Real and Substantial Prejudice. ..............................................10

    B.    The Government Filed Simultaneous Actions Well Aware Of The Processes Of Civil Discovery In The SEC Case. .............12

    C.    The Relevant Factors Weigh Against A Discovery Stay..............15

        1.    The Private Interests Of The SEC Do Not Favor A Stay ...............................................................15

        2.    A Stay Would Prejudice Mr. Grout ..................................16

        3.    The Interests Of The Courts................................18

        4.    Non-Party Interests Do Not Favor A Stay .........................19

        5.    A Stay Is Not In The Public Interest ..................................19

    D.    Any Stay Or Limitation On Discovery Must Be Narrowly Tailored. ...............................................................21

CONCLUSION...........................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bd. of Governors of the Fed. Reserve Sys. v. Mahfouz*, No. 92 Civ. 5096 (MGC),
1992 WL 183556 (S.D.N.Y. July 23, 1992) ............................................................8

*Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 634 (1991) ...............................20

*Collazos v. United States,* 368 F.3d 190 (2d Cir. 2004) ......................................4, 5, 6, 8

*Degen v. United States*, 517 U.S. 820 (1996) .....................................4, 6, 7, 9

*EEOC v. Global Horizons Inc.*, CV. No. 11-00257 DAE-RLP, 2012 WL 874868
(D. Hawaii Mar. 13, 2012)...............................................................10, 21

*Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F.3d 278 (2d Cir. 1997) ..................5, 6, 8

*FTC v. Johnson*, No. 2:10–cv–02203–MMD–GWF, 2013 WL 3155311 (D.Nev.
June 19, 2013)....................................................................................14

*Horn v. Dist. of Columbia*, 210 F.R.D. 13 (D.D.C. 2002)............................................10

*Landis v. N. Amn. Co.*, 299 U.S. 248 (1936) ....................................................9

*Philip Morris Inc. v. Heinrich*, No. 95 CIV. 0328 (LMM), 1996 WL 363156
(S.D.N.Y. June 28, 1996).............................................................................20

*SEC v. Beacon Hill Asset Mgmt. LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618
(S.D.N.Y. Feb. 27, 2003)...............................................................................19

*SEC v. Chakrapani*, No. 09 Civ. 325 (RJJ), 2010 WL 2605819 (S.D.N.Y. June 29,
2010) ........................................................................................14, 19

*SEC v. Cuti*, 08 CV 8648 (S.D.N.Y. Jan. 20, 2009) ............................................ *passim*

*SEC v. Doody*, 186 F. Supp. 2d 379 (S.D.N.Y. 2002)..............................................20

*SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 WL 1531854 (D. Ariz. June
1, 2009) ...................................................................................10, 21

*SEC v. Jones*, No. 04 Civ. 4385 (RWS), 2005 WL 2837462 (S.D.N.Y. Oct. 28,
2005) ...................................................................................15, 16, 21

*SEC v. Oakford Corp.*, 181 F.R.D. 269 (S.D.N.Y. 1998)........................................11, 21

*SEC v. Roman*, 94 Civ. 3621 (SAS), 1996 WL 34146 (S.D.N.Y. Jan. 30, 1996) ..........................7

*SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005) ............................................................10, 13, 16, 17

*SEC v. Sandifur*, No. C05-1631 C, 2006 WL 3692611 (W.D.Wash. Dec. 11, 2006) ....................................................................................................13, 14, 16, 19

*SEC v. Treadway*, No. 04 Civ.3464 VM JCF, 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) ....................................................................................................20

*SEC v. Yuen*, 03-4376 MRP, slip op (C.D. Cal. Oct. 28, 2004).................................12, 16, 17, 18

*Strassheim v. Daily*, 221 U.S. 280 (1911)....................................................................4

*United States v. $45,940*, 739 F.2d 792 (2d. Cir. 1984) ................................................8

*United States v. Banco Cafetero Int'l*, 107 F.R.D. 361 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 1154 (2d Cir. 1986) ........................................................................9

*United States v. Eng*, 951 F.2d 461 (2d Cir. 1991)....................................................6, 8

*United States v. FINRA*, 607 F. Supp. 2d 391 (E.D.N.Y. 2009)...............................11, 12

*United States v. Florez*, 447 F.3d 145 (2d Cir. 2006) ....................................................5

*United States v. Gayatrinath*, No. 02 Cr. 673 (RMB), 2011 WL 873154 (S.D.N.Y. Mar. 11, 2011)............................................................................................7

*United States v. Hijazi*, 589 F.3d 401 (7th Cir. 2009) ....................................................7

*United States v. Kashamu*, 656 F. Supp. 2d 863 (N.D. Ill. 2009)...................................7

*United States v. Kashamu, No. 94 CR 172, 2010 WL 2836727 (N.D. Ill. July 15, 2010)* ........................................................................................................7

*United States v. Mann*, No. S4 00 CR. 632(WHP), 2003 WL 1213288 (S.D.N.Y. Mar. 17, 2003)....................................................................................................7

**STATUTES AND RULES**

28 U.S.C. § 2466................................................................................................4, 5

28 U.S.C. § 2466(a) ..............................................................................................4

28 U.S.C. § 2466(a)(1)..........................................................................................5

28 U.S.C. § 2466(a)(1)(A) ....................................................................................5

28 U.S.C. § 2466(a)(1)(B) ....................................................................................5

Civil Asset Forfeiture Reform Act of 2000 ..................................................................4

