UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                               Plaintiff,<br><br>           -against-<br><br>JAVIER MARTIN-ARTAJO and JULIEN G. GROUT,<br><br>                               Defendants. | 13 Civ. 5677 (GBD) (MHD)<br><br>DECLARATION IN SUPPORT OF GROUT'S MEMORANDUM IN RESPONSE TO GOVERNMENT'S <u>APPLICATION TO INTERVENE</u> |

I, EDWARD J.M. LITTLE, hereby declare as follows:

1. I am a partner in the firm of Hughes Hubbard & Reed LLP, counsel for defendant Julien G. Grout, and I am submitting this declaration in support of his memorandum of law in response to the government's application to intervene in this action and request a stay of discovery. Unless otherwise stated, the statements made in this declaration are upon information and belief.

2. For the reasons stated below, Julien Grout is absolutely not a "fugitive."

3. I was retained to represent Mr. Grout in August of 2012 -- over a year and a half ago. During that time, I and members of our defense team met repeatedly with the lead prosecutor, Assistant United States Attorney Eugene Ingoglia and other Assistant United States Attorneys, along with numerous SEC Enforcement staff lawyers and FBI agents, and made a number of presentations to convince them that our client was not responsible for any criminal wrongdoing in connection with the collapse of the portfolio of credit default swaps ("CDSs") managed at the Central Investment Office ("CIO") of JPMorgan Chase, Inc. ("JPMorgan") in London.

4.      The person primarily responsible for the trading and management of the CDS portfolio was Bruno Iksil.  The government lawyers indicated that they were investigating him as well as others, including Mr. Iksil's superior Javier Martin Artajo and his assistant, our client Julien Grout.  After repeated meetings during the course of the year from August of 2012 to August of 2013, the government lawyers indicated to us that they had still not reached a decision as to whether they would indict and, if so, when.  They led us to believe that they would probably not make a final decision until September of 2013.

5.      While JPMorgan terminated the employment of Mr. Iksil following the collapse of the CDS portfolio in the previous summer, Mr. Grout was retained as an employee until the end of 2012.  However, he became unemployed in January of 2013 and was not able to obtain other employment in London for months thereafter due to the heavy, negative publicity surrounding the "London Whale" affair, named after Iksil due to his accumulation of massive positions in the CDS market.

6.      Mr. Grout is married with two young daughters, and he was no longer able to afford the high cost of living in London so he decided to return to France, his homeland, and take up his parents' offer to live in the family's country home in central France.  He made this decision before there was any indication that the government would actually indict and bring a parallel civil suit.  He did not return to France to "flee" but to take care of his family with his rapidly diminishing savings.  Indeed, after moving his family to France on July 10, 2012, Mr. Grout actually travelled to the United States the very next day to visit his wife's family in Alabama.  This is not the action of a person seeking to flee the United States in the belief he was actually going to be indicted and possibly arrested here.

       7.       The prosecutors suddenly, without warning, filed a sealed criminal complaint against Mr. Martin Artajo and Mr. Grout on Friday, August 9, 2013.  Ironically, I was attempting that very week to reach Mr. Ingoglia by phone to inform him that our client had returned to France for financial reasons because I did not want him to jump to the conclusion that he was doing so to avoid prosecution.  Mr. Ingoglia did not return my call, presumably because he was filing the criminal complaint without giving us any indication that he was doing so – despite the fact that we were led to believe that a final decision would not be made until September.

       8.       Mr. Grout was born, raised and educated in France, and his parents and other family are there.  He had every right to move back home, especially given his financial situation, after losing his job following the failure of his boss Bruno Iksil to manage the CDS portfolio at JPMorgan.  (Incredibly, the government has actually immunized Iksil, the primary actor in the whole London Whale Affair, in its zeal to bring this highly publicized case.)  Mr. Grout has no legal obligation, under either U.S. or French law, to return to the United States.

       9.       Nevertheless, I have had repeated conversations with the U.S. Attorney's Office in an attempt to work out an acceptable bail package.  I have requested that in return for Mr. Grout's voluntary return to the United States to be arraigned on the indictment and defend himself, the Office agree to permit him to return in the interim to his home in France, where his wife and two daughters now live.  It would make no sense for him to appear voluntarily if he did not intend to appear again for pretrial hearings and eventual trial.  He cannot move here with his family for the obvious reason that he cannot legally work here – even if anyone would hire him at this juncture – and cannot therefore afford to move his family to New York and support them

here during the presumably lengthy amount of time it will take to bring this complicated case to trial.

10. Despite the reasonableness of our request, the Office has refused to agree to these terms because of some unstated "policy." It is the government, not Mr. Grout, who is making it difficult for the criminal case to proceed at this point. Having done so, the SEC lawyers should not make the false assertion that Julien Grout is a "fugitive" and thereby evade their responsibility to litigate the civil case they saw fit to bring on the heels of the criminal case.

11. Attached as Exhibit A is a true and correct copy of the Prepared Remarks for United States Attorney Preet Bharara from the August 14, 2013 press conference at which federal criminal charges against Mr. Grout were unsealed.

12. Attached as Exhibit B is a true and correct copy of a Hearing Transcript in *SEC v. Cuti*, No. 08 Civ. 08648 (S.D.N.Y. Jan. 20, 2009).

13. Attached as Exhibit C is a true and correct copy of a Memorandum of Decision in *SEC v. Yuen*, No. 03 Civ. 4376 (C.D. Cal Oct. 28, 2003).

I declare under penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct.

Executed this 5th day of March 2014 at New York, New York.



_____

Edward J.M. Little