**NORTON ROSE FULBRIGHT**

April 20, 2015

**BY ECF AND HAND**

Hon. George B. Daniels
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Norton Rose Fulbright US LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
United States

**Bill Leone**
**Partner**
Direct line +1 212 318 3324
william.leone@nortonrosefulbright.com

Tel +1 212 318 3000
Fax +1 212 318 3400
nortonrosefulbright.com

Re:   *SEC v. Javier Martin-Artajo and Julien Grout*, Case No. 13-Civ-5677 (GBD) (MD)

Dear Judge Daniels:

On behalf of defendant Javier Martin-Artajo, we write in advance of the status conference scheduled for May 7, 2015, as directed by the Court.

Despite their best efforts, the parties cannot agree on two critical discovery issues that require Court intervention. Pursuant to the Court's instructions we submit this letter to seek a resolution of these two issues before resorting to a formal motion. The first is the refusal of the United States Attorney's Office ("USAO") to permit discovery of interview summaries that do not constitute Jencks material and which were used by JPMorgan Chase & Co. ("JPMorgan") to make business decisions affecting the defendants and principal witnesses. The second is the USAO's refusal to consider modification of the off-limits for deposition "List of 30," as to which the USAO has never made any particularized showing.

### Witness Statements Prepared by WilmerHale LLP

Mr. Martin-Artajo seeks the production of factual witness statements that JPMorgan's counsel, WilmerHale LLP ("WilmerHale"), prepared summarizing the substance of its interviews with Bruno Iksil and Achilles Macris. JPMorgan has agreed to produce these Interview Statements to the defendants. Only the USAO and SEC (together, the "Government") are standing in the way.

WilmerHale conducted dozens of interviews during its investigation into the losses incurred by the Synthetic Credit Portfolio ("SCP"), including multiple interviews of Messrs. Grout, Iksil, Macris, and Martin-Artajo. The purpose of the interviews was, among other things, to assist JPMorgan with its decision in July 2012 to restate its financials, and to inform its decisions with respect to resignations, bonuses, terminations and the like. WilmerHale summarized the factual statements made in these interviews in four separate documents, which it refers to as the "Interview Statements." Business people in JPMorgan and its outside, independent auditors then used these statements and reports of these statements provided by WilmerHale to make business decisions including with respect to the restatement of JPMorgan and employment of the

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.   53970275

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

The Honorable George B. Daniels
April 20, 2015
Page 2

NORTON ROSE FULBRIGHT

defendants. The Court previously ruled that the defendants are entitled to their own Interview Statements, which have since been produced. The Court did not, at that time, order the production of the Interview Statements of Messrs. Iksil and Macris.

The USAO sought to postpone indefinitely the production of the Interview Statements under the guise of its motion to stay all depositions and Jencks material (the "Stay Motion"). But these statements were not 3500 material in the first place. They were not prepared by the USAO or SEC. They were not part of any criminal investigation or witnessed or participated in by any government agent. And the USAO has acknowledged to us that they do not contend that the Interview Statements are 3500 material. The Interview Statements were also widely disseminated including to the SEC, Congress, and the U.K. Financial Conduct Authority.

We have recently learned that the contents of the Interview Statements were disclosed to yet another third party, JPMorgan's external auditor, PricewaterhouseCoopers ("PwC"). Documents produced by PwC show that WilmerHale conducted a dramatic reading to PwC of all relevant interview statements, including those of Messrs. Grout, Iksil, Martin-Artajo and Macris. Such documents include internal PwC memoranda and notes taken during these read-outs. In fact, the Interview Statements were prepared in furtherance of JPMorgan's decision to restate in July 2012, not as part of any criminal investigation – this is why JPMorgan shared them with PwC.

There is no legally cognizable protection or privilege available that would shield the Interview Statements from disclosure to the defendants.[1] To the contrary, defendants have the right to seek informal production of any evidence, to interview any witness, and to obtain any materials in support of their defense.

Standard 3-3.1(d) of the American Bar Association Standards for Criminal Justice states that "A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. A prosecutor should not advise any person or cause any person to be advised to decline to give to the defense information which such person has the right to give." *See U.S. v. Peter Kiewit Sons' Co.*, 655 F. Supp. 73 (D. Colo.) ("the right of the defense to have access to witnesses in a criminal case should be unfettered and free of government intervention"), *aff'd sub nom. U.S. v. Carrigan*, 804 F.2d 599 (10th Cir. 1986); *Gregory v. U.S.*, 369 F.2d 185 (D.C. Cir. 1966) (holding that the prosecution's infringement of defendant's right to an equal opportunity to interview witnesses violated due process: "A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined."); *see also Coppolino v. Helpern*, 266 F. Supp. 930 (S.D.N.Y. 1967) (holding that "constitutional notions of fair play and due process dictate that defense counsel be free from

---

[1] While we cannot be certain as to whether WilmerHale was reading from its internal interview memoranda or the summaries contained in the Interview Statements, at a minimum the defendants are entitled to copies of the Interview Statements.

