

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE, 200 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10281-1022

WRITER'S DIRECT DIAL LINE
(212) 336-0924
PilgrimN@sec.gov

April 30, 2015

**By ECF and UPS**

Honorable George B. Daniels
United States District Judge
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007

           **Re:**    <u>**SEC v. Javier Martin-Artajo and Julien G. Grout**</u>, No. 13 Civ. 5677 (S.D.N.Y.)

Dear Judge Daniels:

      I write in response to Defendant Javier Martin-Artajo's letter, dated April 20, 2015, identifying only "two critical discovery issues that require Court intervention." In fact, Martin-Artajo's letter overlooks the most critical discovery issue requiring resolution by the Court: disabusing Martin-Artajo and defendant Julien Grout (collectively "Defendants") of the notion that they can benefit from discovery in this civil litigation while simultaneously preventing the Securities & Exchange Commission (the "SEC") from having an opportunity to notice Defendants' own depositions pursuant to the applicable Federal Rules of Civil Procedure.

      Aware that a federal judge located in this district has issued a warrant ordering them to appear and face criminal charges, Defendants are currently flouting the United States criminal justice system. To make matters worse, they appear to want to abuse this forum's discovery procedures by deposing countless third-party witnesses while not subjecting themselves to depositions. Specifically, during a previous telephone conference call which occurred on or about April 3, 2015, counsel for both Defendants stated that they are not willing to have their clients sit for a deposition in this case. Moreover, counsel for Martin-Artajo indicated in a subsequent conversation that if he were even willing to allow his client to sit for a deposition, it would have to be sometime in the distant future after other witnesses have been deposed and would have to occur in Europe. None of these arguments should be sustained by the Court.

      To defend their position that Defendants' depositions, if even allowed to occur,[1] should be withheld until late in the discovery process, counsel for Martin-Artajo curiously asserts that

---

[1] While eagerly deposing third-party witnesses, Defendants' counsel have left it ambiguous whether they actually intend to allow their clients to be deposed in this matter. Given the fugitive status of Defendants and their location overseas, the SEC urges the Court to make clear during the May 8 hearing that no more depositions will go forward

Hon. George B. Daniels
April 30, 2015
Page 2

his client has a right to first "confront his accusers" and that it purportedly would be unfair for his deposition to take place "without having the benefit of full information." (***Exhibit A***—Correspondence to and from Bill Leone, Esq., dated Apr. 29, 2015.) Plainly, defendants in a civil litigation do not have any rights under the Confrontation Clause and even if they did that would be irrelevant to the issue of when and where a deposition should take place. It is equally clear that defendants do not have the right to insist that their depositions should wait until such time as they have "full information" (by virtue of reviewing the deposition transcripts of all other witnesses). Contrary to Defendants' attempt to push their depositions (should they ever "consent" to depositions in the first place) to the back of the line, their depositions should be taken at any time reasonably noticed by the SEC. (*See **Exhibit B***—Order dated June 25, 2007 by the Honorable Gerard E. Lynch in *SEC v. Stanard*, No. 1:06-cv-07736 (S.D.N.Y. Jun. 25, 2007).

In addition, as the Second Circuit has affirmed in a similar case, these depositions should take place in New York. *SEC v. Razmilovic*, 738 F.3d 14,19, 27 (2d Cir. 2013). *Razmilovic* involved a civil enforcement action brought by the SEC against defendant Symbol Technologies and several of its officers and employees, including Tomo Razmilovic. Just like Defendants Martin-Artajo and Grout, Razmilovic was indicted by a federal grand jury while located in Europe. *Id*. at 20. Just like Defendants, post-indictment, Razmilovic refused to travel to the United States and was "considered a fugitive" by the Department of Justice. *Id*.

When the SEC sought to depose Razmilovic, his counsel informed the SEC that Razmilovic was "abroad" and insisted that the deposition take place overseas "either in person or by videoconference or by telephone." *Id*. Subsequently, the SEC was forced to file a motion to compel the foreign defendant to travel to the United States to attend his deposition, which the district court granted. *Id*. at 20-21. When Razmilovic refused to comply with the district court's ruling, the court granted the SEC's request for a default judgment pursuant to Federal Rules of Civil Procedure 37. *Id*. at 21. Under these circumstances, the Second Circuit had no difficulty in affirming the sanction imposed by the district court, finding "we see no error of law nor any clearly erroneous finding of fact with respect to the district court's decision to impose on Razmilovic the sanction of default." *Id*. at 26. Critically, the Second Circuit also ruled that, despite Razmilovic's intransigence and unwillingness to travel to New York to appear for his deposition (clearly as a result of the criminal charges pending against him), "[t]he court was not required to relieve him of that obligation." *Id*. at 27.

*Razmilovic* makes clear that defendants should not be able to dictate whether and where their depositions take place simply because they are fugitives and that district courts are empowered, in the interests of efficiency and to safeguard the dignity of the courts, to order that depositions of foreign defendants, including fugitives like Razmilovic, Martin-Artajo, and Grout, take place in the forum district. *Id*. Similar to the district court, affirmed by the Second Circuit in *Razmilovic*, this Court should not permit the Defendants to avail themselves of this forum only when it suits them while dodging this Court's jurisdiction when it works to their advantage.

---

until Defendants, at a minimum, acknowledge that their clients will agree to comply with any subpoenas or Court orders directing them to be deposed or to appear in New York for trial in the instant matter or be subjected to the possibility of sanctions for non-compliance.

