# EXHIBIT A

## Pilgrim, Nicholas

| | |
|---|---|
| **From:** | Pilgrim, Nicholas |
| **Sent:** | Wednesday, April 29, 2015 9:59 PM |
| **To:** | 'Leone, Bill'; Galant, Felice; McGoey, John; Potter, Nicholas |
| **Cc:** | Cannon, Lista (NRFLLP); Altenbach, Peter; Brodsky, Joshua; Weinstein, Marc A. (marc.weinstein@hugheshubbard.com); Little, Edward J.M. (edward.little@hugheshubbard.com) |
| **Subject:** | RE: Joe Bonocore Deposition |

Bill,

Although normally I do not respond to counsel hyperbole, it would simply not do justice to the record of this case if I did not respond item-by-item to correct the mischaracterizations permeating your email.

#1 – Please be advised that you are completely mistaken in your unfounded suggestion that the SDNY USAO's role in the civil case is anyway comparable to the troupes of attorneys who work for your firm, who have mined the documents produced in discovery, and who have either physically attended or otherwise provided documentary support for the previous depositions. Except with respect to issues relating to the stay requested by the USAO, the civil litigation has proceeded without input, much less any involvement, of the criminal authorities. Likewise, I am not sure why you imagine there are "scores of investigators, accountants, agents, and interns at the SEC, the FBI, the OCC and the Department of Justice who have been assisting" this litigation. From the time I joined this case to the present day, there have been only 3 SEC attorneys actively involved in the litigation, period, only one of whom is a trial attorney (yours truly).

#2 – I appreciate and agree wholeheartedly with your comments and concerns about avoiding expenses that needlessly drain resources. Your comments are duly noted, and I respectfully request that you bear them in mind when it comes time to arrange the location for the two most critical depositions in this case, which should take place in New York for several reasons including your concession that we should seek to minimize the costs associated with this litigation borne by JP Morgan and the parties.

#3 – I am not sure how "outspoken" you have been in complaining about deposition scheduling issues because this is the first time that I am learning that you are blaming the SEC for your own scheduling delays. Your mischaracterizations suggesting that the SEC has delayed the process are actually quite hurtful and unwarranted because, as you very well know, we have offered several days of availability for depositions, days which for whatever reason your firm never took us up on.

#4 – Your position disfavoring the idea of harmonizing when depositions in the two civil cases should take place (to minimize the burden on third-party witnesses) is duly noted, and on May 8 we will all see where the Court stands on this issue.

#5(a) – Please stop mischaracterizing the SEC's position. It is unhelpful, wastes time, and doesn't move the ball forward when you do so. Clearly, the SEC has no intention of forcing your client to waive his Fifth Amendment rights. We do, however, have the right to schedule him for a deposition, a right we will insist upon once the stay is lifted. At the deposition, Mr. Martin-Artajo will be free to exercise the Fifth Amendment right to not incriminate himself by invoking just as domestic defendants do all the time in civil cases when criminal charges are pending against them.

#5(b) - With all due respect, I suspect that you have confused the operative legal standards that apply in civil rather than criminal cases, a confusion that is perhaps not surprising given your repeated, mistaken efforts to conflate one federal entity (the SEC) with a separate and independent governmental entity (the USAO). It is well-established that the

1

Confrontation Clause that applies to criminal cases does not apply in civil cases. Hence, I am truly perplexed by your attempt to inject that standard into our case with your "without being able to confront his accusers" comment. Please advise if this was not an inadvertent mistake on your part because if you truly believe that the Confrontation Clause applies in a civil matter I can provide you with case law to hopefully resolve this issue. For similar reasons, I am puzzled by your claims that your client does not know what "accusations" he is facing or who his "accuser" is. As you know, the SEC has filed a complaint publicly that should make very clear to your client what "accusations" he is facing and who the "accuser," or charging party is. Of course, if he were not aware of the charges that the SEC has brought against him (and Mr. Grout), it would be inconceivable that we would be having any communications whatsoever in connection with this pending case, hence my bewilderment at your assertions. Nevertheless, in the spirit of accommodating your client's wish to confront his accusers, please advise whether you have changed your position and will now make him available for a deposition sooner rather than later so that the confrontation with his accusers that you desire can take place as soon as the stay that is in place is lifted.

#5(c)- Please feel free to send a draft proposal for an Amended Discovery and Scheduling Order because I strongly agree that on May 8 we should be prepared to discuss this issue with the Court. Although I believe we have to leave open the possibility that the Court may have his own vision for how the private plaintiff litigation case and our case should proceed (a vision we should be sensitive to given that both cases are on his docket and he knows best how to manage that docket), I agree we should begin the drafting and negotiation process sooner rather than later, and believe it would be efficient for you to circulate a working draft.

