**NORTON ROSE FULBRIGHT**

Norton Rose Fulbright US LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
United States

May 1, 2015

**Bill Leone**
**Partner**
Direct line +1 212 318 3324
william.leone@nortonrosefulbright.com

The Honorable George B. Daniels
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Tel +1 212 318 3000
Fax +1 212 318 3400
nortonrosefulbright.com

Re:   *SEC v. Javier Martin-Artajo and Julien Grout*, Case No. 13-Civ-5677 (GBD) (MD)

Dear Judge Daniels:

We represent Defendant Javier Martin-Artajo in the above-referenced case. We write to advise the Court of a significant development and our position about how the case should proceed in light of it.

On April 23, 2015, the National Court of Spain, Criminal Division, Section 3, ruled in favor of Mr. Martin-Artajo with respect to extradition. The Spanish Court found that the events in question occurred outside the United States and Mr. Martin-Artajo, as a Spanish citizen, had rights that merited protection under the extradition treaty between the United States and Spain. Mr. Martin-Artajo is a Spanish citizen residing in Spain and now has been adjudicated as being within his rights not to be returned to the United States for criminal prosecution. The Government has advised the Court that the Spanish government will not appeal the ruling. Although Mr. Martin-Artajo cannot be extradited, the indictment filed in this Court remains alive. Thus, as confirmed by the Government in its letter to the Court of May 1, 2015, Mr. Martin-Artajo remains exposed to the jeopardy of a criminal proceeding.

In light of this significant development and for the reasons outlined in this letter, we are seeking the following:

(i)   production by Plaintiff Securities & Exchange Commission ("SEC") and JPMorgan Chase & Co. ("JPMorgan") of all statements and interview memoranda more particularly described below;

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

54001640.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

The Honorable George B. Daniels
May 1, 2015
Page 2

    (ii)    a revised Case Management and Discovery Order including lifting the embargo on the witnesses on the "List of 30" and an Order that the Defendant's deposition will not occur until the end of discovery; and

    (iii)    a judicially approved framework for deposition scheduling.

It is our intent to proceed vigorously to defend our client against the claims alleged in the SEC's complaint. We believe that discovery can be completed in a way that fully respects the decision of the Spanish Court, allows the Defendant to fully know and confront the allegations against him, and allows the Court to see and understand the merits of the case, or lack thereof, rule intelligently on dispositive motions, and, if necessary, bring the case to trial. We strongly believe that this case[1] lacks merit and believe the Court will agree with us when it sees the evidence. Given the decision of the Spanish Court, there is no reason to delay discovery, motion practice, or trial in this matter, with one caveat to be discussed below.

We are proposing the following:

1.    **Completing Outstanding Discovery Requests.** The SEC and JPMorgan should deliver, forthwith, all written witness statements, transcripts of testimony taken by the SEC, the U.K. Financial Conduct Authority ("FCA") or any other non-criminal agency; any witness statements obtained by the SEC from any source relevant to the claims in this case; and, all notes of interviews or interview memoranda prepared by JPMorgan's counsel that were (1) shared with the SEC or JPMorgan's outside auditors, or (2) otherwise do not constitute protected work product as to which applicable privileges have been waived. This should include everyone on the "List of 30" as well as any other statement relevant to the subject matter of the case. *S.E.C. v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005). This request DOES NOT INCLUDE *Jencks* material. Defendants do not seek the 302's, notes of interviews or other materials that are subject to *Jencks*. The requested materials were all created by private parties in the ordinary course of their business.

2.    **The Revised Case Management and Discovery Order.** The Court should enter a revised Case Management and Discovery Order setting deadlines for the completion of fact discovery, expert discovery, and dispositive motion practice. Our proposed Order:

    a.    Provides for a fact discovery period of 14 months and an expert discovery period of four months;

---

[1] Virtually every fact cited by the U.S. Attorney and the SEC in their joint press conference as supporting their case has proven to be a fiction, based just on the limited discovery to date. We express no opinion about the merits of the underlying claims in the private securities litigation relating to the SCP. The theory of that case is very different from the allegations in the SEC case and our client is not a party to that case.

