

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

Edward J.M. Little
Direct Dial: 212-837-6400
little@hugheshubbard.com

May 1, 2015

Honorable George B. Daniels
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York  10007

    Re:    <u>SEC v. Martin-Artajo, 13 Civ. 5677 (GBD)</u>

Dear Judge Daniels:

    I am writing in response to the letter Nicholas Pilgrim submitted on behalf of the SEC on April 30th.  Mr. Pilgrim raises the question of whether the SEC should be permitted to default our client Julien Grout in this civil case by demanding that he appears for deposition in New York while counsel knows full well that Mr. Grout would be immediately arrested and detained if he were compelled to come to New York.  There would never be a deposition.

    We respectfully submit it is the SEC, not Mr. Grout, who is trying to take unfair advantage of the pendency of the related criminal case.  First of all, and most importantly, Julien Grout is not a "fugitive" as the SEC repeatedly and rhetorically labels him.  As his counsel we were in close communication with the prosecutors in the U.S. Attorney's Office throughout the long investigation that went on before they charged him.  Without notice they suddenly filed a complaint and sought the assistance of the London police to arrest Mr. Grout and his co-defendant Javier Martin-Artajo.  However, they did not first determine whether the two were in London, where they lived and worked, and where the activities that are the subject of these cases occurred.  As it happened, Mr. Grout had already moved his wife and children back to his original home in France after he lost his job at JPMorgan Chase and before he knew he would be charged.  Indeed, he spent a whole month in the United States the month before he was charged – obviously not suspecting he was about to be indicted.  (I had actually attempted to reach the prosecutors to tell them this before they proceeded but they did not return my call.)[1]  As it also happened, it being summer, Mr. Martin-Artajo had gone to his home country Spain with his family for a vacation.

---

[1]    I described these events in more detail in a declaration responding to the Government's motion to intervene and stay discovery.  *See* Docket Entry 49 (March 5, 2014 Declaration of Edward Little in Support of Julien Grout's Memorandum in Response to Government's Application to Intervene) at 2-3.

Thus Julien Grout did not "flee" from London to avoid a prosecution that he didn't even know was going to occur. He was not "dodging this Court's jurisdiction," as Mr. Pilgrim also asserts in his letter. Nor has he "thumbed [his] nose at the criminal authorities." And he is not disobeying an "order" of the Court to come to the United States, as Mr. Pilgrim grossly misstates: "Aware that a federal judge located in this district has issued a warrant ordering them to appear and face criminal charges, Defendants are currently flouting the United States criminal justice system." Letter dated April 30, 2015, p. 1. A warrant does not order a defendant to do anything; it authorizes a law enforcement officer to arrest a person charged with a crime.

Mr. Grout has the right, as a French citizen, not to be extradited as provided by French law and the extradition treaty between the United States and France. The treaty provides that there is "no obligation upon the Requested State to grant the extradition of a person who is a national of the Requested State." Extradition Treaty Between the United States of America and France, U.S.-Fr., Art. 3, Apr. 23, 1996, T.I.A.S. No. 02-201. This provision applies equally to France if requested to extradite its own national to the United States, and to the United States if requested to extradite its own national to France. *Id.* However, if France denies a request to extradite one of its nationals solely on the basis of nationality, it can submit the case to its own authorities for prosecution if the United States so requests. *Id.* We do not know and frankly doubt that the Department of Justice has submitted an extradition request to France or asked, in the alternative, that France have him prosecuted there.

Mr. Grout has considered coming to the United States to defend himself, and I had repeated conversations with the original prosecutors and the Chief of the Criminal Division (who have since left the Office) about bail conditions. We specifically requested that if he returned on his own, he be permitted open bail so that he could travel back and forth to be with his wife and two young daughters during the presumably lengthy time between arraignment and trial of this complicated case. If kept in the United States, even on bail, he would not be able to legally work and thereby support his family. In his present financial condition, he would not even be able to live here. He would obviously not be a bail risk, given his voluntary surrender when he could simply stay in France. My repeated requests were repeatedly denied. In addition, it was our understanding that even if Mr. Grout had come to the United States, the prosecutors did not intend to go forward with a trial unless and until it was successful in extraditing Mr. Martin-Artajo. This position made it even more difficult for Mr. Grout to consider coming to New York as he could be forced to remain here for the long time it would take to obtain his co-defendant's appearance.

