NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
666 Fifth Avenue, 31st Floor
New York, New York  10103-3198
United States

October 19, 2015

**Bill Leone**
Partner
Direct line +1 212 318 3324
william.leone@nortonrosefulbright.com

**BY HAND AND ECF**
The Honorable George B. Daniels
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Tel +1 212 318 3000
Fax +1 212 318 3400
nortonrosefulbright.com

Re:    *SEC v. Javier Martin-Artajo and Julien G. Grout*, Case No. 13-Civ-5677 (GBD) (MD):
       Discovery Update for October 21, 2015 Conference and Request for a Protective Order

Dear Judge Daniels:

We represent Defendant Javier Martin-Artajo in the referenced action.  We write in advance of
the case management conference scheduled for October 21, 2015 to provide the Court with an
update on the status of discovery and to request certain relief regarding discovery.

Specifically, Mr. Martin-Artajo requests that the Court issue a Protective Order providing that
his deposition will take place in his home country of Spain, and not in New York, as set forth in
the notice of deposition served by the Plaintiff Securities & Exchange Commission ("SEC").
Mr. Martin-Artajo also requests an Order providing that Mr. Martin-Artajo may appear and
testify at trial through contemporaneous transmission from Spain, rather than in person in the
courtroom, pursuant to Federal Rule of Civil Procedure 43(a).  While the trial is not imminent,
counsel need to confirm before his deposition (which is imminent), whether he will be permitted
to appear and testify at trial under Rule 43(a)'s alternative to live testimony, or whether his
deposition testimony will constitute his trial testimony as an unavailable witness.  The time
needed for his deposition and the type and scope of questioning is likely to differ significantly
depending on whether he will be available for trial.  For the reasons discussed below, we believe
that the only fair and appropriate place for his deposition, and trial appearance and testimony, is
in Spain.

**Document Discovery**

The Parties:  Discovery as between the parties is complete, subject to the duty to supplement
under Federal Rule of Civil Procedure 26(e) and the reservation of the Defendants' right to seek
additional documents or information as discovery proceeds.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.                                                    54182510

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose
Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose
Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain
regulatory information, are available at nortonrosefulbright.com.

The Honorable George B. Daniels
October 19, 2015
Page 2

JPMorgan Chase & Co. ("JPMorgan"):  In April and May 2014, the SEC produced to the
Defendants most of the documents that JPMorgan had produced to the SEC during its
investigation of JPMorgan in the London Whale matter.  On July 1, 2014, we served informal
document requests (the "Requests") on JPMorgan.  We did so in the hope that we could work
with its counsel in identifying relevant documents that had not been produced previously to the
SEC.  Since that time, we and JPMorgan's outside counsel, WilmerHale LLP and Sullivan &
Cromwell LLP, have spent many hours conferring on the Requests toward that end.  The time
spent was largely successful.  It resulted in the production of many highly relevant documents
that had not been included in the SEC's production of JPMorgan documents.  Some examples
include the traders' daily marks for the positions in the JPMorgan Chief Investment Office's
("CIO") Synthetic Credit Portfolio ("SCP"), the trading book at issue in this case, the JPMorgan
compliance team's investigation of the availability of the positions in the SCP within
JPMorgan's Investment Bank, and additional evidence of JPMorgan's analysis of the SCP
positions prior to its May 10, 2012 Form 10-Q filing for the first quarter of 2012.

Even with the above progress, however, there remain several document requests as to which we
and JPMorgan have reached an impasse.  As a result, on September 21, 2015, we served
JPMorgan with a subpoena *duces tecum* to address those remaining requests.[1]  JPMorgan served
its written responses and objections on October 5, 2015, agreeing to produce documents
responsive to some requests, but declining to do so as to others.  With the Court's permission, we
would propose that we address the disputed requests in a separate letter to the Court for
resolution.

