

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

Edward J.M. Little
Direct Dial: 212-837-6400
little@hugheshubbard.com

March 29, 2016

VIA ECF FILING

Honorable George B. Daniels
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1310
New York, New York  10007

Re:   *SEC v. Javier Martin-Artajo and Julien G. Grout*, 13 Civ. No. 5677 (GBD)
      – Defendants' Letter-Motion for a Conference to Address Their Anticipated
      Motion for an Order Precluding Plaintiff SEC from Sharing the Defendants'
      Deposition Transcripts with Government Witnesses

Dear Judge Daniels:

        We represent the defendant Julien G. Grout, whose deposition is scheduled to
begin in Paris, France on May 2, 2016.  We respectfully submit this letter in support of our
request under Local Civil Rule 37.2 for a conference to address the defendants' anticipated
motion for a protective order pursuant to Rule 615 of the Federal Rules of Evidence.  Our motion
will seek an order from the Court prohibiting the SEC from disclosing the transcripts of the two
defendants' depositions or their substance with the SEC's chief cooperator, Bruno Iksil, before
Mr. Iksil's own deposition or eventual testimony at the trial.

        The order would essentially be a witness sequestration order, which is routinely
issued to bar a trial witness from being present in the courtroom or being told what other
witnesses are testifying about so that he will not tailor his testimony.  In this case, because both
defendants are giving their trial testimony in advance by deposition from their countries of
citizenship and residence,[1] it is important that their deposition transcripts or the substance thereof
not be given to Mr. Iksil, the key trial witness for the government in this case, before he testifies.

_____

1.  Mr. Grout is scheduled for his deposition the first two weeks of May; Mr. Martin-Artajo is scheduled for the
    second and third weeks of June.

The requested relief is justified because (1) Rule 615 would ordinarily be invoked for an order excluding Mr. Iksil from the courtroom during the defendants' testimony; (2) the defendants' deposition testimony will be the functional equivalent of their trial testimony; and (3) as a result, giving Mr. Iksil their deposition transcripts or the substance thereof would effectively deny the defendants their right under Rule 615 to prevent him from knowing about their testimony in advance and tailoring his testimony.

This letter and request for a conference are submitted on behalf of both defendants, and Javier Martin-Artajo's counsel joins in them.  We attempted to resolve this issue with SEC counsel on a voluntary basis, as is usually done, but they have declined to agree.

Rule 615 actually requires the Court, whether on a party's motion or on its own initiative, to exclude witnesses at trial "so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615 ("At a party's request, the court *must* order witnesses excluded . . . .") (emphasis added); *see United States v. Jackson*, 60 F.3d 128, 134-35 (2d Cir. 1995) (noting that sequestration is *required* on a party's request);  *United States v. Savage*, No. 5:12-CR-351-F-1, 2013 U.S. Dist. LEXIS 26946, at *7 (E.D.N.C. Feb. 27, 2013) (Rule 615 "*mandates* that the court shall exclude witnesses so that they cannot hear the testimony of other witnesses.") (emphasis added); 1-615 Fed. Evid. Courtroom Manual (MB) § 1 ("Under Rule 615, a party has the absolute right to exclude, or sequester, witnesses").  The Rule codified "a well-established common law tradition of sequestering witnesses 'as a means of discouraging and exposing fabrication, inaccuracy, and collusion.'"  *Jackson*, 60 F.3d at 133 (quoting  Fed. R. Evid. 615 advisory committee's note to 1972 Proposed Rules (citation omitted));  *see also Geders v. United States*, 425 U.S. 80, 87 (1976) (the practice of sequestering witnesses "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid").

The *reading* of trial testimony, as well as the *hearing* of the testimony, would also violate a Rule 615 order.  *See United States v. Friedman*, 854 F.2d 535, 568 (2d Cir. 1988) (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373 (5th Cir. 1981) (reading of testimony may be more harmful than watching it because reading enables witness to "thoroughly review and study [previous testimony] in formulating his own"));  *see also In re Omeprazole Patent Litig.*, 190 F. Supp. 2d 582, 587 (S.D.N.Y. 2002) (precluding a sequestered witness also from reading a transcript of the testimony from which he was excluded).

Mr. Grout and Mr. Martin-Artajo's upcoming depositions are being taken for their trial testimony since they will not be present at the trial itself.  *See* Transcript of Oct. 21, 2015 Conference ("Tr.") at 11 (attached as Ex. A).  It is precisely for this reason that the parties have made arrangements for Mr. Grout and Mr. Martin-Artajo to be examined by all parties on both direct and cross-examination and to have the examination recorded on videotape for the trial.[2]

---

2.  At the October 21, 2015 conference, defendants reserved their right to request that the Court revisit the issue of whether they may be present or testify via contemporaneous transmission at trial under Federal Rule of Civil Procedure 43(a), at a later stage in the case.  The Court, however, advised the parties to proceed as though that relief was not going to be granted.

A witness sequestration order is plainly required here.  Mr. Iksil is the most important non-party witness.[3] Nicknamed the "London Whale" by the media for the massive positions he took in trading credit default swaps for JPMorgan Chase, he was primarily responsible for the required "marking to market" of his positions – the critical issue in the case.[4] Mr. Iksil is the central figure – he was Mr. Grout's superior and Mr. Martin-Artajo's subordinate and dealt with each of them more than they ever dealt with each other.  His testimony will deal with the most important facts and circumstances and will certainly overlap with the defendants' own testimony.   These include his instructions to Mr. Grout on how to mark the positions and his reports to Mr. Martin-Artajo regarding the performance, prospects and valuation of the portfolio.  Judging from the fact that Mr. Iksil is now a government cooperator, we expect his testimony will differ substantially from the views he expressed to the defendants at the time. The defendants are scheduled to testify in May and in June, but Mr. Iksil's own deposition is not scheduled to occur before September. It is crucial that Mr. Iksil not be given what is, in effect, the defendants' trial testimony before his own deposition or eventual testimony at trial.