**TREATISES AND PERIODICAL MATERIALS**

*Black's Law Dictionary* 604 (5th ed. 1979)......................................................................................5

Defendant Julien G. Grout respectfully submits this memorandum in opposition to (i) the United States Attorney's Office's application to intervene and for a limited stay of discovery until the conclusion of the related criminal proceeding ("Stay Motion"), and (ii) the Securities and Exchange Commission's consent to the Stay Motion.[1]

## PRELIMINARY STATEMENT

The United States Attorney's Office ("USAO") and Securities and Exchange Commission ("SEC", and collectively the "Government") appear to be operating under the assumption that if they call Mr. Grout a fugitive enough times, it will suddenly become the case. But while this strategy may be linguistically bold, it also has significant shortcomings: namely that it ignores Second Circuit precedent and requires a mangling of the factual record. Mr. Grout is not a fugitive, and it would be improper to apply the fugitive disentitlement doctrine to curtail his discovery rights.

The Government also requests that the Court use its inherent powers to grant a discovery stay, but fails to identify any prejudice specific to the criminal case in support of its request. The law is clear that the extraordinary relief of a stay is available only on a particularized showing of prejudice. The USAO makes no such showing. And even if it could, the Government created the situation it now complains about when it decided to initiate simultaneous parallel proceedings and exploit the media frenzy from such joint efforts.

On the other hand, a stay would significantly prejudice Mr. Grout by hampering his right to fully defend himself against serious SEC charges and impacting his ability to obtain and preserve evidence that will be essential to his case. Mr. Grout did not seek to

---

1   Mr. Grout does not oppose the United States Attorney's application to intervene for the limited purpose of seeking a discovery stay but does oppose the relief sought.

be the subject of an SEC action in order to obtain civil discovery. Having been charged

by the SEC, he merely seeks to obtain that which the Federal Rules of Civil Procedure

requires. The Government's application for a stay should be denied in its entirety, and

the discovery process that the SEC initiated by filing charges should proceed so that Mr.

Grout can defend against those charges.

## BACKGROUND[2]

The allegations in both cases stem from Mr. Grout's employment as a junior

trading assistant in the London office of JPMorgan Chase Inc. ("JP Morgan"). That

employment ended in December 2012. (*See* Declaration of Edward J.M. Little, dated

March 5, 2014 ("Little Declaration"), at ¶ 5.) Although Mr. Grout worked in London, he

is a French citizen who was raised in France. Mr. Grout searched for another job in

London without success. As a result, in early July 2013, he, along with his wife and two

young daughters, moved into his parents' country home in his native France. (*Id*. at ¶¶ 5,

6, 8.) Also in July 2013, and indicative of the fact that Mr. Grout did not believe he

would be the subject of imminent arrest, he and his family travelled to the United States

to visit his wife's family. (*Id*. at ¶ 6.)

Unbeknownst to Mr. Grout or his counsel, on August 9, 2013, the USAO filed a

sealed criminal Complaint against Mr. Grout. (*Id*. at ¶ 7.) On August 14, 2013, the

USAO unsealed the Complaint and the SEC simultaneously filed this action. That same

day, the USAO and SEC issued press releases announcing the parallel actions, and

attended a joint press conference for the media. At the press conference, the United

States Attorney for the Southern District of New York introduced several SEC personnel

---

2   The USAO spends four pages reiterating the already well-publicized allegations in the Indictment.
    Although Mr. Grout vigorously disputes the allegations, we do not respond to them here because they
    have no bearing on the Stay Motion.

as "our partners in this prosecution and investigation," including the Co-Director of the SEC's Enforcement Division.  *See* Little Declaration, Exhibit A.  The media coverage was extensive and worldwide.

The Indictment was filed on September 16, 2013.  Mr. Grout has continued to live at the same house in France, and Mr. Grout's counsel informed the USAO where Mr. Grout was living after the arrest warrant was unsealed.  Mr. Grout's counsel has made repeated efforts to negotiate a reasonable bail package upon Mr. Grout's first appearance in the criminal case.  Specifically, counsel has requested that Mr. Grout be permitted to return to his home and family in France during the pendency of the case, as he has two young children and is unable to work in the United States.  To no avail.  The USAO has rejected such a reasonable bail package based upon some unstated "policy."  (*Id*. at ¶¶ 9, 10.)

## ARGUMENT

## I.   THE FUGITIVE DISENTITLEMENT DOCTRINE DOES NOT APPLY

Julien Grout is not a fugitive.  He did not flee the jurisdiction.  Nor at the time of or subsequent to the alleged conduct did he work or live in the United States, and so it cannot be said that he is refusing to return home or to his normal place of employment in order to evade arrest.  As a result, the fugitive disentitlement doctrine does not apply to him, and even if it did, the Court should exercise its discretion not to apply the equitable doctrine here.

More than a century ago, the Supreme Court stated that while a state is justified in pursuing a person who commits acts done by that person outside the jurisdiction intended to produce harm within the jurisdiction, it does not follow that the person is a fugitive from justice if he has not intentionally absented himself from the jurisdiction after

committing acts while within the jurisdiction. *Strassheim v. Daily*, 221 U.S. 280, 285 (1911). That logic remains apt even after the turn of the century.