53970275

The Honorable George B. Daniels
April 20, 2015
Page 3

**NORTON ROSE FULBRIGHT**

obstruction" in interviewing prospective witnesses: "A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal case without the consent of opposing counsel.").

These statements are **_not_** materials created by the USAO, subject to Jencks protection, or otherwise protectable. To be sure, the Securities and Exchange Commission (the "SEC") is also in possession of other materials that it generated in its administrative case and likely has access to other materials generated by its sister agency in the United Kingdom. We leave for another day whether the SEC must also produce those materials. But, for purposes of the May 7 hearing, we seek only production of these ordinary business materials as to whom no one other than the Government has an objection and which they do not control.

### Depositions of Individuals Currently "Off Limits" Due to the Limited Stay

Mr. Martin-Artajo also should be permitted to take the depositions of former JPMorgan employees Keith Stephan and Peter Weiland and current JPMorgan employee James Wilson.

On August 13, 2014, the Court ruled that all depositions could proceed, with the exception of the defendants, and 30 third parties (the "List") including Messrs. Stephan, Weiland and Wilson, absent further Order. Since that time, including at the last conference held on January 8, 2015, the Court has encouraged the parties and the USAO to meet and confer as to the possible removal of certain individuals from the List to move discovery forward. We asked the USAO whether it would agree to remove Messrs. Stephan, Weiland or Wilson from the List and permit us to depose them. It has declined to do so and provided no particularized showing as to why.

The history of "The List" is important to recall. At the hearing on the Stay Motion held on April 2, 2014, the Court ruled that full document discovery should proceed and refused to issue a blanket stay of depositions, instead requiring the USAO to make a particularized showing regarding any witness it wished to be considered off limits. The USAO agreed to provide us with the list of likely witnesses in the criminal trial. The USAO never provided such a list.

On July 15, 2014, to advance the meet and confer process, we provided a list of 32 potential witnesses whom we wanted to depose. This was a list of witnesses the defendants proposed as the list that *should* be deposed and came to Court prepared to explain why they could be deposed without harming the USAO's criminal case. (Exhibit A hereto) In response, the SEC (not the USAO) informed us that everyone on our list of 32 were likely witnesses in the criminal trial. (Exhibit B hereto) By the time of the August 13, 2014 hearing, the USAO still had not provided its own list.

At the August 13, 2014 hearing, the USAO adopted our entire list of potential deponents as its own off-limits List, without ever making any kind of showing.[2] The Court ordered that the

---

[2] Our initial List included 32 potential witnesses but the USAO agreed to remove PwC and Lorraine Fleming from the list at the August 13, 2014 hearing.

53970275

The Honorable George B. Daniels
April 20, 2015
Page 4

**NORTON ROSE FULBRIGHT**

defendants could not notice the deposition of anyone on the List, absent further Order, but again directed the parties and the USAO to continue to meet and confer to reduce the List.

In our most recent meet and confer, the USAO provided two reasons as to why they will not consent to the deposition of any individual on the List. First, they claim that the Court purportedly ruled that no one should come off the List until the defendants come to the U.S. to answer the charges against them. Second, while acknowledging they have never made a particularized showing as to any individual, they claim that the Court essentially ruled that a "generalized showing" was sufficient. One searches the transcripts of the relevant hearings in vain for any such rulings. *See* Docket Entries 58 (Transcript from April 2, 2014 Hearing), 65 (Transcript from August 13, 2014 Hearing), and 70 (Transcript from January 8, 2015 Hearing).

In fact, the Court made clear that Mr. Martin-Artajo's exercise of his extradition rights was not a basis to halt all deposition discovery in this case. *See* Docket Entry 65 at 26:13-22. Rather, the Court explained that a balance must be struck in protecting the integrity of the criminal case, required the USAO to make a particularizing showing as to why individual depositions should be stayed, and encouraged the defendants and the USAO to try to come to an agreement on the removal of some individuals from the List. *See* Docket Entry 58 at 74:16-25, 75:1-5.

Nevertheless, at every step of the way, both the USAO and SEC are trying to use the fact that Mr. Artajo is asserting rights that are sanctioned by a formal U.S. treaty with Spain to stop discovery of the truth in this case. Mr. Martin-Artajo is a Spanish citizen who performed his duties in the United Kingdom while working for JPMorgan, remains in Spain where he voluntarily surrendered to Spanish authorities and has been fully participating in the Spanish extradition proceeding. He has attended every hearing and honored every obligation related to his surrender without exception. The Government cannot claim anything to the contrary.