Hon. George B. Daniels
April 30, 2015
Page 3

      Significantly, "noticing parties have discretion where to set depositions." *Willis v. Mullins*, No. 04-cv-6542, 2006 WL 894922, at *1 (E.D. Cal. Apr. 4, 2006). "Usually, a party seeking discovery may set the place where the deposition will take place, subject to the power of the courts to grant a protective order designating a different location." *Id.* (citing *Philadelphia Indemnity Ins. v. Federal Ins. Co.*, 215 F.R.D. 492, 495 (E.D. Pa. 2003) (citing several cases)).

      As noted in *Willis*, factors which a court may consider include: (1) the parties' convenience and relative hardships to attend the designated location; (2) the cost of transportation and lost work to defendant; (3) expense and inconvenience to move voluminous documents; (4) whether the parties' counsel are located in the forum district; (5) whether the defendant is a large corporation whose employees often travel; (6) whether significant discovery disputes may arise and judicial economy favors resolution by the forum court or other similar concerns; and (7) whether the parties' claims and parties' relationship are such that appropriate adjustment of the equities favors a deposition site in the forum district. 2006 WL 894922 at *2.

      These factors overwhelmingly favor the SEC's position that Defendants' depositions should take place in this district. Undisputedly, the convenience to the plaintiff and Defendants' counsel, all located in New York, militates in support of these depositions occurring in the district forum. *See, e.g.*, *Fin. General Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978) (ruling that the depositions of the four Saudi Arabia-based defendants should be conducted in Washington, D.C. because, *inter alia*, "[c]ounsel for all of the parties are located here" and "the Court is here and could promptly resolve any disputes arising during the depositions without costly continuances of the depositions").

      Likewise, the cost and expenses to be incurred by requiring each of the parties' attorneys to travel to Europe for Defendants' depositions would clearly outweigh the cost of having the two Defendants travel to New York. *See Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171-72 (S.D.N.Y. 1985) ("Finally, and most significantly, convenience and efficiency are best served by taking the deposition in New York. At least three attorneys must be present for the deposition. . . . Rather than make all three attorneys (and probably others with them) travel to Los Angeles, it seems wiser to have one witness come here.").

      Additionally, it would be unrealistic to expect that depositions concerning the Defendants will not raise a substantial likelihood that discovery disputes will arise among the parties requiring judicial resolution. To allow the depositions to take place in Europe would, therefore, raise the strong possibility that a discovery dispute arises, which potentially requires the parties and their band of counsel to all troop back to Europe for a second round. For obvious reasons, this eventuality should be avoided, and the only way to ensure that this inefficient and burdensome outcome does not occur is to authorize that the depositions of Defendants take place in New York. *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 467 (N.D. Ill. 2007) ("Obviously, conducting depositions in Japan, over a dozen time zones away and on the other side of the International Dateline, would severely compromise—to put it mildly—the court's ability to intervene should problems arise.").

In this case, the equities also favor conducting Defendants' depositions in New York. Generally, "[w]hen an individual voluntarily chooses to participate in [a] lawsuit, he [or she] takes on the obligation to provide discovery about his [or her] claim." *Morangelli v. Chemed Corp.*, No. 10-CIV-00876, 2011 WL 7475, at *1 (E.D.N.Y. Jan. 1, 2011). Here, there is no dispute Defendants have availed themselves of this district. Indeed, they have already on several occasions invoked the authority of the Court to subpoena several third-party witnesses to be deposed, including depositions that required witnesses located in Europe to travel to New York.

Despite the clear case law from the Second Circuit and other courts supporting the SEC's position, Defendants will undoubtedly assert that they face a risk of arrest should they travel to the forum district to attend depositions. However, courts have rejected this as a reason, in and of itself, to deprive a party noticing a deposition of its choice of forum for the deposition. In *Willis*, for example, the party-witness's main objection to traveling to the forum where the case was pending was that "he fears arrest and fears police in California." 2006 WL 894922 at *3. This "fear," however, was found to be an insufficient basis for the party-witness to avoid being deposed in the forum district where the trial would ultimately be held. *Id.* Significantly, the holding in *Willis* resonates with the Second Circuit opinion in *Razmilovic*, which affirmed the district court's ruling sanctioning a defendant for failing to show up to be deposed in New York based on his unwillingness to risk arrest due to a pending indictment. 738 F.3d at 14, 19, 26-27.

Finally, it would be inequitable to allow Defendants, by "voluntarily choos[ing] to participate in [a] lawsuit," to continue to invoke the subpoena power of the Court without first confirming to the Court that they will honor a deposition subpoena in the instant matter. *Morangelli*, 2011 WL 7475, at *1. Accordingly, before any further depositions take place this Court should require counsel for Defendants to acknowledge on the record that their clients intend to comply with any notices of deposition, deposition subpoenas, or trial subpoenas served on counsel by the SEC. If Defendants, who have thumbed their nose at the criminal authorities by refusing to appear and answer a pending indictment, will not agree to be bound by subpoenas and Court rulings in this case, they should not be allowed to require 30 plus non-party witnesses to comply with deposition subpoenas that they themselves have no intention of complying with when served on their counsel. Moreover, in the interests of justice and to potentially avoid unnecessary burdens on third-parties whose testimony may be rendered superfluous depending on the substance of Defendants' deposition testimony or their decision to invoke the Fifth Amendment, the SEC respectfully requests that the Court require Defendants to agree to make themselves available to sit for depositions prior to taking any further depositions in this matter.

Respectfully,

Nicholas A. Pilgrim

cc: Bill Leone, counsel for Javier Martin-Artajo (via email and ECF)
Edward Little, counsel for Julien Grout (via email and ECF)