Finally, although your unilateral decision to maintain the May 8 deposition date after the Court continued the status conference to that same date will force me to forsake attendance at either the deposition or the status conference, to avoid burdening the Court with an issue caused by your unwillingness to compromise we will not object to the deposition taking place at the original time even if that involves a great burden to the SEC.

Kind regards,

Nick

---

**From:** Leone, Bill [mailto:william.leone@nortonrosefulbright.com]
**Sent:** Monday, April 27, 2015 7:38 PM
**To:** Pilgrim, Nicholas; Galant, Felice; McGoey, John; Potter, Nicholas
**Cc:** Cannon, Lista (NRFLLP); Altenbach, Peter; Brodsky, Joshua; Weinstein, Marc A. (marc.weinstein@hugheshubbard.com); Little, Edward J.M. (edward.little@hugheshubbard.com)
**Subject:** RE: Joe Bonocore Deposition

Nick,

(1) Our firm does not have countless attorneys. There are only three US resident, licensed attorneys actively working on the case: Myself, Ms. Galant and a second year associate, Nick Potter. Like the United States Government, we have a couple of other attorneys who have been standing by to assist with the criminal case if it went forward and occasionally contribute work product. But, these attorneys are not active in the civil case, just as the SDNY AUSA's are not active in your case, at least on the surface. There are at least three SEC attorneys assigned to the case. Two at each deposition, which has either been you and Mr. Brodsky or you and Mr. Altenbach. You have been the person who argues in Court and you advised us that it was Mr. Brodsky who was assigned to the Bonocore deposition. So, there should be no unfairness there, nor is the burden any greater for the SEC than it is for us. With respect to other attorneys involved in the case, our UK colleagues, who had been working on the related U.K. Financial Conduct Authority proceeding well before the SEC or US Attorney's cases were filed, have helped us review and understand documents and marshal the facts. That, however, is no different than the scores of investigators, accountants, agents, and interns at the SEC, the FBI, the OCC and the Department of Justice who have been assisting you.

2

(2) It is not a good response to our concerns about cost to say that J.P. Morgan is paying them. Wasted expenses are not in anyone's interest and we all have obligations as officers of the Court not to unnecessarily multiply or make more expensive any litigation which we handle. Scheduling should not consume the resources it has. Litigation is inherently inconvenient and the witnesses, their lawyers, the parties, and their lawyers are compelled to make some sacrifices to satisfy the interests of the Court in obtaining a prompt adjudication of this matter.

(3) We will raise the issue of deposition scheduling at the status conference. However, it would not be accurate to say that you have no notice of the issues. We have been outspoken in our complaints that counsel for the SEC and for J.P. Morgan and for the witnesses seem to schedule these depositions only when they have nothing else to do. When there is a postponement, we have generally been told that there are no open days for two months at a time. Two examples are the Bonocore deposition where an April cancellation would involve rescheduling in June, and the Hogan deposition, where a postponement did result in a rescheduling in June.

(4) We don't think depositions will need to be harmonized with the private case because the issues are almost completely different, as are many of the witnesses. A stay of discovery is out of the question. Our client has the right to defend this litigation and clear his name.

(5) We may address the issue of our client's deposition with the Court since you seem to have only one position, that our client should be compelled, involuntarily, to waive his fifth amendment rights without having the benefit of full information, and without being able to confront his accusers, or even knowing what they have accused him of. I don't think the Court will agree with you. You already have multiple days of our client's testimony on the very issues in this case both before the FCA and as part of an internal investigation conducted by J.P. Morgan's counsel spanning several days. Our client should not be forced to make one of the most personal, most important decisions of his life (whether to testify in this case) until he has access to full information upon which to make that decision.

Obviously, you have to decide what issues need the Court's involvement. However, given the relative importance of this deposition, its long standing on the calendar and the minor inconvenience of either (i) asking only one of the several lawyers we both have on the case to start the deposition [so that we can avoid calling the witness back], or (ii) starting the deposition at 1, following the hearing, both of which will accommodate the Court's calendar, this does not seem to be the kind of dispute that should require intervention.

Last, and most important. I would like to schedule a call for tomorrow afternoon or Wednesday to discuss an Amended Discovery and Scheduling Order for the Court to consider on May 8. I think it will benefit the Court if we have at least attempted to confer and agree on a schedule going forward. At a minimum, such a conference will focus our areas of disagreement. Please let us know when you will be available.