54001640.1

The Honorable George B. Daniels
May 1, 2015
Page 3

      b.    Requires the parties' counsel to block out in advance a sufficient number of days over the next 14 months to reserve for completing deposition discovery in the case;

      c.    Requires the parties to cooperate in the scheduling and completion of depositions of witnesses within the allotted time;

      d.    Lifts the embargo on witnesses on the "List of 30"; and

      e.    Orders that the Defendant's deposition will not occur until the end of discovery following a further conference with the Court. *S.E.C. v. O'Neill*, 2015 U.S. Dist. LEXIS 42686 (D. Mass. Apr. 1, 2015).

The relief we are requesting is supported by the following:

1.    Since there is unlikely to be a criminal prosecution in any foreseeable time frame, there is no valid reason to prevent discovery from moving forward.[2]

2.    Discovery should proceed forthwith. The passage of time, fading of memories and potential loss of evidence threatens to impair the Defendants' ability to defend themselves against the SEC's claims. It is important that we move expeditiously to depose the important witnesses and obtain their evidence. Moreover, the Defendant's life and livelihood have been suspended by this and its companion case and he is anxious to see it resolved.

3.    The Defendant's deposition should not be scheduled until the end of discovery and should take place in Spain. At that time, the Defendant will have to decide whether he will testify to the facts or exercise his rights under the Fifth Amendment. *U.S. v. 4003-4005 5th Ave.*, 55 F.3d 78, 84-86 (2d Cir. 1995); *see, e.g.*, *SEC v. Bray*, 2015 U.S. Dist. LEXIS 42686, at * 14 (defendant's deposition deferred until close of discovery in face of parallel civil and criminal proceedings to protect defendant's Fifth Amendment rights and right to decide whether to waive such Fifth Amendment rights based on all facts uncovered after full discovery); *Huaman v. Sirois*, 2015 U.S. Dist. LEXIS 51873, *14-16 (D. Conn. Apr. 20, 2015); *Martinez v. City of Fresno*, 2010 U.S. Dist. LEXIS 19207 (E.D. Cal. Mar. 3, 2010); *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 193-94 (3d Cir. 1994); *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1290-91 (D. Minn. 1985). That decision is one of the most important and personal decisions of a person's life. It is a decision that is sacrosanct under our legal system. It is made in a criminal case only after the defendant has seen and heard all of the evidence against him. Once made, the decision can be revoked. *Martinez v. City of Fresno*, 2010 U.S. Dist. LEXIS 19207 (E.D. Cal. Mar. 3, 2010)(the court permitted the civil defendant to revoke his prior assertion of his Fifth Amendment privilege and allowed discovery to be reopened to permit the defendant to testify,

---

[2] We continue to believe that there has never been a good reason to stay discovery in this case. The witnesses have been locked down by the Government, the grand jury has handed down its indictment, there is no ongoing investigation, and there are no confidential sources that need to be protected. *See S.E.C. v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005).

The Honorable George B. Daniels
May 1, 2015
Page 4

finding that the plaintiff was not unfairly surprised or prejudiced by the defendant's subsequent decision to testify because the plaintiff had access to prior testimony from the defendant). Most courts allow a defendant to change his mind about testifying even after his testimony has commenced. No comment is allowed in a criminal case about the exercise of the right and the jury is instructed to draw no inferences from it. Here, the Defendant may well decide to submit to a deposition in his home country and to testify. However, Mr. Martin-Artajo should not be forced to make the decision to waive an important right without full discovery of the case against him. This is Plaintiff's case. He is entitled to know what it is.