Mr. Pilgrim attempts to justify the SEC's maneuver to force a default in this case by citing the Second Circuit's decision in *SEC v. Razmilovic*, 738 F.3d 14, 27 (2d Cir. 2013), a case that has nothing to do with the facts and circumstances of our case. There the SEC had moved in the District Court to compel Razmilovic to travel to New York to be deposed after he failed to appear for a noticed deposition. He did not move for a protective order prior to the noticed date in order to litigate where the deposition should be taken; he just refused to comply. The issue before the Second Circuit was strictly whether the sanction was an abuse of discretion, and the Court concluded it was not. *Id.* at 27. Neither the District Court nor the Second Circuit ruled on the merits of the question whether the deposition ought to occur in New York or

elsewhere. Moreover, unlike Mr. Grout, Razmilovic was clearly a fugitive, and it only made sense for his deposition to take place in New York because that is where he lived and worked for years, it is where the alleged crimes occurred, and he was only in Europe because that is where he fled after learning of the Commission's investigation. In our case, Mr. Grout lived and worked in London, where the activities that are the subject of this case also occurred, and he moved home to France after he lost his job, but months before he learned that he would be charged with anything. There is virtually no connection to New York except for the fact that the bank involved, JPMorgan Chase, has its headquarters here.

Our preliminary research indicates that absent "peculiar" circumstances favoring a deposition elsewhere, "[t]here is a general presumption that a non-resident defendant's deposition will be held where he or she resides or works." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997); *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98 (S.D.N.Y. 2001). However, the issue of where the deposition of Mr. Grout should take place should be resolved according to procedure, not a sudden exchange of letters before a pretrial conference. The Federal Rules of Civil Procedure should be followed. The SEC should, if it really wants to depose Mr. Grout, give him notice with the particulars of where and when the deposition should occur. If, as expected, they seek to take his deposition in New York before any other witnesses, we will move for a protective order under Rule 26(c), and both sides can brief the legal issues for the Court's decision. Unlike the defendant in *Razmilovic*, who offered "no excuse for his failure to appear at the deposition which was ordered other than his convenience, without consideration of the cost or prejudice to the government . . . ," *Razmilovic*, 738 F.3d at 22. Mr. Grout will set forth the reasons why alternatives to a deposition in New York are justified here in accordance with the case law.

   The SEC saw fit to file its civil case on the heels of the criminal indictment and should therefore proceed with full discovery and trial. They should not be permitted to avoid that by seeking a default after demanding that Mr. Grout come to the United States when they know full well that he would just be arrested and detained. We also, like counsel for Mr. Martin-Artajo, take the position that it is only fair that his deposition be scheduled for later in the process, just as the prosecutors have asked for their lead witnesses to be deferred. Now that it appears that it will be a long time before the criminal case can proceed, the discovery in this SEC case should continue, and all potential witnesses and discoverable material ought to be made available. If not, the SEC should move to dismiss its case. They cannot and should not be able to have it both ways: to file a detailed and inflammatory complaint with all the attendant publicity and then to employ a maneuver designed to avoid the resolution of the case and prevent the defendants from defending themselves on the merits.

   Finally, we have just received a letter from the prosecutors indicating that "the Government will not pursue its respective motions to stay discovery" in this case. Letter from Daniel S. Goldman dated May 1, 2015. The stay of discovery should therefore be lifted in its entirety. However, the Government then makes the strange request that because there might "one day" be a criminal trial, the existing protective order be "bolstered" to prevent the defendants from obtaining "what would amount to 3500 material." There is no precedent for such a request. And, more to the point, the future depositions of witnesses in this civil case would not be 3500 material under any definition. Further, the prosecutors now have no standing to argue, as they do, about the order of depositions. That is not their affair any longer.

Now that the Government has withdrawn its motions for a stay, discovery can fully proceed, and any request for our client's testimony ought to be made with the SEC following the rules so the defense has the opportunity of the defense to respond accordingly.

Respectfully yours,

Edward J.M. Little

cc: Counsel of record