**Third-Party Depositions**

On April 23, 2015, the National Court of Spain, Criminal Division, Section 3, ruled in favor of
Mr. Martin-Artajo with respect to extradition.  The Spanish National Court found that the events
in question occurred outside the United States and Mr. Martin-Artajo, as a Spanish citizen, had
rights that merited protection under the extradition treaty between the United States and Spain.
Mr. Martin-Artajo, a Spanish citizen residing in Spain, has now been adjudicated as being within
his rights not to be returned to the U.S. for criminal prosecution.  The Spanish government did
not appeal the ruling, and on May 11, 2015, it became final.

Following the decision from the Spanish National Court, the United States Attorney's Office
("USAO") voluntarily withdrew its motion to stay the depositions of witnesses on the so-called
"List of 30," as it was now clear that a criminal trial was not on the horizon.  As the Court will
recall, the List of 30 had been compiled by the Defendants and contained the individuals that the
Defendants wanted to depose in the first wave of discovery.  When the USAO was unable to
come up with its own list of key trial witnesses, as the Court had requested, the USAO simply
adopted our list, and the rest is history.

---

[1] For the sake of completeness, the Subpoena also includes several requests to which JPMorgan was in
the process of responding.

The Honorable George B. Daniels
October 19, 2015
Page 3

At the last conference before the Court on May 8, 2015, however, despite the withdrawal of the USAO's motion, the USAO nevertheless requested orally and spontaneously that the depositions of an unidentified subset of the List of 30 continue to be "off-limits" until after the Defendants' depositions. After hearing from the parties, the Court directed (i) the parties to proceed with up to an additional 25 depositions, and (ii) the USAO to make the required particularized showing as to those witnesses whose depositions it believed should continue to be "off-limits." On June 3, 2015, the USAO identified seven such individuals (the "List of 7"): (i) Bruno Iksil, the London Whale; (ii) Achilles Macris, Mr. Javier-Artajo's supervisor; (iii) Ina Drew, Mr. Macris's supervisor and former Chief Investment Officer of CIO; (iv) Luis Buraya, an SCP trader; (v) Eric DeSangues, another SCP trader; (vi) Alistair Webster, head of corporate accounting at CIO; and (vii) C.S. Venkatakrishnan, head of quantitative research at JPMorgan.

By Order dated June 29, 2015, the Court granted the USAO's request that depositions of the List of 7 could not be taken until after the Defendants' depositions: "The seven depositions identified by the USAO shall be scheduled to take place within sixty (60) days after the defendants' deposition, or at any other time thereafter upon agreement of the parties." (Dkt. Entry 92.)

In accordance with the Court's rulings, since May 8, 2015, the Defendants have conducted ten depositions, and the SEC has conducted four depositions. Six additional depositions have been confirmed through December 2015, and a seventh deposition (that of a former member of CIO's Valuation Control Group) has been confirmed for February 16-18, 2016.

The Defendants intend to notice the depositions of the List of 7 on dates following the Defendants' depositions, after determining the availability of the witnesses and counsel.

**The Depositions of the Defendants**

Counsel for Mr. Martin-Artajo advised the Court on May 8, 2015 that Mr. Martin-Artajo intended to appear at his deposition and testify fully notwithstanding his Fifth Amendment rights. That remains his intention and we have offered the SEC specific dates in April 2016 for that deposition in Spain. We have also offered to enter into all stipulations needed to ensure that the deposition takes place pursuant to the Rules of Civil Procedure and without any of the obstacles often encountered by parties when they are forced to proceed in strict accordance with the Hague Convention. However, on October 7, 2015, the SEC unilaterally noticed the depositions of Messrs. Martin-Artajo and Grout for five full days each, March 7-11 and March 21-25, respectively, at the SEC's offices in New York. Neither the place nor the duration of the deposition noticed by the SEC are reasonable or lawful.