Mr. Iksil's incentive to shape his testimony is especially strong given his central role.  He has cooperation deals that promise him immunity with both the SEC and the U.S. Attorney's Office and faces more pressure than most witnesses in civil cases.  He has an understandable interest in ensuring his testimony to be as helpful as possible to the government. Allowing him to have access to the defendants' own testimony will enable him to adjust his testimony, even unwittingly, to theirs.  That would not be tolerated at a trial.  It should not be tolerated here, where the defendants are necessarily giving their testimony now for trial. The interests of justice obviously call for an accurate factual record, one in which the testimony of Mr. Iksil is as uncontaminated as possible.

The order that we are seeking from the Court should apply to the additional witnesses the SEC may depose or call at trial, for the same or similar reason.  The order would, of course, not prohibit Mr. Grout or Mr. Martin-Artajo from being given the transcripts of other witnesses' testimony or the substance thereof since they are parties to the case and are entitled to hear all the evidence against them.[5]

_____

3.  Mr. Iksil's importance can be seen in the more than 40 appearances he makes in the SEC's 24-page complaint, referred to therein as "Cooperating Witness 1."  The U.S. Attorney's Office also offered Mr. Iksil as its first example of "the central witnesses in the case" when moving this Court for the depositions of a subset of witnesses to be delayed until after those of the defendants.

4.  As conceded in the SEC's complaint, Mr. Iksil "relayed" marking instructions to Mr. Grout (SEC Complaint ¶ 31),  he had the authority to decide the daily marks (SEC Complaint ¶ 41), and he instructed Mr. Grout on how to mark the portfolio on March 30, 2012, the critical date (SEC Complaint ¶ 51).

5.  As Rule 615 explicitly provides:  "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:  (a) a party who is a natural person . . . ."

    For all these reasons, we respectfully seek a conference with Your Honor to discuss and hopefully resolve this important matter.  We sincerely appreciate the Court's attention.

Respectfully yours,

Edward J.M. Little

# EXHIBIT A

FALHSECC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SECURITIES AND EXCHANGE
    COMMISSION,
4
                  Plaintiff,
5
           v.                          13 CV 5677 (GBD)
6
    JAVIER MARTIN-ARTAJO, et al.,
7
                  Defendants.
8
    ------------------------------x
9                                      New York, N.Y.
                                       October 21, 2015
10                                     11:0 a.m.

11  Before:

12                  HON. GEORGE B. DANIELS,

13                                        District Judge

14                        APPEARANCES

15  SECURITIES AND EXCHANGE COMMISSION
         Attorneys for Plaintiff
16  BY:  NICHOLAS A. PILGRIM
         HOWARD A. FISCHER
17       TEJAL D. SHAH

18  NORTON ROSE FULBRIGHT LLP
         Attorneys for Defendant Javier Martin-Artajo
19  BY:  WILLIAM J. LEONE
         FELICE B. GALANT
20
    HUGHES HUBBARD & REED LLP
21       Attorneys for Defendant Julien G. Grout
    BY:  EDWARD J.M. LITTLE
22       MARC A. WEINSTEIN

23

24

25

FALHSECC

1              (Case called)

2              MR. PILGRIM:  Good morning.  May it please this Court,

3    Nicholas Pilgrim on behalf of the Securities and Exchange

4    Commission.  With me at counsel table are my colleagues, Howard

5    Fischer and Tejal Shah.

6              THE COURT:  Good morning.

7              MR. LEONE:  Good morning, your Honor.  This is Bill

8    Leone from the law firm Norton Rose Fulbright, LLP, on behalf

9    of the defendant Javier Martin-Artajo.  And with me is Felice

10   Galant of our office.

11             THE COURT:  Good morning.

12             MR. LITTLE:  Good morning, your Honor, I'm Ed Little

13   from Hughes Hubbard.  With me is Marc Weinstein.  We represent

14   Julien Grout.

15             THE COURT:  Good morning.

16             MR. LITTLE:  Thank you.

17             THE COURT:  I see that you have not been able to come

18   to terms about the deposition.  I don't need further papers on

19   this.  This is what is going to happen.  The depositions are

20   going to take place where the defendants are.  They will take

21   place in Spain or in France or any other place that you can

22   agree to do it.  The SEC can take those depositions either

23   live, by going over there, or they can take them by video

24   deposition.  But that is only going to be the case if each

25   defendant -- if the defendant agrees to voluntarily sit for the

FALHSECC

1   deposition without any formal Hague process, or anything else.

2   Agree to do the deposition, I want them to indicate that the

3   defendant will answer questions and not take the Fifth with

4   regard to inquiries about this case, and I want the deposition

5   done in a month that's convenient for the SEC.  I don't

6   remember whether or not you've already scheduled dates for

7   that.

8           Mr. Pilgrim, did you have dates for those?

9           MR. PILGRIM:  Your Honor, there are dates scheduled.

10  With respect to the Court's point concerning the Hague, my

11  understanding is that there are innumerable difficulties trying

12  to depose the witness in France, and there are a number of

13  conditions that the French authority imposes, the French

14  Central Authority, among which are that the questions have to

15  be asked in advance or presented in advance of the deposition,

16  which would, obviously, deviate tremendously from the

17  procedures we have in the United States and would give

18  Mr. Grout an advantage, tremendous advantage, that wouldn't

19  occur in normal civil litigation.

20          So I just wanted to point that out because I can see

21  that right away being a hurdle to preventing your Court's order

22  from being accomplished, which is to have a deposition that

23  takes place without those kind of Hague limitations being

24  placed on it.