The judicially crafted fugitive entitlement doctrine was "originally developed by courts to support dismissal of direct appeals by escaped criminal defendants." *Collazos v. United States,* 368 F.3d 190, 197 (2d Cir. 2004). Until the Supreme Court curtailed the practice in *Degen v. United States*, 517 U.S. 820 (1996), some lower courts had expanded the application of the fugitive disentitlement doctrine to various other criminal and civil contexts. In *Degen*, the Supreme Court held that where a criminal defendant who resides overseas has not entered the United States to challenge the criminal charges, disentitlement is "too blunt an instrument" to address the defendant's absence. 517 U.S. at 828. In response to *Degen*, Congress, as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), enacted statutory disentitlement provisions which are limited by their terms to forfeiture actions. CAFRA's disentitlement provisions do not apply to this civil action.

### A.    Mr. Grout Is Not A Fugitive Under the Disentitlement Doctrine.

In CAFRA, Congress provided statutory authority to apply disentitlement to a broad category of defendants,[3] but only in the limited context of forfeiture proceedings. *See* 28 U.S.C. § 2466 ("A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in *any related civil forfeiture* action or a claim in third party proceedings in any related criminal forfeiture action . . ." (emphasis added). In *Collazos*, the Second Circuit made clear that the common law

---

3    CAFRA's statutory disentitlement applies to those who, with notice or knowledge of the arrest warrant and with the intent to avoid criminal prosecution, (i) purposely leave the jurisdiction; (ii) decline to enter or reenter the United States to submit to jurisdiction; or (iii) otherwise evade the court's jurisdiction over a criminal proceeding. *See* 28 U.S.C. § 2466(a).

definition of "fugitive" for purposes of the equitable doctrine is narrower than CAFRA's statutory definition:

> the text of §2466 makes plain that statutory disentitlement extends beyond common-law fugitives to encompass persons who may never previously have been in the United States but who know that they are subject to arrest in this country and who, therefore, refuse to enter its jurisdiction in order to avoid prosecution.

*Collazos*, 368 F.3d at 197.  The Second Circuit specifically noted that traditional common law categories of "fugitive" are covered by § 2466(a)(1)(A) and the "reenter" provision of § 2466(a)(1)(B).  The "reenter" provision encompasses persons who, unlike Mr. Grout, "allegedly committed crimes while in the United States but who were outside the country–for whatever reason–when they learned that their arrests were sought and who then refused to return to the United States in order to avoid prosecution."  *Id*. at 198-99. By contrast, those like Mr. Grout who simply decline to "enter" the United States' jurisdiction are covered by § 2466(a)(1)(B), but are not fugitives under the common law definition.  *See id*. (explaining that the three subparts of § 2466(a)(1) "indicate that the statutory disentitlement power conferred by Congress is not limited . . . to common-law fugitives.")

The Government inexplicably ignores the Second Circuit's holding in *Collazos* as well as the Circuit's common law definition of a "fugitive" in *Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F.3d 278 (2d Cir. 1997).  In *Finklestein*, the Circuit recognized that "[a] fugitive from justice has been defined as '[a] person who, having committed a crime, flees from [the] jurisdiction of [the] court where [a] crime was committed or departs from his usual place of abode and conceals himself within the district."  111 F.3d at 281 (quoting *Black's Law Dictionary* 604 (5th ed. 1979)); *see also United States v. Florez*, 447 F.3d 145, 151 (2d Cir. 2006) (defining "flight" for purposes

of tolling statute of limitations and stating, "most courts, including [the Second Circuit], have concluded that a person's mere absence from a jurisdiction is insufficient, by itself, to demonstrate flight[.]").  Instead, the USAO cites several district court decisions which pre-date the Supreme Court's holding in *Degen*, and which are at odds with *Collazos*. The SEC also cites *United States v. Eng*, 951 F.2d 461 (2d Cir. 1991), notwithstanding the fact that the Second Circuit in *Finklestein* recognized that *Eng* was "impliedly overruled" by *Degen*.[4]  *See Finklestein*, 111 F.3d at 279.

Under the common law definitions adopted by the Second Circuit, Mr. Grout is not a fugitive.  Mr. Grout lived in London during the time of the events alleged in the SEC's Complaint, and returned to his native France after his employment at JPMorgan ended.  At no time during or after the alleged conduct did he live or work in the United States.  The USAO does not allege that Mr. Grout fled from London to avoid arrest.[5]  As discussed above, Mr. Grout's decision to return to France was an economic one, based on the cost of living in London without employment and his ability to live in France in his family's country home.  In these circumstances, the disentitlement doctrine does not apply.

---

4   Even if *Eng* were still good law (which it is not), it does not support the SEC's position that Mr. Grout should be treated as a common law "fugitive."  To the contrary, in the concurring opinion by Second Circuit Judge Katzmann in *Collazos*, he noted that "[n]owhere did *Eng* advert to a person who declined to enter the United States for the first time to submit to jurisdiction as a fugitive."  368 F.3d at 207.

5   Despite the absence of allegations of flight by the USAO, the SEC baldly suggests that Mr. Grout left London because news of a possible arrest was public.  (SEC Mem. at 6-7.)  At the January 8, 2014 conference in this matter, the SEC made a similarly baseless claim.  (*See* Jan. 8, 2014 Tr. at 8).  When called to defend that misrepresentation with facts (Tr. at 22), the SEC's counsel conceded that Mr. Grout was already in France when news about potential arrests was leaked to the public.  (1/8/14 Tr. at 25.)