As is his right, Mr. Martin-Artajo has raised issues in the Spanish extradition proceeding that constitute valid legal concerns. They include the differences between U.S. and Spanish law relating to the proper allocation of responsibility within a public company for its public filings and the right to confront the evidence against him in a timely manner, such as the statements of an alleged, fully immunized co-conspirator, Bruno Iksil, the architect of the SCP. Immunity, confrontation, discovery and liability for the stewardship of a public company are all topics on which mature democracies have developed differing views. The Spanish extradition proceeding provides a venue to reconcile the views of the differing legal systems that touch this case.

In addition, during the course of this matter, Mr. Martin-Artajo has (1) been interviewed by JP Morgan investigators on multiple occasions and in multiple settings; (2) submitted to several recorded examinations by the Financial Conduct Authority (the U.K.'s SEC equivalent); (3) accepted service of the Complaint in this matter; (4) produced all documents in his possession requested by the SEC without exception (including documents containing his statements); and (5) has met every obligation of a litigant, except that he has asked that any decision about his submission to additional interrogation in this case, by deposition or otherwise, be deferred. Mr. Martin-Artajo's exercise of his extradition rights is not a valid basis to halt all depositions in this

53970275

The Honorable George B. Daniels
April 20, 2015
Page 5

**NORTON ROSE FULBRIGHT**

case. The Court has recognized that fact at multiple hearings. *See* Docket Entries 35, 58, 65 and 70.

We want to depose Messrs. Stephan and Weiland so that they can explain the risk management function with respect to the SCP. Mr. Stephan is JPMorgan's former head of Market Risk, CIO International and Mr. Weiland is JPMorgan's former head of Market Risk CIO Global. Based on what we learned at the recent deposition of Mr. Lello, a Vice President in JPMorgan's Compliance department, we would also like to depose Mr. Wilson, an Executive Director of JPMorgan's EMEA Compliance team.

- Messrs. Stephan, Weiland, and Wilson are not of particular interest to the SEC or USAO. None of these individuals were identified as relevant in the SEC's Rule 26(a)(1) disclosures. The SEC and USAO are coordinating their prosecution of the civil and criminal cases, filing both cases on the same day, and relying on much of the same underlying information and many of the same allegations. As these individuals were not important enough for the SEC to have included them in its Rule 26(a)(1) disclosures, they cannot be so central to the criminal case that their depositions should be stayed.

- Messrs. Stephan and Weiland have knowledge that cannot be obtained elsewhere. An important issue in this case is the development of risk limits within JPMorgan. The people who can speak effectively and with personal knowledge about this issue are on the List, and include Messrs. Stephan and Weiland. Given the role that the risk function played in the management of the SCP, Messrs. Martin-Artajo and Grout are entitled to develop an understanding of such fundamental facts through those who are knowledgeable.

- Mr. Weiland has already provided testimony to the Senate Permanent Subcommittee on Investigations at a public hearing. Therefore, it is unlikely that his deposition would cause harm to the criminal case.

- Mr. Wilson also possesses knowledge that cannot be obtained elsewhere. The allegations in this case are focused primarily around events that occurred in the first financial quarter of 2012. At the end of March 2012, Mr. Martin-Artajo escalated his concerns that the SCP positions may have been known by the JPMorgan Investment Bank and other market participants. This escalation prompted an investigation by JPMorgan Compliance, including Mr. Wilson and his colleagues James Brown, Mark Goulden and Howard Lello. We have taken the deposition of Mr. Lello and have scheduled the depositions of Messrs. Brown and Goulden. We believe, therefore, it would be logical and efficient to take the deposition of Mr. Wilson to discover the full and complete facts surrounding this investigation.

- Mr. Lello testified that Mr. Wilson instructed him regarding the scope of JPMorgan's investigation and that he provided Mr. Wilson with verbal updates of his findings. We have not located any documents that shed light on what became of Mr. Lello's updates or

53970275

The Honorable George B. Daniels
April 20, 2015
Page 6

**NORTON ROSE FULBRIGHT**

       any conclusions Mr. Wilson drew from them.  This is important to the defendants, as it bears on the challenges in valuing the positions in the SCP during the relevant period.

For the above reasons, we respectfully request that the Court order the production of the Interview Statements of Messrs. Iksil and Macris and permit defendants to seek the depositions of Messrs. Stephan, Weiland, and Wilson.  We reserve our rights to conduct additional discovery, including with respect to any person or individual on the List, in the future.

We thank the Court for its consideration, and look forward to discussing these issues at the conference scheduled for May 7, 2015.

Respectfully submitted,

Bill Leone

Attachments

cc:   All Counsel of Record

53970275