Bill

**Bill Leone** | Partner
Norton Rose Fulbright US LLP
666 Fifth Avenue, New York, New York  10103-3198, United States
Tel +1 212 318 3324 | Fax +1 212 318 3400
william.leone@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

Click here for full Biography

*Law around the world*
nortonrosefulbright.com

*Norton Rose Fulbright – top 3 global legal brand: Acritas' Sharplegal 2014 Global Elite Brand Index*

3

**From:** Pilgrim, Nicholas [mailto:pilgrimn@SEC.GOV]
**Sent:** Friday, April 24, 2015 7:58 PM
**To:** Leone, Bill; Galant, Felice; McGoey, John; Potter, Nicholas
**Cc:** Cannon, Lista (NRFLLP); Altenbach, Peter; Brodsky, Joshua
**Subject:** RE: Joe Bonocore Deposition

Thank you, Bill.  Needless to say I disagree with several claims made within your email while there are others I simply do not have a sufficient factual basis to comment on.  That said, based on your email we may indeed have to carefully consider sending a letter to the Court to resolve this issue because in our view it would be manifestly unfair to proceed as you have suggested.  While your firm apparently has countless attorneys, on both sides of the Atlantic, to devote to this matter (I have counted at least seven I believe so far), the plaintiff in this case has only one trial counsel who is charged with the responsibility of handling and appearing at depositions and all court appearances and who cannot be at two different places at once.  There is no way another trial attorney can get up to speed on all the issues in this case in a mere two weeks.  Moreover, with respect to the cost of scheduling or rescheduling the depositions, it has previously been acknowledged by your firm on several occasions that the attorneys' fees and related expenses incurred by your client are actually borne by JP Morgan not Mr. Martin-Artajo.  If this has changed and Mr. Martin-Artajo is now personally incurring expenses for rescheduled depositions, please advise.  Otherwise, I am not sure the cost argument carries considerable merit, particularly in light of the abundant resources you seem prepared to devote to this matter, resources that apparently are so copious that you embrace the opportunity of providing a troupe of attorneys to cover both a deposition and a court hearing set at overlapping times on the same day.

With respect to the scheduling difficulties you have encountered, this is the first I have heard that JP Morgan has made it difficult for you to depose witnesses.  I think that, if true, that is obviously a fair point for you to raise during the next status conference.  From our view, we were not quite sure why the pace of depositions has proceeded as it has and could only speculate that it was a pace dictated by your choosing.

At any rate, an added basis for bringing this discovery-related dispute to the Court's attention is that the consolidation of our status conference with the private litigants' case may suggest that for reasons of efficiency the Court may wish to harmonize future discovery.  This may be especially the case given recent events in the extradition matter, which may ramp up the scope and intensity of discovery in both civil cases, particularly with respect to timing and order in which Mr. Grout and Mr. Martin-Artajo need to be deposed before further burdening non-party witnesses.  Accordingly, in light of your position and for other reasons, it may be appropriate to seek a temporary stay from the Court of all currently scheduled depositions until the issue of how the Court wishes for discovery to proceed in both pending civil cases is resolved and clarified by the Judge in a short two weeks.

Like you, I don't wish to be intransigent, but, at present, for me to assent to your extraordinary demand that the SEC find new staffing at this late hour to attend both an important status conference and a meaningful deposition set for the same time and date, without first asking the Court to be heard on this subject would seem to be imprudent.  If you believe we can reach a more reasonable accommodation on this issue along the lines of my previous email to Felice please advise prior to noon on Sunday.

Thank you for the kind wishes.  Fortunately, trial preparations are advanced enough that I have all the time that is needed to resolve this issue outside of or within a courtroom before May 8.  Enjoy the weekend.

-Nick

4



**Nicholas A. Pilgrim**
Senior Trial Attorney
**U.S. Securities and Exchange Commission**
**Division of Enforcement, New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-0924**
**pilgrimn@sec.gov**

**From:** Leone, Bill [mailto:william.leone@nortonrosefulbright.com]
**Sent:** Friday, April 24, 2015 6:10 PM
**To:** Galant, Felice; McGoey, John; Potter, Nicholas; Pilgrim, Nicholas
**Cc:** Cannon, Lista (NRFLLP)
**Subject:** RE: Joe Bonocore Deposition

Nick,

I am sorry that you disagree with Felice's attempt to accommodate everyone's interests. It seemed reasonable to me that we proceed with the time available and see whether we can get enough done to check this witness off the list. Everyone understands that there are no guarantees in every deposition that we will finish. The witness always reserves the right to complain if called back, and we always reserve the right to recall them if, despite our best efforts, we cannot complete our work in seven hours. And, all of this is subject to the Court's supervision if abused. However, your concerns are noted and, as a result, we have decided to simply proceed with the deposition as originally scheduled.