There are many reasons to defer the Defendant's deposition until the end of discovery, and of course, require it to be held in his home country:

> a. To require Mr. Martin-Artajo to appear in the United States for a deposition would subvert his rights under the international treaties that have now adjudicated his right to be free from US criminal jurisdiction. International comity also requires that the decision of the Spanish Court be honored by this Court.
>
> b. To require the Defendant to appear in the United States for a deposition would confound the time-honored convention that a defendant should be deposed in his or her home jurisdiction when he or she has been hailed into a faraway court. *Sloniger v. Sigmund Deja,* 2010 U.S. Dist. LEXIS 134414 (W.D.N.Y. Dec. 20, 2010) (denying plaintiff's motions to compel defendant's deposition in New York and finding that the defendant's deposition will take place in Germany); *F.D.I.C. v. La Antillana S.A.*, 1990 U.S. Dist. LEXIS 13246 (S.D.N.Y. Oct. 5, 1990) (ordering that defendants' depositions be taken at their place of residence in Argentina). Courts have routinely held that the place for a defendant's deposition should be at the place of the defendant's residence unless there are "peculiar circumstances that require" a different result. *Sloniger*, 2010 U.S. Dist. LEXIS 134414, at *4; *F.D.I.C.*, 1990 U.S. Dist. LEXIS 13246, at *13-14 (finding that plaintiff did not overcome the presumption under federal law that a non-resident defendant should be deposed in his place of residence and did not show any extraordinary circumstances that would require defendant's appearance in the United States for his deposition); *accord Glatt v. Fox Searchlight Pictures Inc.*, 2012 U.S. Dist. LEXIS 80905 (S.D.N.Y. Jun. 11, 2012) (finding that the 30(b)(6) depositions of defendants should be conducted at their place of business in California); *Devlin v. Transp. Commc'n Int'l Union,* 2000 U.S. Dist. LEXIS 264 (S.D.N.Y. Jan. 13, 2000) (finding that no factors of cost, convenience, and litigation efficiency overcame the presumption that a defendant be deposed where he resides or has a principal place of business, and ordering that the 30(b)(6) deposition of defendants be conducted at their headquarters in Maryland).
>
> c. There is no unfairness or surprise to the SEC by deferring the Defendant's deposition. The SEC already has the testimony of the Defendants. They were examined for multiple days by the U.K.'s SEC equivalent, the FCA; the FCA has turned that testimony over to the SEC. In addition, the Defendants were examined for multiple days

The Honorable George B. Daniels
May 1, 2015
Page 5

by JPMorgan investigators; JPMorgan then turned over the contents of those interviews to the SEC. *See, e.g., Martinez v. City of Fresno*, 2010 U.S. Dist. LEXIS 19207, at *13 (E.D. Cal. Mar. 3, 2010) ("Plaintiff's prejudice arguments are resolved by the existence of Tafoya's prior testimony/statements concerning the May 5, 2005 incident. There is no 'surprise' testimony in this case."). Therefore, the SEC does not need a third bite at the apple in order to evaluate what additional depositions should be taken. It already knows much of what the Defendants would say. Notably, ***the SEC has not even noticed a single deposition in this case.*** There is simply no unfairness to the SEC in deferring the Defendants' depositions until the end of discovery.

d.     There is no efficiency to be gained by accelerating the Defendant's deposition. If the Defendant testifies at his deposition before he has full information about the case against him, he will almost certainly be forced to rely on his rights under the Fifth Amendment. Such a deposition will be unavailing, and will provide no additional information to the SEC. Based on the circumstances in this case, the Defendant will have the ability to change his mind and testify at a later date. *Huaman v. Sirois*, 2015 U.S. Dist. LEXIS 51873, *14-16 (D. Conn. Apr. 20, 2015) (court held that defendant was entitled to assert his Fifth Amendment rights at his deposition and later revoke those rights and testify after the close of discovery "based upon a legitimate and reasonable concern about potential prosecution for his actions in the incident that is the subject of this lawsuit"). The fact is that, at this time, when the Government continues to withhold all evidence of statements by the 30 key witnesses, the Defendant could not possibly make an informed decision about waiving his Fifth Amendment rights.