**The Deposition of Mr. Martin-Artajo Should Take Place in Spain, Not New York**

The SEC has noticed Mr. Martin-Artajo's deposition in New York for the sole and improper purpose of seeking a discovery sanction against Mr. Martin-Artajo when he fails to comply, so the SEC never has to try this case on the merits. While Mr. Martin-Artajo is willing to be deposed, he can only do so if he is deposed in his home country of Spain. As the SEC knows, if

The Honorable George B. Daniels
October 19, 2015
Page 4

Mr. Martin-Artajo traveled to New York for his deposition, there would be no deposition. Rather, he would be arrested and detained due to the pending criminal indictment.

The parties briefed the issue of the location of the Defendants' depositions for the May 8, 2015 conference and have presented arguments on the issue since our first conference in January 2014. *See* Dkt. Entries 77, 78, 79, 80 and 81.  Now that the SEC has noticed these depositions, the issue is ripe for a ruling.

The SEC has failed to present a compelling reason why it cannot take Mr. Martin-Artajo's deposition in Spain or by videoconference. Although he cannot be extradited, Mr. Martin-Artajo remains exposed to the jeopardy of a criminal proceeding should he be ordered to travel to New York.  As such, there are many reasons to conduct Mr. Martin-Artajo's deposition in Spain, and not in New York.

**First**, to require Mr. Martin-Artajo to appear in New York for a deposition would subvert his rights under the extradition treaty between the United States and Spain and the decision of the Spanish National Court under that treaty.  The Spanish National Court has adjudicated his right against extradition to the United States to be criminally prosecuted in this Court.  Principles of international comity require that this Court honor the decision of the Spanish National Court. *See Cunard Steamship Company Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir. 1985); *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2d Cir. 1976).

**Second**, to require Mr. Martin-Artajo to appear in New York for a deposition would confound the time-honored convention that a defendant should be deposed in his home jurisdiction when he has been hailed into a faraway court. *Sloniger v. Sigmund Deja*, 2010 U.S. Dist. LEXIS 134414 (W.D.N.Y. Dec. 20, 2010) (denying plaintiff's motions to compel defendant's deposition in New York and finding that the defendant's deposition will take place in Germany); *F.D.I.C. v. La Antillana S.A.*, 1990 U.S. Dist. LEXIS 13246 (S.D.N.Y. Oct. 5, 1990) (ordering that defendants' depositions be taken at their place of residence in Argentina).  Courts have routinely held that the place for a defendant's deposition should be at the place of the defendant's residence unless there are "peculiar circumstances" that require a different result. *Sloniger*, 2010 U.S. Dist. LEXIS 134414, at *4; *F.D.I.C.*, 1990 U.S. Dist. LEXIS 13246, at *13-14 (finding that plaintiff did not overcome the presumption under federal law that a non-resident defendant should be deposed in his place of residence and did not show any extraordinary circumstances that would require defendant's appearance in the United States for his deposition); *accord Devlin v. Transp. Commc'n Int'l Union*, 2000 U.S. Dist. LEXIS 264 (S.D.N.Y. Jan. 13, 2000) (finding that no factors of cost, convenience, and litigation efficiency overcame the presumption that a defendant be deposed where he resides or has a principal place of business, and ordering that the 30(b)(6) deposition of defendants be conducted at their headquarters in Maryland).

**Third**, justice would not be served by deposing Mr. Martin-Artajo in New York.  Despite the SEC's repetitive drumbeat to the contrary, Mr. Martin-Artajo has never been a fugitive.  He did not flee from the United States or anywhere else.  He is a Spanish citizen, with a residence in Spain.  He surrendered to the Spanish police when the warrant for his arrest was issued in Spain. He asserted his rights under the extradition treaty between the United States and Spain.  These

The Honorable George B. Daniels
October 19, 2015
Page 5

rights were vindicated by the Spanish National Court. He has voluntarily submitted to the jurisdiction of this Court for this case and discharged every obligation. He has timely produced all relevant documents in his possession. He accepted service of the complaint and answered it. He has appeared through counsel at every hearing.