25          MR. LITTLE:  Your Honor, if I may respond?

FALHSECC

1          THE COURT:  Yes.

2          MR. LITTLE:  That's actually not correct.  It's a very

3     standard thing to take depositions American style in France.

4     What has to be done is in the Hague application, which will be

5     approved by the Court, provision will be made that the

6     questions will be put by private counsel, and it will not occur

7     in a French court with advance submission of questions.  We

8     will work with the SEC to ensure that that takes place.

9          If I may finish.

10          We are certainly not trying to take advantage of that

11     situation.  This is done all the time.  My firm does it all the

12     time, and I know this is easy to accomplish.  But I want to

13     assure the SEC that we are not going to take any kind of

14     advantage in that regard.  We will ensure that this is done

15     American style and can be done under the Hague convention, I

16     know that.

17          MR. FISCHER:  Your Honor, may I be heard briefly on

18     that?

19          THE COURT:  Yes.

20          MR. FISCHER:  This is one of the reasons why we had

21     asked that this issue not be brought up in a letter two days

22     before the conference but be subject to some briefing, and I'm

23     not talking about extensive briefing.

24          THE COURT:  We've talked about this for months.

25          MR. FISCHER:  What?

FALHSECC

1          THE COURT:  We've talked about this issue for months.

2          MR. FISCHER:  Yes, but at the last conference, right

3    before the last conference, counsel for defendant Grout said

4    the proper way to do this is an actual motion, where the

5    parties would have a chance to respond and to brief it fully.

6    We pointed that out in our letter to the Court of yesterday.

7          One of the problems, as my cocounsel has pointed out,

8    is that as a government agency seeking to enforce the financial

9    laws of the United States, our understanding is that,

10   notwithstanding what private parties may sometimes be able to

11   do in France, we would be subject to significant restrictions,

12   maybe not even allowed to come to France at all to ask

13   questions on this case, which is one of the reasons why we'd

14   like to brief this issue because the issues are a little bit

15   more complicated and nuanced than set out in the letters which

16   were just sent out in a flurry.

17         THE COURT:  Well, I can tell you exactly what my

18   position is and what my position would be.  If you cannot agree

19   upon U.S. conditions to take these depositions in France, then

20   everybody goes to London and take the deposition.  That's it.

21   It's going to happen.  If you can't agree, then they're going

22   to get on a plane and go to London.  And you've been to London

23   before.  You can set it up the exact same way you did it

24   before.

25         MR. FISCHER:  Your Honor, if I may push the point a

FALHSECC

1   little bit and beg your Court's indulgence on this. As we set
2   out very briefly in our letter to the Court yesterday, the
3   issue of where a foreign defendant gets deposed is a more
4   complicated one than was set out in the plaintiff's letter.
5           THE COURT: But not for me. What's the good reason
6   why we'd have to fight about this?
7           MR. FISCHER: Well, there are three good reasons, your
8   Honor. The courts that have analyzed these issues have a
9   three-test -- three factors.
10          THE COURT: I understand.
11          MR. FISCHER: Cost, convenience, and efficiency.
12          THE COURT: Right. I don't think it's going to break
13   the SEC. You've been there twice already.
14          MR. FISCHER: Your Honor, actually, the problem with
15   that is these are the main defendants. This would require more
16   than one or two people from the SEC for us to do it fully, and
17   for us to go over there for the three to five days anticipated
18   for these depositions would be a significant cost. And as you
19   may or may not be aware, our budget is somewhat up in the air,
20   our travel expenses --
21          THE COURT: Well, go over there when you're going over
22   there to do the other deposition. You've been there twice
23   already. You've been to London twice already. You didn't
24   confront that problem that prevented you from doing those
25   depositions.

FALHSECC

1          MR. FISCHER:  We've also taken depositions by video

2     testimony.

3          THE COURT:  Right.  You can do this by video testimony

4     if you like.  I already said that.  I'm not going to dig any

5     deeper into this process.  I want to give you a process to go

6     ahead and take the deposition, to be able to do it efficiently.

7     If you can't -- it's in your hands.  If you're not satisfied

8     with the day that you're assured you're going to be able to

9     take the deposition under the conditions that you want to take

10    the deposition in France, then they're going to have to go to

11    London.

12         MR. FISCHER:  In that case, your Honor, while,

13    obviously, we stick to our position that it would be more

14    appropriate to have it in New York, if the depositions are held

15    in London, and that's with both defendants, I believe that

16    would obviate the legal restrictions that the French government

17    imposes on such testimony as well as some restrictions that may

18    or may not exist under the Spanish legal regime as well.  So

19    London may work.

20         THE COURT:  Well, I'm not requiring the other

21    defendant in Spain to go to London.  He's been particularly

22    forthcoming about letting you take the deposition in Spain and

23    under any conditions you want to take those depositions.  I

24    didn't see a problem with that.  If he wants to go to London,

25    then that's fine, but I'm not going to make him go to London.

FALHSECC

1   I don't see the practical, other than you saying you get the --

2           MR. FISCHER:  Your Honor, my only point was, your

3   Honor, my understanding of your Court's position, ruling, is

4   that if we are subject to some of the same or similar

5   restrictions that we might be subject to in France in Spain as

6   well, that the same rationale would militate in favor of having

7   that deposition that would ordinarily take place under your

8   Court's order in Spain, in London or some other convenient

9   forum as well.

10          THE COURT:  If you submit a letter to me and convince

11  me by that letter that that's the case, then that's probably

12  going to be my result.

13          MR. FISCHER:  Thank you, your Honor.

14          MR. LITTLE:  Your Honor, what the SEC's not telling

15  you is that the reason they're pushing for London is that there

16  is a warrant out for our client's arrest.  And if they go to

17  London, he'll be arrested in London and extradited here.  What

18  they're simply doing is trying to force a default, knowing if

19  our clients -- if I may finish, sir -- knowing if our clients

20  are forced to come to the United States, or even the UK, they'd

21  be arrested; and so, therefore, they're not going to do that.