**B.** **The Equities Do Not Warrant Application Of the Disentitlement Doctrine.**

Even if the fugitive disentitlement doctrine were applicable here, the Court should exercise its discretion against applying it. "Principles of deference counsel restraint in resorting to inherent power, and require its use to be a reasonable response to the problems and needs that provoke it." *Degen v. United States*, 517 U.S. at 823-24 (citation omitted).

The circumstances here are distinct from those in which courts have considered disentitlement an appropriate sanction. First, Mr. Grout's presence outside of the United States does not stem from his role in some sort of global criminal enterprise.[6] To the contrary, Mr. Grout worked at a legitimate position in the financial services industry at the London office of a global financial institution. Consequently, he did not locate abroad for the purpose of furthering a criminal scheme and/or avoiding detection, and there is no policy purpose in extending the doctrine to him. Second, Mr. Grout did not flee the Court's jurisdiction.[7] Third, because Mr. Grout did not work or live in the United States during or after the alleged conduct, this is not a situation where an arrest warrant was issued while he was out of town and he has refused to return in order to avoid arrest.[8]

---

6   The SEC cites *United States v. Kashamu*, 656 F. Supp. 2d 863 (N.D. Ill. 2009), as an example where a court defined a "fugitive" more broadly. In *Kashamu*, the defendant was an alleged kingpin of a global heroin smuggling organization. More significantly, Kashamu moved to reconsider the district court's ruling on fugitive disentitlement, and the court granted that motion. *See United States v. Kashamu*, No. 94 CR 172, 2010 WL 2836727 (N.D. Ill. July 15, 2010). In the reconsideration opinion, the court determined that the fugitive disentitlement doctrine **did not** apply to Kashamu because he did not flee the jurisdiction and had not been in the United States after the government filed charges. 2010 WL 2836727, at *3 (citing *United States v. Hijazi*, 589 F.3d 401 (7th Cir. 2009)).

7   *Cf. SEC v. Roman*, 94 Civ. 3621 (SAS), 1996 WL 34146 at *2 (S.D.N.Y. Jan. 30, 1996) (finding that defendants fled from the U.S. to Greece once "they knew they were about to be indicted," and fled again after extradition proceedings were initiated in Greece).

8   *Cf. U.S. v. Gayatrinath*, No. 02 Cr. 673 (RMB), 2011 WL 873154 (S.D.N.Y. Mar. 11, 2011) (finding that a U.S. citizen who traveled out of the country shortly before charges were filed and failed to return to face charges is a fugitive); *U.S. v. Mann*, No. S4 00 CR. 632(WHP), 2003 WL 1213288 (S.D.N.Y. Mar. 17, 2003) (applying doctrine to U.S. citizen fighting extradition from Mexico).

Fourth, Mr. Grout is not affirmatively seeking to litigate an interest in forfeited property, *cf*. *Eng*, 951 F.2d at 466 (criminal defendant sought to pursue forfeiture claims); *United States v. $45,940*, 739 F.2d 792 (2d. Cir. 1984) (same), or otherwise seeking extraordinary relief, *cf*. *Bd. of Governors of the Fed. Reserve Sys. v. Mahfouz*, No. 92 Civ. 5096 (MGC), 1992 WL 183556, at *1 (S.D.N.Y. July 23, 1992) (denying criminal defendant's request for *expedited* discovery in connection with his efforts to challenge a court order freezing his assets).

Under these circumstances, disentitling Mr. Grout to discovery simply because he resides in France is not a reasonable response and would amount to punishment. *See Collazos*, 368 F.3d at 203 ("[D]isentitlement may not constitutionally be employed simply 'as punishment.'") (citation omitted).  Moreover, application of the fugitive disentitlement doctrine here would be inconsistent with the doctrine's four underlying purposes: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." *Finkelstein*, 111 F.3d at 280.

First, the SEC has failed to demonstrate any barriers to enforcement of an eventual judgment.  Second, Mr. Grout has not flouted the judicial process:  he has not refused to comply with any order of this Court and his absence from the United States has not affected these proceedings.  In fact, Mr. Grout timely filed an answer to the complaint.  Third, Mr. Grout did not flee the Court's jurisdiction, so disentitlement would not discourage flights from justice in this or any other case.  Moreover, it is the

Government, not Mr. Grout, which seeks to disrupt the efficient operation of this Court by seeking an indefinite delay of standard civil discovery processes.  Fourth, Mr. Grout did not "escape," and the Government identifies no prejudice that will result in either case from proceeding with civil discovery.

Simply put, the Government's invocation of the fugitive disentitlement doctrine against Mr. Grout is untethered to any problem caused by his absence and is an attempt to punish him for residing in his home country with his young children while unemployed. The Government initiated these parallel proceedings and now seeks to use disentitlement as a strategic tactic without regard to its purpose and function.  As the Supreme Court recognized, "the sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked." *Degen*, 517 U.S. at 828.  The Court should reject its application here.

## II.     THE GOVERNMENT HAS NOT ESTABLISHED ANY BASIS FOR A STAY OF DISCOVERY IN THE SEC CASE

To obtain a discovery stay, the Government must demonstrate real and substantial prejudice.  A litigant seeking a stay must "make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Amn. Co.*, 299 U.S. 248, 255 (1936).  To justify a discovery stay, the Government must posit "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 1154 (2d Cir. 1986) (citation omitted).  In the context of this parallel criminal/regulatory proceeding, the Government cannot satisfy its burden.