Scheduling has proven to be a nightmare in this case. Every deposition has taken days, weeks and even months to schedule. The cost of simply scheduling the depositions runs into the thousands. Any cancellation generally results in at least a two month delay. For example, Mr. Hogan's request to shorten his day by two hours resulted in a two month delay even though we had noticed the deposition and were prepared to proceed because, in the few minutes between Mr. Schubert's request for an adjournment and our objection to the request, you claimed to have scheduled a new commitment (without even knowing whether we agreed to the adjournment) that could not be changed. Every party, except us it would appear, meets every request for an accommodation with a demand that the deposition must occur within certain hours, or must begin after a certain time, end before a certain time, be bracketed with certain days for preparation, occur in a certain place, be attended by only certain persons,

5

never be continued, etc. etc.  The deposition was noticed for 9:30 a.m. The witness has been subpoenaed.  His attorney has agreed to make him available.  All the parties cleared the date.  That is when we are starting.

We all have multiple lawyers in the case and the hearing scheduled by the Court won't really require everyone to be attendance.  If anyone wants to complain to the Court that they simply cannot make it through the hearing without multiple "watchers" to go with the speakers, they can bring it to the Court's attention.  For our part, we will have a licensed lawyer in the conference room to depose the witness and we will have a licensed lawyer in the courtroom to handle the status conference.  We expect the SEC to be able to do the same.

Please don't regard our position as any form of intransigence.  We have been unbelievably patient in getting the few depositions that have been completed finished.  We have been working for 8 months to schedule and complete depositions and we have only four transcripts to show for it.  We understand that all the witnesses and parties and attorneys are very busy with important things.  However, this case is important too and our client's livelihood and life have been disrupted in the extreme by the charges levelled against him.  Although I am sure you might disagree, we believe that the SEC's case has grown weaker with every deposition, and we are anxious to vindicate our client.

Call if you have any questions.   Good luck with your trial preparation.


Best
Bill

**Bill Leone** | Partner
Norton Rose Fulbright US LLP
666 Fifth Avenue, New York, New York  10103-3198, United States
Tel +1 212 318 3324 | Fax +1 212 318 3400
william.leone@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT**

Click here for full Biography

*Law around the world*
nortonrosefulbright.com

*Norton Rose Fulbright – top 3 global legal brand: Acritas' Sharplegal 2014 Global Elite Brand Index*


**From:** Pilgrim, Nicholas [mailto:pilgrimn@SEC.GOV]
**Sent:** Friday, April 24, 2015 5:22 PM
**To:** Galant, Felice
**Cc:** michaellevy@paulhastings.com; Brodsky, Joshua
**Subject:** Joe Bonocore Deposition

Hi, Felice, I received your voice mail indicating that you would agree to reserve 4.5 hours for yourself while the SEC would only get 1.5 hours.  That is not reasonable and is certainly not agreeable to the SEC so please advise if you misspoke or if I heard you incorrectly.  Under the applicable rules a  deposition of a witness is generally limited to 1 day of 7 hours unless stipulated or ordered by the court.  The SEC cannot agree to such an absurdly imbalanced division of deposition time.  Moreover, ending at 7 pm would not work that day as our side would need a hardstop of 6-6:30 at the latest to meet personal obligations and hadn't anticipated or planned to begin the deposition in the afternoon rather than in the morning.  Finally, as much as the parties can plan on "gutting it out" 6 hours straight that is both unlikely and extremely unrealistic.  If both defendants agree to limit their questioning to 2.5 hours **combined** (with no exceptions) with the SEC also receiving 2.5 hours, with a hard stop at 6:30 and if we all agree that Mr. Bonocore will not object to coming back for a second day of deposition for approximately 1 hour for both sides [i.e., plaintiffs, on the one hand, and both defendants on the other], we may be able to come to an agreement in time for the May 8 hearing.  That said, it is not Mr. Bonocore's fault that defendants are now trying to change the start time of the deposition so if the new modified schedule or my counteroffer is inconvenient for him, in fairness I believe we should defer to his schedule and allow him to pick a June date.

Best,

Nick



**Nicholas A. Pilgrim**
Senior Trial Attorney
**U.S. Securities and Exchange Commission**
**Division of Enforcement, New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-0924**
**pilgrimn@sec.gov**

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.