The decision in *SEC v. Bray* is instructive on this point. In that case, the court held that the defendant should not be deposed until the end of discovery due to his Fifth Amendment concerns in the face of parallel civil and criminal proceedings. The court reasoned:

> Mr. Bray, on the other hand, is between the proverbial rock and a hard place. He may have an interest in having the civil case move forward, but that outcome would run the risk of his having to be deposed (and thereby, risk compromising his criminal defense), or having to accept an adverse inference if he chooses not to answer questions in a civil deposition. All of this being said, the Court remains concerned about preserving Mr. Bray's rights. He is entitled to defend both the civil and criminal cases without the defense of either prejudicing his rights in the other. Therefore, the Court orders that Mr. Bray may not be deposed at this time. He will thereby avoid facing the dilemma of either choosing to make statements that could be used against him in the criminal case, or suffering an adverse inference if he refuse to answer questions at a deposition. The parties may notify the Court when all discovery is complete, but for the deposition of Mr. Bray. If, at that time, his

        deposition is required, a status conference will be held to determine scheduling.

    e.    There are efficiencies to be achieved by deferring the Defendant's deposition. The Defendant is entitled to confront the case that has been brought against him, and the SEC bears the burden of proof. Rather than speculate about what the SEC believes to be the facts in support of its claims, the Defendant can respond to the allegations in a focused and efficient way at the end of discovery, much as contention interrogatories are deferred until the close of discovery.

    f.    There is no justice in accelerating the Defendant's deposition. As we have previously advised the Court, Mr. Martin-Artajo has never been a fugitive from justice. He surrendered to the Spanish police. He asserted his rights under the extradition treaty that was negotiated by the Executive Branch and ratified by the United States Senate. His rights under that treaty and our Constitution have been vindicated by the Spanish Court's ruling. He is not legally amenable to the criminal jurisdiction of a United States Court. He has voluntarily submitted to the jurisdiction of this Court for this case and discharged every obligation of a litigant. He has timely produced all relevant documents in his possession to the SEC. He accepted service of the complaint and has appeared through counsel at every hearing. There is no reason to punish him for successfully asserting his rights by requiring him to make a momentous decision about providing further testimony without knowing all the facts.

With respect to the SEC's arguments in its letter, filed yesterday at 11:15 P.M., as to the place of the Defendants' depositions, those arguments are unsupported and without merit. Mr. Martin-Artajo *is not a fugitive*. He is a citizen of Spain whose right to be free from US criminal jurisdiction has been adjudicated under treaties that are part of the basic laws of the United States, and for good reasons. Mr. Martin-Artajo did not willingly avail himself of this Court's jurisdiction. He was sued by the SEC in a widely publicized parallel proceeding in which the SEC and the United States Attorney's Office held a joint press conference on the very same day. The SEC's insistence on forcing the Defendants to travel to the United States for their depositions reveals, in the clearest possible way, the Government's purpose in using this case and the SEC as a stalking horse to circumvent what are now adjudicated rights in Spain. The Department of Justice having lost the argument for extradition, now asks this Court to ignore the decision of the Spanish National Court and sanction an end run around our client's substantive, adjudicated rights, and to essentially compel him to waive the protections afforded him by the treaty under threat of sanction of default. This Court should not be a party to that kind of tactic.

This case is different from every case cited by the SEC. The Second Circuit decision cited by the SEC affirms a ruling by Judge Feuerstein. That decision cited no authority and is, so far as we have been able to determine, unique. Every other case that we cite supports the arguments set forth in this letter. The *Razmilovic* decision stands for only two things: (1) this Court has discretion to determine the timing and place of depositions to ensure a just proceeding, and (2) a true fugitive (Razmilovic, a Croatian citizen, was working on Long Island, New York as the

CEO of a US company with its principal place of business in New York, was visiting the UK when he was indicted and fled first to Croatia and then to Sweden, was hiding in Sweden, had never surrendered to Swedish authorities, had never sought to assert his rights in an extradition proceeding, did not actively participate in the SEC case prior to his deposition being noticed, and appears to have had the claims against him fully vetted in a related criminal trial) may have difficulty selecting the place of his deposition.