The SEC's contention that Mr. Martin-Artajo's adjudicated right to be free from U.S. criminal prosecution should have no bearing on the place of his deposition because he is a fugitive is a fallacy. Mr. Martin-Artajo *is not and never was a fugitive*. He did not willingly avail himself of this Court's jurisdiction. The SEC's noticing of Mr. Martin-Artajo's deposition in New York reveals the Government's true purpose, which is to use the SEC to circumvent the Spanish National Court's decision. The SEC is asking this Court to be complicit in an end run around Mr. Martin-Artajo's adjudicated, substantive rights, under threat of default, on the one hand, or arrest and detention, on the other.

The SEC's contention that *Razmilovic* supports its position is simply not true. *SEC v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013). *Razmilovic* stands for two propositions: (1) this Court has discretion to determine the time and place of depositions to ensure a just proceeding, and (2) in exercising that discretion, the Court may decide not to defer to a true fugitive's preferred location for a deposition. Unlike Mr. Martin-Artajo, Razmilovic *was* a true fugitive. He was a Croatian citizen who worked on Long Island, New York as the CEO of a U.S. company with its principal place of business in New York. He was visiting the United Kingdom when he was indicted and fled first to Croatia and then to Sweden. He was hiding out in Sweden, had never surrendered to Swedish authorities and had never sought to assert his rights in an extradition proceeding. He did not actively participate in the SEC's case against him prior to his deposition being noticed, and the claims against him were fully vetted in a related criminal trial. This case is not *Razmilovic*.

**Fourth**, there is no legitimate reason the SEC cannot take Mr. Martin-Artajo's deposition in Spain or by videoconference. The SEC cannot complain about expense or inconvenience. It is the SEC that has asserted U.S. jurisdiction over a Spanish citizen who formerly worked in the United Kingdom. And the SEC has itself noticed the depositions of two minor third-party witnesses in London, has traveled to London for two depositions thus far, and will be traveling to London two more times for depositions before the Defendants are deposed. The SEC cannot seriously protest a trip to Spain for the deposition of the Spanish citizen it has sued. In addition, the deposition in Spain can and will be conducted fully in accord with the Rules of Civil Procedure. Thus, nothing will be lost by taking his deposition in Spain, rather than New York.

There is only one just, fair, and logical place for Mr. Martin-Artajo's deposition and that is in Spain. We respectfully request that the Court issue an Order providing that the location of Mr. Martin-Artajo's deposition will be in Spain on dates mutually convenient for the parties.

54182510

The Honorable George B. Daniels
October 19, 2015
Page 6

**There Is Good Cause to Permit Mr. Martin-Artajo to Appear and Testify Through Contemporaneous Transmission at Trial from Spain, Rather Than in Person in New York**

Equally important is Mr. Martin-Artajo's ability to testify, hear what witnesses will say, and assist his counsel at trial, without sacrificing his right to be free from criminal prosecution. Mr. Martin-Artajo therefore seeks an Order under Rule 43(a) permitting him to appear and testify at trial from Spain through contemporaneous transmission into the courtroom in New York.

Rule 43(a) provides:

> In an Open Court. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. ***For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.*** [Emphasis added.]

To satisfy Rule 43(a)'s "good cause" requirement, the witness must show a "compelling circumstance," and not "mere inconvenience." Typical "good causes" have included extensive travel and illness, but the rule is not so limited. *See, e.g., Dagen v. CFC Group Holdings Ltd.*, 00 Civ. 5682 (CBM), 2003 U.S. Dist. LEXIS 20029 (S.D.N.Y. Nov. 7, 2003) (because defendants raised "international travel considerations, legitimate business concerns, and cost as rationales for allowing [five Hong Kong-based] witnesses to testify via telephone instead of appearing in the courtroom," the "good cause [    ] in compelling circumstances" exception under Rule 43 was satisfied); *Virtual Architecture, Ltd. v. Rick*, 08 Civ. 5866 (SHS), 2012 U.S. Dist. LEXIS 15118 (S.D.N.Y. Feb. 7, 2012) (court permits key third-party witness to testify via videoconference, rather than be forced to apply for visa and travel to New York from Seychelles, because the arduous travel and "rules and regulations" were more than "merely inconvenient"); *see also A.Hak Indus. Servs. BV v. Techcorr USA, LLC*, Civ. 3:11 Civ. 74, 2014 U.S. Dist. LEXIS 88480 (N.D. W. Va. June 30, 2014) (CEO's testimony could be provided telephonically at hearing, because he was in the Netherlands, which is outside Rule 45(c)(1)(A)'s 100-mile limit for subpoenas).