22  So this is nothing but a device to force a default after all

23  this effort.

24          We will work out, as the Court directs, a U.S.-style

25  deposition in France.  I'm confident we can do it, and so we

FALHSECC

1    should address that second part if that's not possible.  We can

2    work together.  We've already started drafting a Hague

3    application to be submitted to the Court.  And so I would

4    appreciate it if the SEC would work with us to make sure that

5    these Hague applications are done correctly so that we can take

6    full U.S.-style depositions of our clients in France and in

7    Spain.

8         THE COURT:  Well, I don't have a problem with that,

9    but that burden's on you to work it out.  If you can't work it

10   out, then you're going to have to show up either in New York or

11   you're going to have to show up in London to do the deposition.

12        MR. LITTLE:  I understand, your Honor.

13        THE COURT:  As long as you put them in a position

14   where they can't reasonably argue that it's onerous or improper

15   for them to do the depositions in France, you've got to remove

16   all of those obstacles.

17        MR. LITTLE:  No, I understand, your Honor.  It is

18   equally in our interest we take a U.S.-style deposition there.

19   We don't want questions submitted by both sides in writing to

20   be addressed by a French court in French.  That would just be

21   unworkable for both sides.  So we will work it out.

22        THE COURT:  At this point, also, I believe you have at

23   least some dates that you've agreed to.  You should either

24   stick with those dates or mutually agree to other dates.

25        MR. LITTLE:  We'll work that out, your Honor.  We'll

FALHSECC

1    work that out.  Thank you.

2            THE COURT:  Yes, sir.

3            ·   MR. LEONE:  Yes, your Honor, in terms of the dates, we

4    don't have dates we've agreed to yet.  The SEC noticed the

5    depositions without conferring on dates, but we have offered

6    dates anytime after April 18 for our client, after the Easter

7    holiday, and we will work that out.

8            The only other issue that I'd like to address, and I

9    don't know if it's premature or not, but that is the duration

10   of the deposition.

11           THE COURT:  Right.

12           MR. LEONE:  The SEC has noticed the deposition for

13   five full days.  That's a very long deposition.

14           THE COURT:  What do you think is reasonable?

15           MR. LEONE:  What's that?

16           THE COURT:  What do you think is reasonable?

17           MR. LEONE:  I would have said two days.  But,

18   obviously, there's a response.  We've taken very long

19   depositions for seven hours, but --

20           THE COURT:  How much of that time do you intend to

21   use?

22           MR. LEONE:  Well, in our letter we raised the question

23   of trial testimony, your Honor.

24           THE COURT:  Right.  And my position and condition

25   on -- what my position is with regard to the trial testimony, I

FALHSECC

1   evaluated that in deciding this issue.  Quite frankly, it's not

2   likely that I'm going to allow your clients to testify from a

3   remote location at trial.  They're either going to have to be

4   here or you're going to use their depositions.  And so I

5   suggest that you do a full deposition and prepare yourself for

6   that possibility.

7           MR. LEONE:  Okay.  Two points on that, your Honor:

8   One is that I appreciate that guidance, and that will inform us

9   as we work out the duration of the deposition.  If we're going

10  to use the deposition in lieu of testimony, then it will

11  probably be longer.  That's fine.  That was the reason -- that

12  was the spirit of my question.

13          The second issue, your Honor, is the need for a second

14  deposition or some kind of accommodation here.  Because last

15  time we were here, we talked about the seven witnesses -- the

16  U.S. Attorney's Office wanted seven witnesses to go after our

17  clients.  You ordered that.  We respect that.  But, certainly,

18  for purposes of trial testimony, it's going to be essential

19  that our clients be able to respond to these seven witnesses,

20  because I'm just anticipating there's going to be issues

21  raised, things said by these witnesses, that we just can't

22  anticipate.

23          THE COURT:  How long would you anticipate that

24  deposition?

25          MR. LEONE:  Your Honor, we're talking really about,

FALHSECC

1    I'm sure, a rebuttal kind of deposition, not a lengthy

2    deposition.  So, you know, maybe an additional day, or

3    something like that, or half a day.  But I just know there

4    would be a need for some way to supplement our client's

5    testimony for use at trial.

6              THE COURT:  Yes, sir.

7              MR. PILGRIM:  Your Honor, just briefly.  Two issues

8    there with respect to Mr. Leone's request.  With respect to the

9    April date, I think we can reach accommodation on that.  I

10   don't think that'll be a game-changer.  But with respect to the

11   second round of depositions, again, I think that just reaches

12   the points that my cocounsel was making about the cost involved

13   here.  Now we're talking about a second round of trips of

14   multiple attorneys flying out to London or France and/or Spain

15   to accommodate defendants' request to have a second bite at the

16   apple with these second round of depositions.  I think that,

17   again, militates in favor of our argument with respect to where

18   the location of the deposition should be.

19             But with respect to the rebuttal issue itself, your

20   Honor, as the Court is aware, that dynamic relates to every

21   witness in this case who might want to hear what the defendants

22   have to say, and then they want to rebut what the defendants

23   have to say.

24             THE COURT:  They have that opportunity at trial.

25             MR. FISCHER:  Yes.

FALHSECC

1          MR. PILGRIM:  That's true, but not all the witnesses

2     will be able to make it to trial.  Some of them are overseas.

3     But it's just needlessly extending the discovery.  If they want

4     to have depositions overseas and the Court agrees to that,

5     that's fine, but a second round of depositions to enable them

6     not to appear in trial seems to be a stretch that I haven't

7     seen any case law supporting, and I don't know that fairness

8     supports that.