A.      **The Prospect Of Civil Discovery Does Not Constitute Real and Substantial Prejudice.**

The USAO makes no attempt to identify any specific prejudice that civil discovery will reap on the criminal case.  Instead, the USAO trots out the generic, and oft-rejected, claim that the defendants would obtain discovery in the civil case that they would not be entitled to in the criminal case until trial.  (USAO Mem. at 12.)  In recent years, courts have increasingly found that the Government cannot satisfy its burden with such non-descript claims in parallel criminal/regulatory cases such as these.  *See, e.g.*, Hearing Tr. at 54, *SEC v. Cuti*, 08 CV 08648 (S.D.N.Y. Jan. 20, 2009) (finding that the government identified no prejudice other than the loss of a tactical advantage which was an insufficient basis for granting a discovery stay) (a copy of the Hearing Transcript in *Cuti* is attached as Exhibit B to the Little Declaration); *SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 WL 1531854, at *2 (D. Ariz. June 1, 2009) (finding that the Government's "blanket assertion" of harm because civil discovery is broader than criminal discovery was not sufficient to establish the "substantial prejudice" necessary to warrant a stay); *SEC v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005) (rejecting the U.S. Attorney's standard argument that defendants in an SEC action should not be able to obtain more discovery than they would be able to under criminal rules of procedure); *see also EEOC v. Global Horizons Inc.*, CV. No. 11-00257 DAE-RLP, 2012 WL 874868, at *4 (D. Hawaii Mar. 13, 2012) (government's "conclusory assertions that the criminal case might be jeopardized because civil discovery rules are more broad than criminal discovery rules is not sufficient to establish the 'substantial prejudice'" needed to grant a stay); *Horn v. Dist. of Columbia*, 210 F.R.D. 13, 15, 16 (D.D.C. 2002) (finding that the government failed to "make a clear showing of hardship or inequality if required to go

10

forward with the civil case while the criminal investigation is pending") (citation omitted); *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage.").

Nor can the Government assert that the concerns behind criminal discovery restrictions exist here.  Limits on criminal discovery "do not exist for their own sake." *United States  v. FINRA*, 607 F. Supp. 2d 391, 393 (E.D.N.Y. 2009) (citation omitted). Criminal discovery limits are intended to guard against:  (1) perjury and manufactured evidence; (2) opportunity for witness intimidation upon learning the identity of potential witnesses; and (3) unfair surprise by a defendant.  *Id*.; *see also* Hearing Tr. at 7-8, 54, *Cuti*, 08 CV 08648.  These concerns are not present here, and the Government does not contend otherwise.  In fact, the possibility of such evils in the context of a lengthy joint investigation like this one is remote.  Many of the key witnesses have already testified under oath either in the SEC's investigation or the related investigation by the Financial Conduct Authority ("FCA") in London, and so there is little opportunity to suborn perjury.  *See FINRA*, 607 F. Supp. 2d. at 394 ("Unlike perjury and manufactured evidence, any inconsistencies between the testimony adduced at the [civil proceeding] and that adduced at the criminal trial are legitimate fodder for the defense").  Also, the Government has obtained millions of documents, email communications and recorded

11

telephone calls among all of the participants, making it even less likely that a defendant could influence the testimony of others or manufacture evidence.  Moreover, there is no secret about the identity of the Government's potential witnesses.  In fact, the Government itself publicly announced at its joint press release the identity of its cooperating witness, Bruno Iksil.  *See* Little Declaration, Exhibit A.  *See SEC v. Yuen*, No. 03-4376 MRP, slip op at 12 (C.D. Cal. Oct. 28, 2003) (finding that civil discovery would not measurably increase the likelihood of witness intimidation where such discovery will not reveal otherwise unknown confidential witnesses and where there is no cause for concern for intimidation by the defendants) (a copy of the *Yuen* slip opinion is attached as Exhibit C to the Little Declaration).  Not only are the witnesses already known, but most, if not all, are represented by counsel, and thus any communications with such witnesses will be through their counsel, further diminishing any possible witness intimidation.

These circumstances also diminish the likelihood of defense surprise, particularly where, as here, the Government has had ample opportunity to interview witnesses on multiple occasions.  *See FINRA*, 607 F. Supp. 2d at 394 (unfair surprise was not a concern because the testimony that would be presented at the arbitration was equally available to both the government and the defendants).

    **B.**    **The Government Filed Simultaneous Actions Well Aware Of The Processes Of Civil Discovery In The SEC Case.**

The Government chose to file simultaneous actions fully aware that civil discovery rules apply to the SEC action.  The Government cannot choose to get the perceived benefits of a joint media blitz, and then shy away from the discovery

obligations that come along with those decisions.  In *SEC v. Saad*, the Court refused to

countenance such tactics:

> Although applications for a stay similar to the one here made by the U.S.
> Attorney are not uncommon in such "parallel proceedings" situations, they
> are not without their bizarre aspects. It is bewildering enough that
> Congress has decreed that, even though someone facing the potentially
> ruinous financial penalties of an SEC civil complaint should be accorded
> substantial discovery in order to defend herself, the same defendant facing
> the even more severe penalties of a criminal action should barely receive
> any discovery at all.  But it is stranger still that the U.S. Attorney's Office,
> having closely coordinated with the SEC in bringing simultaneous civil
> and criminal actions against some hapless defendant, should then wish to
> be relieved of the consequences that will flow if the two actions proceed
> simultaneously.