Here, on the other hand, none of these factors is present. This Court can obtain a fair adjudication of the claims against Defendant without trampling his rights or flaunting the laws that have given the Defendant the right to be free of the companion criminal case. That result can be achieved by simply following the well accepted rule that a plaintiff must take the defendant's deposition where the defendant resides, and recognizing that fairness is achieved only if the Defendant has the information he needs to make an intelligent decision about his Fifth Amendment rights.

The SEC's complaints about expense and inconvenience are borderline frivolous. Here, the government has spared no expense in its pursuit of these mid-level employees, and has chosen to assert US jurisdiction over a Spanish citizen working in the United Kingdom. The Defendant's liberty interests and treaty rights are at stake. The SEC's concerns about its litigation budget should not drive the decision in this case. However, the Court can ameliorate any concerns of the SEC about expense with an appropriate order respecting the cost of travel to the deposition, if that is any part of the Court's consideration.

Moreover, Mr. Martin-Artajo has never refused to appear for a deposition, nor have his lawyers said that he will refuse to appear for a deposition. To the contrary, our position has been and remains that the place of the deposition must be in a place that does not contravene his rights, and the timing should be deferred so that he can meaningfully decide whether he should exercise his Fifth Amendment rights. Similarly, Mr. Martin-Artajo has not "thumbed his nose" at anyone. It is disturbing that a representative of the US Government has elected to replace facts and reason with rhetoric and name calling.

3. **Deposition Scheduling Framework.** Deposition scheduling has proven to be very difficult in this case and requires a judicially approved framework. In the eight months since the Court ruled that depositions of the non-embargoed witnesses could proceed, we have completed only four depositions. Without making personal or party specific accusations, the following is a non-exhaustive list of the issues we have encountered in scheduling depositions:

   a. The first step in scheduling depositions has been to ascertain who will represent the witness in question. We generally encounter delays of weeks between advising that we wish to depose a particular current or former employee of JPMorgan and receiving notice as to who will represent the employee. Every request for a deposition is treated as though it is fresh, despite the fact that the identities of the prospective deponents have been known by JPMorgan and the SEC for many months.

54001640.1

The Honorable George B. Daniels
May 1, 2015
Page 8

    b.    The second step in scheduling the depositions is to engage with the lawyer representing the witness. We generally experience a delay of weeks between when we are advised about who will represent a deponent and when that attorney responds to a request for dates.

    c.    Once counsel has been identified, there has not been a case where the counsel for the witness or the SEC has consented to a date for the deposition in less than two months from the date of the request.

    d.    On occasion, we have scheduled a deposition and subpoenaed a witness only to be told a week before the deposition that the person can only be available for a part of the day. In cases where a deposition has been rescheduled, the parties have never consented to a date sooner than two months later for rescheduling.

In short, every attempt to schedule a deposition has been met with further negotiation, a list of demands that take time to resolve, and impenetrable scheduling resistance. The simple fact is that consensual scheduling has proved ineffective.

We simply ask that the Court make it clear that fact discovery will be completed in 14 months and order the parties, and JPMorgan, to promptly determine who will represent the witnesses and block out a sufficient number of weeks on their schedules to complete the discovery required. The parties can then fill in the witnesses to be deposed and we can all avoid future delays. The parties can advise counsel for the witnesses that the schedule has been set by the Court and they will need to find a way to accommodate that schedule. Without such a framework, the Defendants will have no choice but to issue subpoenas and notices without the consent of the witnesses, parties or their counsel, and the Court will have to endure an endless avalanche of letters and motions for protective orders.

We have met and conferred with counsel for the SEC in an attempt to resolve the issues raised by the Spanish Court's order. We have been unsuccessful. Accordingly, we will submit our proposed Amended Discovery and Case Management Order reflecting the above requests for the Court's consideration. We look forward to discussing these matters with the Court on May 8.

We are anxious to proceed with the remaining discovery in this case. Our client's life has been upended by these meritless charges and we strongly believe he will be exonerated if we can bring this case to a conclusion.

Respectfully submitted,

*Bill Leone /pg*

Bill Leone

WJL
cc:    All Counsel of Record

54001640.1