A determination of whether there is "good cause in compelling circumstances" is driven by the particular facts. Based on the facts here, we submit that Mr. Martin-Artajo's circumstances are indeed "compelling" and there is good cause for this exception to live testimony.[2]

---

[2] In addition, using current technology and "appropriate safeguards," the videoconference transmission of Mr. Martin-Artajo's testimony and appearance from Spain would closely approximate live testimony. In a postscript to the *Virtual Architecture* decision, Judge Sidney Stein explained the "appropriate safeguards" he had used. He noted that the plaintiff had made the necessary arrangements for the videoconference to begin at a certain time. Once the transmission of the testimony began, Judge Stein excused the jury and spoke to the witness to ensure he was able to see the bench, jury box, and attorneys. The court verified that the audio and video transmission were clear and the 50-inch screen was large enough for the jury to see the witness's upper body and face. Judge Stein then allowed the jurors to return and the witness's examination began. The transmission was not perfect and there were points when the video feed stopped. But Judge Stein was confident that the witness was able to observe the trial

The Honorable George B. Daniels
October 19, 2015
Page 7

**First**, under Rule 45, the Court cannot order Mr. Martin-Artajo to appear at trial, because he resides more than 100 miles from the courthouse. Thus, he cannot be defaulted for not appearing in person. But he should not have to give up his right to be free from U.S. criminal prosecution in exchange for his right to appear and testify at trial either. Such an outcome would infringe his adjudicated rights under the Spanish National Court's decision. Absent relief under Rule 43(a)'s contemporaneous transmission alternative to in-person testimony, however, the reality is that Mr. Martin-Artajo will be unable to appear and testify at trial.

**Second**, while Rule 32 and Rule of Evidence 804 would permit the use of Mr. Martin-Artajo's deposition testimony at trial as an unavailable witness, it would be grossly unfair for him to have to rely on that testimony to tell his side of the story to the trier-of-fact. At the time of his deposition, he will not have heard the deposition or trial testimony of the SEC's key witnesses against him. Nor will he have seen the documentary evidence that the SEC will offer through them. This is because (i) under the Court's June 29 Order, the depositions of the List of 7 – *the Government's key witnesses* – will not be scheduled until after the Defendants are deposed, and (ii) these witnesses will not have testified at trial yet.

Mr. Martin-Artajo cannot defend himself against evidence he has not seen or heard. The SEC has levied serious charges against him. He should be afforded the right to respond to the SEC's claims after hearing all of the evidence in this case. The Court and the interests of the public deserve his full participation at trial. Consequently, the requisite good cause exists for an Order granting Mr. Martin-Artajo's request to appear and testify at trial by contemporaneous transmission from Spain.

Based on the foregoing, we seek the following relief:

(i)     an Order modifying the Notice of Deposition served on Mr. Martin-Artajo to set the location of his deposition at a place within 30 miles of his residence in Spain on dates to be agreed on between the parties [or insert dates]; and

(ii)    an Order granting Mr. Martin-Artajo's request to testify and appear at trial through contemporaneous audio and video transmission from Spain.

We look forward to discussing these matters with the Court at the upcoming conference.

Respectfully submitted,

Bill Leone

cc: Via Email to Counsel for Plaintiff and Co-Defendant

---

and the jury was presented a close approximation of live testimony, concluding that he had taken "appropriate safeguards" under Rule 43(a). 2012 U.S. Dist. LEXIS 15118, at *5.