9          I would ask that the Court at least resolve that

10    second issue down the road when the parties have had a chance

11    to brief it after they've been deposed.  But to decide here and

12    now, without having a chance to fully analyze this issue,

13    whether they're entitled to a second round of depositions

14    solely to enable them to stay overseas because there's a

15    criminal case pending when, as we point out in our letter,

16    there are a number of courts that would say that's a factor

17    courts shouldn't even consider, because they can either be

18    accused of aiding and abetting somebody from staying out of the

19    U.S. Attorney's Office's reach or the argument the defendants

20    have been making, which is you're circumventing extradition.

21    Either way the Court is in a no-win situation.  It's precisely

22    for that reason that a number of courts have said, we're not

23    going to consider that.

24         So what they're asking to do is get multiple

25    advantages that a normal litigant wouldn't have, because of the

FALHSECC

1  scenario they find themselves in.  And our position,

2  respectfully, is that isn't warranted.

3          MR. LITTLE:  There's an easy solution, your Honor.

4          THE COURT:  Yes.

5          MR. LITTLE:  No one's trying to take advantage of

6  anything.  At the request of the U.S. Attorney's Office, the

7  deposition of the seven most -- allegedly most important

8  witnesses was deferred until after our clients' testimony.  I'm

9  representing, as an officer of the court -- I shouldn't speak

10 for Mr. Leone, but I believe he will say the same thing -- our

11 clients will testify.  I've spoken to Mr. Grout.  He's ready,

12 willing, and able to testify.  He will not assert the Fifth.

13 That being the case, the easy solution, let's get the seven out

14 of the way and proceed with our clients.  They won't have to

15 come back for rebuttal.  Our clients are going to testify, so

16 there's no longer any reason to hold this seven back, and that

17 solves the problem about worrying about rebuttal depositions.

18 It's an easy solution.

19         THE COURT:  Well, this is my position, and I'll leave

20 it up to the SEC.  If you want to do one deposition and not

21 continue that deposition, then you do the seven witnesses

22 before the deposition.  Otherwise, I'll give them one day that

23 they can examine, further examine, the witness -- continue the

24 deposition and further examine their client after the seven

25 witnesses have been deposed.  If they're going to want possibly

FALHSECC

1    up to a day to further examine the witness, then you get up to

2    a day to further examine the witness yourself.  But I'm going

3    to leave it up to you.  If you want to do seven witnesses

4    first, I don't think -- quite frankly, I don't think it's a big

5    secret about what people are going to say, but if you want to

6    do seven witnesses first, do the seven witnesses, then sit

7    down, I think I will give you up to -- seems to me that I will

8    give you up to the five days that you want to do the

9    deposition.  I wasn't sure whether or not you wanted to use

10   five days and then have them use additional days.  I'm not sure

11   what you --

12            MR. FISCHER:  Your Honor, the SEC believes we should

13   be able to do five days total for each of the defendants.

14   However, as your Honor no doubt is aware, this case involves

15   mismarking of several hundred positions.  It's not a huge

16   universe, but it's a large universe.  And part of the case is

17   to show that they were deliberately mismarking these positions.

18   That will require testimony, perhaps, on a number of these

19   positions, which will take place over a number of days.

20            THE COURT:  What is the length of your examination,

21   approximately?

22            MR. FISCHER:  It's hard to say in advance.  I believe

23   that if the witnesses are cooperative and there aren't too many

24   objections, we could probably do our examination in --

25   actually, you know, your Honor, given the number of positions

FALHSECC

1   and the amount of testimony that would be required, probably

2   closer to four or five days for our direct examination.  This

3   is the core of the case, your Honor.

4           THE COURT:  Well, let me turn to the defense.  I'm not

5   sure.  What do you think should be the length of your

6   examination --

7           MR. LEONE:  Well, your Honor --

8           THE COURT:  -- particularly if that may possibly be

9   the extent of the testimony at trial?

10          MR. LEONE:  Yes.  No, if this is our chance for our

11  client to tell his story and explain his position, I could very

12  easily see us needing a couple of days.  I tend to be fairly

13  short, your Honor.  I haven't fully witnessed one of these

14  trials where a witness testifies for 10, 15 days.  I don't

15  quite know how that would work.  So I don't think we need more

16  than two days, but we probably might need two days.

17          THE COURT:  All right.

18          MR. LITTLE:  I would say the same, your Honor.

19  Probably two, at most three days, but I'm pretty sure we can

20  wrap it up in that amount of time.

21          THE COURT:  Well, so what do you suggest?  What does

22  the defense suggest?

23          MR. FISCHER:  Your Honor, perhaps maybe the best way

24  is to see if we could reach agreement amongst ourselves.  I

25  think they're going to be long depositions, which is one of the

FALHSECC

1    reasons why the cost factor militates having it in New York,

2    was it is a substantial expenditure of federal agency budget

3    for this case.  We could try to reach an agreement as to the

4    total number of days, perhaps just do a blockbuster period

5    abroad to get all of this done.

6            I think probably the best thing to do is if the

7    defendants are not available and their witnesses are not

8    available till April for this, we will confer with them, see if

9    we could reach an agreement, and then if we can't reach

10    agreement on the total days and how it's broken up, there's

11    more than enough time between now and then to come back to your

12    Honor.

13            THE COURT:  My position at this point is that the

14    length of your examination, I would hope that you can limit it

15    to three to five days.  And if they're going to examine

16    further, for an equal amount of time, then that would be

17    reasonable.  But as I say, I don't know.

18            MR. FISCHER:  We will do our best, your Honor, to make

19    this as concise as possible.  But as I said, the case does

20    involve a number of positions over a quarter length of time.