229 F.R.D. at 91.

The *Saad* decision is not an outlier.  In *SEC v. Sandifur*, No. C05-1631 C, 2006

WL 3692611 (W.D.Wash. Dec. 11, 2006), the Government filed parallel proceedings

four days apart, and subsequently sought to stay certain depositions in the SEC case.  The

parallel nature of the proceedings weighed against the stay request:

> [a]lthough courts have been receptive to Government stay requests in civil
> cases brought by parties other than the Government, results in recent years
> have been markedly different when the Government itself brings a civil
> lawsuit simultaneous with a criminal proceeding.  Courts regularly deny
> stays when civil regulators have worked directly in concert with the
> criminal prosecutors during the investigation and the Government has
> used parallel proceedings to its advantage.

*Sandifur,* 2006 WL 3692611, at *2.  The court rejected the Government's generic

prejudice claim that the defendant would get discovery in the civil case that was

unavailable in the criminal case.  The court explained that "[h]ad the Government thought

this was a serious problem, it could have easily avoided it by waiting until after the

criminal matter was resolved to institute civil proceedings."  *Id*. at *3.  "Instead, the

United States worked directly with the SEC and voluntarily chose to institute both civil

and criminal actions at the same time.  As a result, the Defendants are now facing very serious civil charges, and they have a strong interest in a timely resolution."  *Id.*; *see also FTC v. Johnson*, No. 2:10–cv–02203–MMD–GWF, 2013 WL 3155311 at *3 (D.Nev. June 19, 2013) ("Whatever strategic advantage the government may retain from the criminal discovery rules is forfeited when it decides to bring a concurrent civil proceeding, in the absence of any specific prejudice that may result from their simultaneous running"); Hearing Tr. at 27, 54, *Cuti*, 08 CV 08648 (denying stay and recognizing that the government, not the defendants, triggered the discovery obligations by choosing to file parallel actoins); *SEC v. Chakrapani*, No. 09 Civ. 325 (RJS), 2010 WL 2605819, at *7 (S.D.N.Y. June 29, 2010) ("the government and SEC could have engaged in a cost-benefit analysis that weighed the benefits of simultaneously initiating civil and criminal proceedings against the cost of possibly losing the government's tactical discovery advantage in the criminal case").

The Government argues that Mr. Grout seeks to make an "end run" around criminal discovery rules (USAO Mem. at 13) as though Mr. Grout initiated a regulatory action against himself for this purpose.  Mr. Grout is not seeking to "benefit" from the SEC action, but only to defend against its serious allegations.  It is the Government, not Mr. Grout, that chose this path, and the Government must live with that decision. "[T]here are many legitimate reasons why the government may choose to institute civil and criminal proceedings against [a] defendant at the same time . . . But, if the government chooses this path, it is responsible for bringing the situation upon itself and must accept the necessary costs of that choice."  Hearing Tr. at 57-58, *Cuti*, 08 CV 08648.

**C.**     **The Relevant Factors Weigh Against A Discovery Stay.**

In weighing whether to grant a stay in parallel proceedings, courts generally

consider the following factors on a case by case basis:

> (i) the private interests of the plaintiff in proceeding expeditiously with the
> civil litigation as balanced against the prejudice to the plaintiff if delayed;
> (ii) the private interests of and burden on the defendants; (iii) the interests
> of the courts; (iv) the interests of persons not parties to the civil litigation;
> and (v) the public interest.

*SEC v. Jones*, No. 04 Civ. 4385 (RWS), 2005 WL 2837462, at *1 (S.D.N.Y. Oct. 28,

2005).[9]  Given that the USAO has failed to make a specific and particularized showing of

prejudice if discovery were to proceed in the normal course, a balancing of the factors

favors a denial of the USAO's application for a stay.

**1.**     **The Private Interests Of The SEC Do Not Favor A Stay**

The plaintiff here is the SEC.  The SEC concedes that it "usually has an interest in

expeditiously obtaining relief."  (SEC Mem. at 11.)  Despite having initiated these

proceedings and sought press coverage for the filing, the SEC takes the position that this

proceeding, unlike its usual cases, should not move expeditiously.  The SEC's concerns

are clearly not based on its own interests, which could have been addressed by choosing

not to file a parallel action and attending a joint press conference with the United States

Attorney.  Rather, the SEC's position is driven by the preferences of its "partner" in this

investigation, the United States Attorney's Office.  Indeed, the SEC does not articulate a

---

9    The Government argues that the Court should consider two additional factors: whether the cases
     overlap and the status of the criminal case.  (USAO Mem. at 10-11.)  In the context of parallel
     proceedings, it is self-evident that the allegations will overlap.  The fact that the allegations against Mr.
     Grout overlap does not make this case unique to parallel proceedings, and as noted above, courts have
     routinely rejected stay requests in overlapping proceedings absent a specific showing of substantial
     prejudice to the criminal case.  In addition, the return of an indictment should not weigh in favor of a
     stay, as the concerns about grand jury secrecy no longer exist and there can be no showing of any
     impact to any investigation.  Once an indictment has been returned, the only issue is whether access to
     civil discovery implicates the concerns underlying the more restrictive criminal discovery rules.  For
     the reasons set forth in Section II.A, above, no such concerns are implicated here.

single interest of its own in consenting to the stay application.  (*See* SEC Mem. at 11.)
As such, this factor weighs against a stay.