21    So it involves numerous telephone calls, e-mails.  It's a short

22    period of time as things go, but it's a very intense period of

23    time.  So we do need, especially if the defendants are not

24    going to show up at trial, the opportunity to make sure we get

25    all the evidence that we need about this.

FALHSECC

1        THE COURT:  Well, as I say, see if you can agree on

2   something.  It sounds like a length of time between three and

3   five days for each side's examination, but if you could agree

4   to something less or agree to something more, I'll leave that

5   up to you.  As you say, this is the heart of the case.  If

6   you're going to spend any money on anything, this is what you

7   should spend your money on.

8        So prepare yourself.  If you want to go over there, if

9   you want to minimize the cost, send somebody over here; have

10  somebody sitting in the office.  You don't have to have

11  everybody over there.  You can make that decision.  Money's not

12  coming out of your pocket; it's coming out of the taxpayer's

13  pocket.  So I'd like to minimize the cost, but this is an

14  important case, then it's worth setting it up.  And, quite

15  frankly, my decision, particularly with regard accommodating

16  the defendants on this issue, is going to make it much less

17  likely that I'm going to be particularly sympathetic to

18  acrobatics about the trial.  So, as I already indicated, it's

19  not likely that anybody's going to get to testify remotely at

20  this trial.  Either the deposition's going to be used for them

21  and against them and whatever other inferences that are

22  appropriate given their presence or absence from the trial,

23  and/or they're going to show up here and testify like any other

24  witness.

25        And, again, if you are comfortable, I think that you

FALHSECC

1    should be able to consider reserving one day each for

2    continuing the deposition if necessary, but only if you decide

3    the do the deposition before you do the seven depositions.  If

4    you decide you want to do the seven witnesses' depositions

5    first instead, then do the seven witnesses' depositions and

6    then sit for the one deposition, and that deposition will end

7    when --

8         MR. FISCHER:  Your Honor, not to beat a dead horse

9    which appears pretty bloody at this time, it is my

10   understanding that if the defendants want to reopen the

11   defense -- the main defendants' testimony because of anything

12   that was said at an intervening deposition, they would at least

13   have to show some good cause, i.e., a specific statement or

14   piece of testimony that they would like to ask the witness

15   questions on rather than say we just want to keep going.  My

16   presumption is if they're under oath, they'll testify

17   truthfully as to the events at issue.  If they testify

18   truthfully, I'm not sure what else they'll need to say.

19        THE COURT:  Well, let me cut it short.  I'm not going

20   to consider restriction unless you're going to be prepared to

21   do the same thing.  So if you're not going to be prepared to

22   say, And when they get there, I'm going to ask them these

23   areas, then if you don't want to share that information with

24   them, no, they should not be --

25        MR. FISCHER:  No, your Honor.  I simply meant if

FALHSECC

1    anybody, if any party, SEC or defense counsel, wants to reopen

2    the depositions of Mr. Grout or Mr. Martin-Artajo subsequent to

3    the deposition of the seven embargo witnesses, some good cause,

4    i.e., reference to testimony in the intervening time should be

5    shown if they're going to require that additional testimony

6    because, as my colleague said, it is somewhat unusual for a

7    party to get several bites at the apple.  And, obviously, we

8    should be subject to the same standard.  If we want to reopen

9    the testimony because of something that was said, we should be

10   able to point to that and say, this is what we want to ask them

11   about, rather than just have free rein to go back.

12              THE COURT:  Yes, sir.

13              MR. LEONE:  Your Honor, I don't think we should have

14   to come back to the Court for that.  The only reason that we

15   would ever have our client submit to further deposition in

16   advance of trial in this case is because something has been

17   said, and we feel it's very important for the defendant to

18   state his position about that item.  We're not going to reopen

19   these depositions willy-nilly or have our clients re-deposed on

20   stuff they've already talked about, and I don't think we should

21   have to come back to the Court for that and bother you with

22   that.  If we don't see a need to reopen the deposition or ask

23   additional questions, we won't do it.  It's possible there

24   won't be any.  Maybe we will have anticipated everything.  And

25   as you say, we do have some information about what some of

FALHSECC

1   these seven witnesses will say.  We don't know everything, but

2   we have a lot.  So, hopefully, we don't have to do it, but we

3   shouldn't have to.

4           THE COURT:  Yes, sir.

5           MR. PILGRIM:  Your Honor, I don't know that my

6   colleague is asking if we come back.  He is asking whether

7   there will be a standard, such as good cause or some kind of

8   evidence shown, to show why we have to do this.  And I think,

9   quite frankly, it's a two-way street.  If the concern for

10  defendants is that, well, we might hear something that we think

11  our client needs to readdress, we might hear something after

12  their depositions that we think merits a second round of

13  questioning, too.  And so, in order to prevent this from

14  spiraling out of control, I think my colleague's request is

15  reasonable.  Let's have some kind of showing to establish when

16  a second round of depositions is warranted for either party,

17  because it's a two-way street.

18          MR. FISCHER:  Your Honor, just to complete that

19  thought, it may be utterly unnecessary.  We may have all these

20  depositions and each party may realize, independently, you know

21  what, another day or so would be great because these issues

22  came up; and then, obviously, we wouldn't have to come to the

23  Court.  However, if there is an issue where someone wants to

24  take the deposition again, but for what is -- what we consider

25  no good reason or if we want to do that, each side should be

FALHSECC

1    subject to the same standard, and that is having to show a

2    reason why we want to go back.  And we may agree and they may

3    all agree that we don't have to do that, but if there's an

4    objection to it, then it's something that should be put to the

5    test.  And it does have to be before your Honor.  It could be

6    sent to a magistrate.  There are other ways of doing this

7    without taking up judicial resources.