### 2. A Stay Would Prejudice Mr. Grout

The USAO frames its motion as a "limited" discovery stay (USAO Mem. at 11),
but in fact the USAO seeks to stay all but document discovery.  Mr. Grout would be
severely prejudiced by such a stay.  The SEC complaint contains serious allegations of
wrongdoing which have been publicized throughout the media in both the United States
and abroad.

Mr. Grout has answered the complaint and is not seeking any extraordinary relief
from the Court.  Like all others charged by the SEC, he should be permitted to contest the
allegations through procedures contained in the Federal Rules of Civil Procedure.  When
a person's "reputation and credibility have been called into question" and his "current[]
unemploy[ment] and the pendency of [the] litigation continues to cloud his future career
and personal life," that person "deserves a timely opportunity to clear his name."  *Jones,*
2005 WL 2837462, at *2 (denying the government's stay request); *see also Saad*, 229
F.R.D. at 92 (denying the stay and finding that defendants were "not just facing a
criminal indictment; they are also facing a very serious SEC civil action, and they are
thus fully entitled to the timely discovery that federal law grants them in defending such
an action"); *Sandifur,* 2006 WL 3692611, at *3 (defendants were facing "very serious"
civil charges and had "a strong interest in a timely resolution"); *Yuen*, No. 03-4376 MRP,
slip op. at 5 (finding that denying the stay served any potential interest the defendants had
in clearing their names).

Not only does Mr. Grout have the right to challenge the allegations, he has a
particular interest in collecting and preserving evidence, including deposing witnesses

before time adversely affects memories.  *See* Hearing Tr. at 55-56, *Cuti*, 08 CV 08648,

("a defendant still has a vital interest in collecting and preserving evidence which may be

necessary to defend himself in a civil proceeding" and granting a stay "would prejudice

the defendants' ability to obtain and preserve evidence that could be essential to their

case").

The potential for delay in resolving the SEC case also weighs against a stay.

Regardless of when the criminal proceedings begin, they are likely to continue for years,

not weeks or months.  Proceeding with discovery in the civil case now will avoid

unnecessary delay in bringing this case to a resolution after the criminal case ends.  *See*

Hearing Tr. at 13, 56, *Cuti*, 08 CV 08648 ("while discovery could not be completed until

after the criminal case is concluded, the defendants would have the opportunity to

complete the great bulk of discovery prior to the conclusion of the criminal case, and they

would be in a position to complete the civil case far more expeditiously than if the civil

case were stayed entirely."); *Yuen*, No. 03-4376 MRP, slip op. at 5 (reasonable to believe

that any forthcoming vindication would come sooner if civil discovery is not stayed).

Mr. Grout's attempt to obtain civil discovery while seeking to avoid having to

invoke his Fifth Amendment rights at a deposition is not, as the SEC suggests, "brazen."

Rather, it is the type of particularized demonstration of prejudice that the courts require

for a stay, and that the Government cannot demonstrate.  Nor is Mr. Grout's request

unprecedented.  In *Saad*, the Court narrowly tailored a stay of depositions only for those

witnesses expected to invoke the Fifth Amendment, including the two defendants.  *See*

229 F.R.D. at 92.  In *Cuti*, the Court likewise found it reasonable to limit any discovery

stay to "the depositions of the defendants themselves and any other witness not yet

17

identified who may assert a Fifth Amendment privilege."   Hearing Tr. at 57, *Cuti*, 08 CV 08648.  Here, permitting Mr. Grout to delay his deposition will not prejudice the SEC because the SEC has already obtained Mr. Grout's sworn testimony from the FCA investigation as well as notes of JPMorgan's interviews of Mr. Grout.

### 3.    The Interests Of The Courts

The USAO and the SEC suggest that a stay would simplify the civil action because "[i]ssues common to both cases can be resolved in the criminal proceeding" (USAO Mem. at 13) and "[r]esolution of the criminal case may resolve this civil action." (SEC Mem. at 13.)  This argument necessarily assumes that Mr. Grout will be convicted in the criminal case, which "is not as simple a conclusion to reach as the Government argues.  It depends on law and facts not yet before this Court." *Yuen*, No. 03-4376 MRP, slip op. at 7 ("Although some issues may be resolved in the criminal action that would not need to be relitigated in the civil action, there is no certainty that this would occur"). Furthermore, "[w]hile the criminal proceeding could narrow the issues in the civil case, this outcome is far from certain; and such a speculative benefit is, in any case, outweighed by the tangible prejudice to the defendants that they would face if they were prevented from collecting and preserving evidence and asserting defenses until the conclusion of the criminal proceedings." Hearing Tr. at 57, *Cuti*, 08 CV 08648.

The Court's interest is best served by proceeding with discovery in the normal course so that the case can be resolved swiftly and justly.  "Effective management of [the] Court's docket requires the Court to usher cases through the civil process quickly and fairly" and "[t]his is an interest that would definitely be harmed by granting a stay." *Yuen*, No. 03-4376 MRP, slip op. at 9-10.

### 4.     Non-Party Interests Do Not Favor A Stay

Other than the United States Attorney's tactical interest in preventing Mr. Grout from obtaining civil discovery, the Government has not identified any non-party interests at issue here.  This factor does not favor a discovery stay.