8          MR. LITTLE:  Judge, they're leaving something out.

9    They have the advantage of having witnesses who are going to

10   appear at trial.  And as your Honor has ruled, our clients

11   cannot appear.  And so if they are concerned about surrebuttal

12   at some point, they have witnesses available to them that are

13   going to appear at trial, and our clients are not going to

14   appear at trial.  So there you have it.

15          The other thing is they're kind of missing the point

16   here.  The government has been given deference by putting off

17   the seven most important witnesses until after our clients

18   testify.  And the reason why it's important for us to be able

19   to have the chance to come back is, for example, suppose Bruno

20   Iksil says despite what we have in the FCA testimony, which is

21   very limited, only a day, and despite the sparse materials,

22   because a lot has been withheld because it's allegedly 3500,

23   after our client testifies, Bruno Iksil could say:  I spoke to

24   Julien on September 10, and I told him to do such and such.  I

25   spoke to him on March 15 and told him to do such and such.  And

FALHSECC

1    then we go into a trial, and that is unrebutted testimony.  And

2    so Julien has to be in a position to say, actually, he did not

3    say that to me on such and such a day, or, I wasn't even in the

4    office on such and such a day.

5           THE COURT:  Well, but I'm not particularly sympathetic

6    to that because that's unrebutted testimony because your

7    client's made a decision not to show up at this trial and rebut

8    it.

9           MR. LITTLE:  Right.  But, your Honor, by placing those

10   witnesses after our client -- and, frankly, there shouldn't be

11   a reason to do that anymore because both clients are going to

12   testify -- if I may finish, please.

13          So the whole point is they've been given deference.

14   I'm not arguing about that at this point.  But the seven

15   witnesses were put off because the Assistant U.S. Attorney came

16   in here and said, Oh, my God, this is nothing but a ruse to get

17   ahold of the testimony of these witnesses, and they're not

18   going to testify.  We have both represented our clients are

19   going to testify.  And it's just not fair to hold back the

20   seven most important witnesses, set our clients up to be

21   thoroughly deposed, and then have other stuff come out

22   afterwards without their ability to rebut.

23          Now, your Honor has already ruled that we can rebut.

24   The point that I'm addressing is we shouldn't have to ask for

25   permission from the SEC or establish probable cause why it's

FALHSECC

1  important for our clients to testify.  And the SEC will be

2  there for the rebuttal deposition if it's necessary, and they

3  can ask whatever questions they want, or they can simply do

4  what I think is the most efficient thing here, which is let's

5  get the seven witnesses deposed.  Your Honor has offered that

6  as an option, but I don't know why they don't take it.  Get the

7  seven done, and then our clients can testify, and then they

8  have the advantage of their witnesses, many of whom have deals

9  with them, cooperation agreements, they're going to show up at

10  the trial.  So I don't know what they're complaining about and

11  why they're still hanging on to this advantage of holding back

12  the seven witnesses.

13          It makes a lot more sense just to get this done and

14  get this ready for trial and get everything completed by next

15  April or May, at the latest, and then proceed to trial instead

16  of going back and forth and trying to use these arguments.

17  What's really going on here is they're trying to default our

18  clients, and that's just not fair.  And as the Court's ruled,

19  we have a completely fair and just way of proceeding, and we

20  should just get this done.

21          THE COURT:  Yes.

22          MR. PILGRIM:  Thank you, your Honor.  With respect to

23  the list of seven that counsel keeps coming back to, as this

24  Court is very aware, that's an issue that involved the U.S.

25  Attorney's Office making a motion.  And, quite frankly, I think

FALHSECC

1    it's inappropriate that if it was planned on raising this issue

2    again, that the U.S. Attorney's Office wasn't invited by

3    counsel to make rebuttals to those arguments.  It's not

4    necessarily an advantage for the SEC in this case to weigh into

5    that dispute.

6         However, as this Court was aware, the U.S. Attorney's

7    Office raised significant arguments concerning how defendants

8    were able to do an end-around to get discovery in the criminal

9    case that they wouldn't be entitled to through the civil case.

10   And just the other day, counsel was requesting from the SEC

11   information as to who confidential informants for the U.S.

12   Attorney's Office might be and whether that included various

13   witnesses.  That's the kind of thing that the U.S. Attorney's

14   Office was concerned about with counsel trying to get

15   information to benefit themselves in the criminal case.

16        So with respect to that list of seven that we keep

17   coming to, there's a party that's not in the room that had a

18   voice in that issue, and I just don't think it's appropriate

19   for counsel to try to go around that voice by raising these

20   arguments.

21        THE COURT:  Well, that's water under the bridge, as

22   they say.  That's not their position currently.  And their

23   position is that the case, this case, should go forward, and

24   I've accepted that.  So I'm not here to try to figure out who's

25   responsible for this.  The situation that you're in is that the

FALHSECC

1   case is moving forward, and this case would not progress any
2   differently whether the U.S. Attorney's Office was here or not,
3   because at this point they've already abandoned their attempt
4   to stay these further proceedings because of the criminal case
5   because they had no idea if and when they'll ever get a chance
6   to prosecute.

7           MR. FISCHER:  Your Honor, to bring this back to the
8   point that this is supposed to be addressing, which is whether
9   or not there should be a standard met when -- if any of the
10  parties, be it the defendants or the SEC, wants to re-depose
11  the defendants, and that is simply that they show there's a
12  need for it.  Counsel just answered the question.  He said
13  Mr. Iksil might testify, I had this conversation with Mr. Grout
14  or Mr. Martin-Artajo.  And in that case if it doesn't come up
15  in their deposition, he'd like the opportunity to ask them
16  about it.  Well, that seems simple.  If they want to re-depose
17  them, they should be able to say Mr. Iksil said this.  And if
18  we want to redepose them, we should be able to say, you know,
19  Mr. Barori said this or Mr. Iksil said that and that didn't
20  come up in Mr. Grout or Mr. Martin-Artajo's deposition.