### 5.     A Stay Is Not In The Public Interest

The SEC's complaint raises serious allegations and the public interest is best served by resolution of this action.  *Chakrapani*, 2010 WL 2605819, at *11 (public has a clear interest in open and full discovery); *Sandifur,* 2006 WL 3692611, at *3 ("when balanced against the interests of the Defendants, the Court, *and the public at large in the efficient resolution of the civil matter*, the United States's generalized arguments carry little weight")(emphasis added).

The Government contends that the public interest favors a stay merely because criminal discovery rules are more restrictive than civil discovery rules.  (USAO Mem. at 12; SEC Mem. at 13-14.)  As discussed in Section II.A above, numerous courts have held that a defendant's ability to obtain broader civil discovery is not a sufficient argument for granting a stay, and the concerns behind the restrictive criminal discovery rules are not implicated here.

The three cases cited by the USAO (USAO Mem. at 12-13) for the proposition that a civil litigant should not be able to use the broader civil discovery rules to obtain discovery not otherwise available at the early stages of a criminal case are inapposite.  In *SEC v. Beacon Hill Asset Mgmt. LLC*, the criminal case was in the investigative stage and the court had clear evidence that the defendant was avidly pursuing discovery in the SEC case "with a view to finding out what ha[d] passed between various entities and the United States Attorney's office."  No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1

19

(S.D.N.Y. Feb. 27, 2003).  There is no such allegation here.  In *Philip Morris Inc. v. Heinrich*, No. 95 CIV. 0328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996), the criminal case was in the investigative stage and did not involve a parallel SEC or other regulatory action.  And in *Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 640 (1991)*,* the District Attorney sought a stay of non-party depositions to preserve the confidentiality of grand jury proceedings, the stay lasted less than two months, and the defendant had obtained a foreign injunction which prejudiced the criminal proceedings because it prevented the District Attorney from gaining access to certain evidence and the grand jury from acting expeditiously.  Here, by contrast, there can be no adverse impact on grand jury proceedings, and the USAO seeks a stay of indefinite scope.

The SEC's reliance on *SEC v. Doody*, 186 F. Supp. 2d 379 (S.D.N.Y. 2002), fares no better.  In *Doody*, the parallel cases involved a father-son duo – the SEC charged only the father, and the USAO charged only the son.  The Court stated that it "would have to be unimaginably naïve" to believe that the father "is not a stalking horse" for his son in seeking civil discovery.  *Id*. at 382.  Here, Mr. Grout is charged in both cases and there is no suggestion that he is acting as anyone's stalking horse.  The SEC's reliance on *SEC v. Treadway*, No. 04 Civ.3464 VM JCF, 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005), is also misplaced.  In *Treadway*, as in *Doody*, the defendant opposing the stay was not charged criminally.  Because trial in the criminal case was imminent, the Court found that a stay would not delay the civil case and granted a stay to prevent counsel for the criminal defendant from monitoring the depositions to gain an advantage at trial.  *Id*. at *3-4.  Here, Mr. Grout is not seeking any advantage but is using civil discovery to defend

the civil case against him, and a stay will undoubtedly cause a lengthy delay in the civil

proceedings.

        **D.**      <u>**Any Stay Or Limitation On Discovery Must Be Narrowly Tailored.**</u>

      Given the USAO's failure to articulate any specific prejudice to its case, the

appropriate course is to address particular concerns about specific discovery if and as

they arise.  Recently, courts have allowed civil discovery to proceed in SEC cases subject

to the prosecutor's right to object to particular discovery requests that threaten the

integrity of the criminal proceeding.  Hearing Tr. 58, at *Cuti*, 08 CV 08648 (denying the

stay of classes of discovery identified by the government and ruling that if at a later time

the government identified specific discovery requests that would prejudice the criminal

case, it could make an application at that time); *Jones*, 2005 WL 2837462, at *2

(extending discovery but instructing the SEC and the defendant to notify the government

of the performance of any discovery three weeks in advance so the government could

"apply for a stay of discovery which would impact its criminal case"); *Fraser*, 2009 WL

1531854, at *4 (the preferred course was to evaluate the government's specific objections

as they arose and impose limiting orders such as protective orders or sealed

interrogatories if warranted); *Global Horizons Inc.*, 2012 WL 874868, at *5 (government

granted the opportunity to raise objections or seek appropriate relief in connection with

specific discovery requests as they arose); *Oakford Corp.*, 181 F.R.D. at 270 (noting the

court's invitation to the government "to apply for particularized protective orders if any

aspect of the civil discovery threatened the integrity of the criminal case").

      The parties in the SEC action can provide notice to the USAO of scheduled

depositions.  At that time, the USAO can apply for a limited protective order if it can

make a showing of specific and substantial prejudice related to that deposition.  No more

is required to address the Government's concerns.

## <u>CONCLUSION</u>

For the reasons set forth above, Mr. Grout respectfully requests that the Court

deny the Government's stay application.

Dated: March 5, 2014
      New York, New York

HUGHES HUBBARD & REED LLP

By:     /s/ Edward J.M. Little
          Edward J.M. Little
          Marc A. Weinstein
          John T. McGoey
          One Battery Park Plaza
          New York, New York 10004
          Telephone:  (212) 837-6000
          *Attorneys for Defendant Julien Grout*