21          That's all we're asking is if there is going to be a
22  reopening of this -- and this may be a very premature issue to
23  raise at this point -- but if there is going to be a reopening
24  of these depositions of defendants, as counsel says, they don't
25  intend to appear at trial, then there should simply be a

FALHSECC

1    showing that that reopening, with all of the costs attendant

2    upon it, is justified; and that could be justified simply by a

3    reference to the reason why it is necessary, i.e., this witness

4    said this, this exhibit says that, that didn't come up at their

5    prior deposition.  We'd like to ask them about it.  That way we

6    could also know how long the depositions have to be, whether or

7    not we could attend by video conference.  If the only reason to

8    reopen it is that there was a certain line of testimony in

9    someone's deposition, we may make the judgment, well, that'll

10   only take two hours to go through.  We don't have to travel to

11   wherever we're going to travel to in order to ask whatever

12   cross-examination we need on that.

13            THE COURT:  Yes, sir.

14            MR. LEONE:  Your Honor, that's fine.  By raising the

15   question, I just wanted to flag for the Court the possibility

16   that after our clients are deposed and then these other seven

17   depositions are in place, there may be a need to reopen.  We

18   can wait and revisit that after we see what the seven say.  I'm

19   not averse to that.  The only thing I would ask, I would ask

20   the Court to reserve judgment on this trial testimony question.

21   And one of the questions I was going to ask the Court was

22   whether it would make a difference to you whether there was a

23   jury trial or trial to the Court on that point?

24            THE COURT:  The answer is no, it would not make a

25   difference.

FALHSECC

1    MR. LEONE:  It would not make a difference.  All

2 right.  Well, that's fine.  Let's see how this goes.  We've got

3 dates for our clients' depositions.  We're going to get the

4 other seven deposed.  We'll see whether we have a need to redo

5 depositions at that point.

6    THE COURT:  If you think that it is appropriate and

7 that you and -- both you and the SEC, if the depositions are

8 continued, can outline what areas that you intend to inquire

9 about, then you should do so.  My position is this:  I'm

10 anticipating a deposition, either live or video, of three to

11 five days or less for each side.  That deposition will be

12 continued, and that deposition can be continued for one day for

13 each side unless you can agree to something else.  And if you

14 can come to an understanding, and I think that that's

15 preferable, to resolve this issue -- if you can quickly come to

16 that understanding that you'll at least outline the areas of

17 inquiry that will be addressed at the continued deposition

18 date, and then the SEC can make a decision whether they want to

19 spend time, effort, and resources to fly back out there or they

20 can just do this by video, as they say.

21    But, ultimately, as I've thought about all this in

22 context, ultimately, it's really in the SEC's hands.  If you

23 want to cut off that continued deposition, then do the seven

24 depositions first.  It's very simple.  That's in your control.

25 I'll let you control that.  If you want to eliminate that

FALHSECC

1  possibility of having to do this twice, then do the seven

2  depositions and then do those two.  Otherwise, I think it's not

3  unreasonable for this request, particularly -- I can only

4  prospectively make judgments at this point.  As they say, I

5  don't know what my position's going to be about trial and trial

6  testimony and what the issues are, and I have not yet made a

7  formal ruling except that I'm not granting, at this point, your

8  request to have them testify from a remote location during the

9  trial.  You can continue to try to convince me that that's

10  appropriate, but you should not plan on that happening.  And so

11  you should be as prepared as you can.  And, obviously, I'm not

12  going to listen to any arguments that you're somehow prejudiced

13  because your clients didn't get to testify remotely, when I've

14  warned you that this is no different than any other missing,

15  unavailable, unsubpoenable witness.  And that's the way it's

16  going to happen with the deposition testimony.

17            So see if you can work the rest of those issues out.

18  Go ahead and plan these things.  SEC can make their judgment.

19  Quite frankly, most of the considerations here by you are

20  strategic and tactical decisions, and that's not really what I

21  want to particularly be a part of.  So my decision is so that

22  this issue, this case, can be decided on its merits.  So if you

23  want to outmaneuver each other, that's fine and dandy, to get

24  whatever advantages you think you can get, but bottom line is

25  I'm going to be ensuring whether or not this is a fair process

FALHSECC

1    and that it will be a situation where either the Court or a

2    jury can just decide this case on its merits as it's presented

3    through the witnesses and the documents and exhibits.  That's

4    going to be my approach, and it's been my approach throughout.

5    So that's what you should plan on.

6              So is there anything else that we want to address, or

7    when should we meet again?  Mr. Pilgrim?

8              MR. PILGRIM:  A moment, your Honor.

9              THE COURT:  Yes.

10             (Discussion off the record)

11             MR. PILGRIM:  Your Honor, if we estimate having the

12   depositions in April, probably makes sense to have the status

13   conference shortly after that, in early May.

14             THE COURT:  All right.  Make sense?  If we need to

15   meet earlier, you can let me know, and we will do that.  Why

16   don't we say at this point May 4.  Let's say May 4 at 10:15.

17             MR. LITTLE:  That's fine, your Honor.  Thank you.

18             MR. PILGRIM:  And as the Court says, if we need to

19   meet earlier, we'll address the Court through a letter.

20             THE COURT:  Yes.  And you know where I am and what I'm

21   anticipating.  So make sure you can come to some understanding

22   very early about how you're going to conduct these proceedings.

23   So if there is an issue, you can bring it to my attention right

24   away, and I can resolve it right away so you can move forward

25   efficiently.

FALHSECC

1          MR. FISCHER:  We will, your Honor.  Thank you very

2    much.

3          THE COURT:  Then I'll see you on May 4 at 10:15.

4          MR. LITTLE:  Thank you, your Honor.

5          MR. LEONE:  Thank you, your Honor.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25