# NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
United States

July 6, 2016

**Bill Leone**
**Partner**
Direct line +1 212 318 3324
william.leone@nortonrosefulbright.com

**BY HAND AND ECF**
The Honorable George B. Daniels
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Tel +1 212 318 3000
Fax +1 212 318 3400
nortonrosefulbright.com

Re:  *SEC v. Javier Martin-Artajo and Julien G. Grout*, Case No. 13-Civ-5677 (GBD) (AJP): Discovery Update for July 12, 2016 Conference and Request for an Order Compelling the Production of Documents

Dear Judge Daniels:

We represent Defendant Javier Martin-Artajo in the referenced action. We write in advance of the case management conference scheduled for July 12, 2016 (i) to request certain relief regarding a discovery dispute that we intend to raise at the conference,[1] and (ii) to provide an update on discovery, as well as a proposed amended scheduling order.

## I.  The Subpoena for Documents from Mr. Iksil's FCA Proceeding

The first of these discovery disputes involves the objections of Baker Hostetler LLP ("BH"), counsel for Bruno Iksil—the London Whale and the SEC's chief cooperating witness—to produce documents in response to a subpoena *duces tecum* we served on December 17, 2015 ("Subpoena"). *See* Exhibits 4 and 5. The Subpoena seeks specific categories of documents ("Iksil Documents") exchanged between Mr. Iksil and the U.K. Financial Conduct Authority ("FCA") in connection with the discontinued proceeding brought by the FCA against Mr. Iksil ("Iksil Proceeding"). These documents include (1) the FCA's Preliminary Investigation Report ("PIR") in the Iksil Proceeding; (2) Mr. Iksil's brief in response to the PIR ("Brief"); and (3) the FCA's draft Warning Notice ("Draft Warning Notice") to Mr. Iksil. *See* Exhibit 4 (Subpoena, Request Nos. 1 and 2).[2]

---

[1] *See* Exhibits 1, 2, and 3.

[2] There are three document requests in the Subpoena. BH has represented that it does not have any documents responsive to Request No. 3, aside from the FCA interview transcripts previously produced in this case.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

The Honorable George B. Daniels
July 6, 2016
Page 2

BH has objected to the Subpoena on a number of grounds. None of them has any merit. First, BH contends that the requested documents are not relevant. But relevance cannot be a basis to withhold the Iksil Documents, because the Iksil Proceeding was an investigation into the same events, conduct, and underlying facts at issue in this case. Next, BH objects on the ground that the Subpoena seeks confidential information prohibited from disclosure under U.K. law. The confidential information BH refers to consists of underlying documents it obtained from JPMorgan Chase & Co. ("JPMorgan") and its own written communications (including the PIR, the Brief and the Warning Notice) to the FCA referencing those underlying documents. BH's confidentiality objection must fail, however, because all of the underlying documents over which BH claims it has a confidentiality obligation are not "confidential" to the parties in this case, as they were produced in this case, with the consent of the FCA. Further, the confidentiality of these documents is protected by the Court's protective order. Nor can references to the information in the underlying documents pose a problem since the documents themselves are not confidential. Finally, BH claims that certain, largely unidentified documents are protected from disclosure under the "without prejudice" privilege under U.K. law, as they were exchanged during settlement negotiations between Mr. Iksil and the FCA. This objection also fails, because the "without prejudice" privilege does not actually prohibit the disclosure of such documents outside of the United Kingdom or to a non-party to the Iksil Proceeding, which all of the parties to this case are. Nor would U.S. federal law prohibit disclosure on these facts. For the reasons discussed below, Mr. Martin-Artajo respectfully requests an Order compelling BH's compliance with the Subpoena.

### 1.     The Documents Sought Are Relevant

The relevance of the Iksil Documents could hardly be more obvious. The subject matter of the Iksil Proceeding is identical to the subject matter of this case, which is the alleged mismarking of positions in JPMorgan's Chief Investment Office's ("CIO") Synthetic Credit Portfolio ("SCP") during the first quarter of 2012. Mr. Iksil was the chief trader of the SCP. He supervised one defendant, Mr. Grout, and reported to the other, Mr. Martin-Artajo. Federal Rule of Evidence 401 provides that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Iksil Documents are relevant under Federal Rule of Evidence 401 and discoverable under Federal Rule of Civil Procedure 26.

The SEC's theory of the case depends on what Mr. Iksil will say at his deposition and later at trial. What he has said previously about the facts of this case, including to the FCA, is also important, as the prior statements of, and legal positions taken by, any key witness at trial is relevant to Mr. Martin-Artajo's defense and for cross-examination purposes. *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218-19 (S.D.N.Y. 1974) ("[O]ne of the purposes of discovery is to obtain information for use on cross-examination and for the impeachment of witnesses. The credibility of a witness' testimony is of the utmost importance since to evaluate the state of proof one must determine which evidence and what testimony is believable. In measuring the credibility of a witness' testimony, it is thereby important to search out which such testimony is biased by personal motives and the force of any motives and to explore a witness'

The Honorable George B. Daniels
July 6, 2016
Page 3

interest in the outcome of a case and the extent of that interest.") (citing *Hickman v. Taylor*, 329 U.S. 495 (1947) and *Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc.*, 21 F.R.D. 347 (S.D.N.Y. 1958)).

The Iksil Documents are especially relevant to Mr. Iksil's bias and motive to testify in a particular way due to his cooperation agreements with the SEC and the Department of Justice ("DOJ"). Despite these agreements, we understand from BH that Mr. Iksil has not provided the SEC or the DOJ with copies of the Iksil Documents. While we could speculate as to why that is, this much is certain: in order for Mr. Iksil to reap the benefit of his cooperation agreements— full immunity from an enforcement action by the SEC or DOJ—he must not say anything materially inconsistent with the facts he told the SEC and the DOJ or their investigators. *See* Exhibit 6 at            . Thus, the Iksil Documents are relevant and discoverable to show Mr. Iksil's bias "by personal motives and the force of any motives and to explore [his] interest in the outcome of a case and the extent of that interest." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. at 219.

In fact, the one document that BH did produce, the FCA's Notice of Appointment of Investigators and accompanying Memorandum of Appointment of Investigators, directly contradicts BH's relevance objection. *See* Exhibit 7. It provides:



There is no dispute (and it is a matter of public record) that the underlying facts and alleged misconduct in the Iksil Proceeding are the same as those in this case—the alleged mismarking of the SCP to hide losses in the first quarter of 2012. As the allegations and potential misconduct that the FCA was investigating form the core of the SEC's claims against the Defendants, the Iksil Documents are relevant.

The Honorable George B. Daniels
July 6, 2016
Page 4

There is another compelling reason for disclosure of the Iksil Documents—the FCA's discontinuance of the Iksil Proceeding in July 2015 without bringing any charges, or requiring that Mr. Iksil pay a fine or be banned from working in the industry. The FCA made this decision after its independent body, the Regulatory Decisions Committee ("RDC"), determined that an action should not be brought against Mr. Iksil for the charges described in the Notice of Appointment of Investigators. The fact that the documents sought in the Subpoena resulted in an outcome in which the FCA ultimately did not charge Mr. Iksil is a noteworthy and relevant fact. This is because Mr. Iksil, as head trader of the SCP, was either directly or indirectly involved in every key event in the SEC's case against the Defendants. As Mr. Iksil's U.K. counsel stated, the FCA "failed to convince the RDC of their case." *See* Exhibit 8. "It is rare for the RDC to dismiss an FCA Enforcement case at this very initial stage," Mr. Iksil's counsel added, and "it is testament to the strength of my client's response to the FCA's allegations." *Id.* They called the FCA's decision a "tremendous victory," claiming that Mr. Iksil "has been vindicated by the FCA." *Id.* All Mr. Martin-Artajo is seeking is the information that led to the supposed vindication of Mr. Iksil.

In sum, the Iksil Documents are relevant and should be produced, as the SEC's claims arise from the same underlying premises as in the Iksil Proceeding. Because of the veil of secrecy that has been placed around Mr. Iksil, it is not clear what he has said or will say, or how that story has changed depending on the time and circumstances in which he or his lawyers speak. The content of any communications to the FCA that achieved this "rare" result would be undeniably relevant to this case. There is no question that he was directly involved in the marking of the SCP positions at issue in the case, and whether he acted wrongfully or properly in performing these duties is an important fact to determine in this case, regardless of which version is to be believed.

## 2.   The Iksil Documents Cannot Be Withheld on the Ground of Confidentiality

BH cannot properly invoke the confidentiality provisions of Section 348 of the U.K. Financial Services and Markets Act 2000 ("FSMA") as a basis to withhold the Iksil Documents. As a threshold matter of U.K. law, Section 348 of FSMA is territorial in its application and has no application to disclosure in the United States. *See* Financial Services and Markets Act, 2000, c. 8, § 430 (U.K.) and *Air-India v. Wiggins* [1980] 1 W.L.R. 815 (H.L.) (U.K.), contained in Appendix A.[3] Thus, Section 348 could never have been a bar to production of the Iksil Documents. Putting that aside, the documents that BH claims are confidential under Section 348 are not in fact confidential, as they were produced to the parties during discovery in this case. As such, Section 348's confidentiality requirements are inapplicable and would not bar production of the Iksil Documents.

Section 348 provides that "[c]onfidential information must not be disclosed by a primary recipient, or by any person obtaining the information directly or indirectly from a primary recipient, without the consent of—(a) the person from whom the primary recipient obtained the information and (b) if different, the person to whom it relates." Financial Services and Markets

---

[3] U.K. statutes and case law referred to herein are included in Appendix A.

The Honorable George B. Daniels
July 6, 2016
Page 5

Act, 2000, c. 8, § 348(1) (U.K.), contained in Appendix A. BH asserts a confidentiality objection under Section 348 on the ground that the Iksil Documents allegedly reference information in other documents JPMorgan produced to the FCA ("FCA Production"), as well as FCA interview transcripts of certain JPMorgan employees ("FCA Transcripts"). BH contends that the information referenced in the Iksil Documents is "confidential information" for the purposes of Section 348, and that disclosure is therefore prohibited without JPMorgan's consent. BH's reliance on Section 348's confidentiality requirements is entirely artificial, and without merit.

The purpose of Section 348 is to ensure that confidential information obtained by the FCA is only disclosed with the consent of the person from whom it was received (in this case JPMorgan), or by the FCA itself pursuant to its statutory functions. Here, the parties already have all documents BH claims are "confidential" under Section 348. These documents—the FCA Production and the FCA Transcripts—have been produced to the parties by or with the consent of the FCA and/or JPMorgan. And no person or agency has raised a question about a purported Section 348 prohibition. Stated another way, the FCA and JPMorgan have consented to the disclosure of, and have in fact disclosed to the parties, the very information BH is contending must not be disclosed to the parties.

Moreover, during the meet and confer process with BH, it became clear that there are no other documents referenced in the Iksil Documents that have not been produced in this case. BH represented to us that Mr. Iksil did not produce any documents to the FCA himself, and that the only documents he received from the FCA were the FCA Production and the FCA Transcripts. Further, JPMorgan has advised that it does not object to the production of the legal documents Mr. Iksil and the FCA exchanged in the Iksil Proceeding to the extent they reference information within documents in the FCA Production. *See* Exhibits 9 and 10. The FCA also consented to the production of the FCA Transcripts to the parties in this case, when it authorized JPMorgan and the SEC to do so. In these circumstances, BH's resort to Section 348 is untenable and obstructive. There is no confidentiality in the documents at issue, and the FCA and JPMorgan have not only consented to disclosure, but have gone further and disclosed the underlying documents themselves. As a matter of U.K. law, Section 348 of FSMA does not prohibit disclosure by BH.[4]

---

[4] In addition, courts within the Second Circuit have repeatedly held that foreign law prohibitions on disclosure are not an absolute bar to the production of documents in response to a U.S. subpoena or court order. *See, e.g., Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987) (disclosure of documents subject to confidentiality restrictions under foreign law is appropriate upon a balancing of the following factors: (1) the competing interests of the nations whose laws are in conflict, (2) the hardship of compliance, (3) the importance to the litigation of the information, and (4) the good faith of the resisting party). Each of the *Minpeco* factors weighs in favor of disclosing the Iksil Documents. First, the U.S. has a significant interest in ensuring that the parties in this case discover all relevant facts, which include the Iksil Documents. Further, the FCA discontinued its case against Mr. Iksil; thus, there is no investigative or agency-related reason why such documents should not be produced. Second, BH will experience no hardship because the Iksil Documents are not voluminous, and the FCA has consented to the production of the confidential material referenced in them. Thus, BH will not violate U.K. law by

The Honorable George B. Daniels
July 6, 2016
Page 6

Furthermore, BH can have no genuine claim regarding confidentiality because any documents it were to produce in response to the Subpoena would be protected under the Second Amended Protective Order. Dkt. No. 103. Federal courts routinely grant discovery of confidential information subject to protective orders. *See, e.g., Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979) (discussing the "vital function of a protective order issued under Rule 26(c), F. R. Civ. P., which is to 'secure the just, speedy, and inexpensive determination' of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.") (quoting F. R. Civ. P. 1); *Goland v. Iglesias*, No. 88 CIV. 9697 (SWK), 1988 WL 117450, at *3 (S.D.N.Y. Oct. 27, 1988) (holding that confidential materials of a non-party were discoverable after determining there was not any "compelling legal support for the proposition that [a non-party] deserves greater protection from discovery of allegedly confidential documents than is given a party").

Consequently, (i) Section 348 of the FSMA does not prohibit the production of the Iksil Documents, and (ii) the Second Amended Protective Order precludes an objection based on confidentiality under U.S. law.

### 3. There Is No Settlement Privilege Under U.K. Law or U.S. Law That Would Shield the Iksil Documents

BH's objection on the ground that the Subpoena seeks documents exchanged during settlement discussions is not supported by controlling U.K. or U.S. law. The only document that BH has specifically identified as falling within this category is the FCA's Draft Warning Notice to Mr. Iksil;[5] BH has never produced a privilege log or identified any other documents over which it has claimed privilege, despite service of the Subpoena six months ago.

U.K. law does not protect documents exchanged between Mr. Iksil and the FCA during their settlement discussions against disclosure in this case. Under U.K. law, the "without prejudice" privilege for settlement communications between parties can be asserted (i) against other parties in the same proceeding or (ii) in a subsequent litigation in which a party to a settlement communication is a party, for the purpose of rendering the communication inadmissible. *See Rush & Tompkins v. Greater London Council* [1989] AC 1280 (H.L.) (U.K.), contained in Appendix A. Here, however, the FCA and Mr. Iksil are not parties to this case, and the documents sought are not for use in a proceeding in which Mr. Iksil or the FCA are parties. These documents are, instead, sought to permit Mr. Martin-Artajo to defend himself against a fourth party, the SEC, in relation to serious allegations of misconduct. Under these

---

producing them subject to the protective order. Finally, BH's objections were not made in "good faith," given the FCA's consent and the fact that Mr. Iksil will be the SEC's chief prosecution witness at trial against the Defendants.

[5] The FCA is required under FSMA to give a Warning Notice to the subject of a proposed enforcement action, including providing reasons for the proposed action. Following receipt of a Warning Notice, the subject has the opportunity to make written and oral representations to the FCA's Regulatory Decisions Committee, which will then make a decision as to whether enforcement action should proceed.

The Honorable George B. Daniels
July 6, 2016
Page 7

circumstances, the policy justification on which the "without prejudice" privilege is based has no application. The documents are, therefore, not protected from disclosure under U.K. law.

BH's reliance on *Property Alliance Group Limited v. The Royal Bank of Scotland Plc* [2015] EWHC 1557 (Ch), [2016] 1 W.L.R. 361 (U.K.) in support of its privilege objection is misplaced. *See* Appendix A. The issue in that case was whether the "without prejudice" privilege could ever apply to settlement negotiations in the FCA context. *Id.* The Court held that the privilege did apply to negotiations between the FCA and the defendant bank, and that in principle the bank could assert the privilege in subsequent proceedings in which it was defending a claim relating to the same subject matter brought by a third party. *Id.* This decision was merely a conventional application of well-established principles in the FCA context. It has no bearing on the present situation, namely, the assertion of the "without prejudice" privilege by a person in a case in which he is not a party.

There is no applicable privilege against the disclosure of settlement-related documents under U.S. law either. The proper scope of pretrial discovery, including settlement-related documents, is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and "[r]elevant evidence need not be admissible." *See, e.g., In re Initial Pub. Offering Sec. Litig.*, No. 21MC92, 2004 WL 60290, at *4 (S.D.N.Y Jan. 12, 2004) (offers of settlement are discoverable under Rule 26, "so long as the settlement material may reasonably lead to the discovery of admissible evidence.") (quoting F. R. Civ. P. 26(b)(1)); *ABF Capital Managment v. Askin Capital*, No. 95 CIV. 8905 (RWS), 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000) ("Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by this rule, and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement."). Thus, BH cannot avoid production of settlement-related documents on the ground that they may not be admissible at trial.

While Federal Rule of Evidence 408 is often cited by those seeking to avoid producing information exchanged during settlement discussions, this Rule does not prohibit such disclosure. Rather, it provides merely that evidence of conduct or statements made in compromise negotiations "is not admissible to prove liability for or invalidity of the claim or its amount." Rule 408 is therefore inapplicable for two reasons: (1) Mr. Martin-Artajo is not seeking to admit the FCA's Draft Warning Notice to Mr. Iksil "to prove liability for or invalidity of the claim [against Mr. Iksil] or its amount"; and (2) Rule 408 is a rule of admissibility, not discoverability. *In re Initial Pub. Offering Sec. Litig.*, 2004 WL 60290, at *4 ("While Rule 408 is the only federal rule to address settlement material, it is a rule governing the admissibility of evidence, not the discovery of relevant information prior to trial."); *United States v. Barrier Indus., Inc.*, No. 95 Civ. 9114, 1997 WL 97842, at *2 (S.D.N.Y. Mar. 5, 1997) ("[Rule 408] limits the introduction at trial of evidence regarding settlement negotiations, this rule does not itself govern discovery.").

Moreover, courts within the Second Circuit routinely admit evidence pertaining to settlement negotiations for other purposes. *See, e.g., Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("Evidence of an offer to compromise, though otherwise barred by

Rule 408, can fall outside the Rule if it is offered for 'another purpose,' i.e., for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle.") (quoting Fed. R. Evid. 408); *Newman & Assocs. v. J.K. Harris & Co., LLC*, No. 04 CIV. 9264 (RJH) (MHD), 2005 WL 3610140, at *2 (S.D.N.Y. Dec. 15, 2005) ("[R]ule 408 explicitly authorizes the admission of statements made in the course of settlement discussions for a number of purposes and excludes their introduction only for the purpose of proving liability or the amount of damages."). This line of cases would therefore preclude any argument by BH that it could avoid producing settlement-related documents for a purpose other than the one set forth in Rule 408.

Finally, BH has not identified the "settlement discussions" that it contends give rise to the "without prejudice" privilege, or its U.S. equivalent, as required by Federal Rule of Civil Procedure 45(e)(2). And the lone document BH has identified as being subject to a settlement privilege, the FCA's Draft Warning Notice, is not a class of document protected from discovery under U.K. law in any event. Neither the settlement privilege, nor the specific limitations on publishing Warning Notices contained in Section 391(1) of FSMA, operate to preclude discovery. *See* Financial Services and Markets Act, 2000, c. 8, § 391(1) (U.K.) and *Real Estate Opportunities Limited v. Aberdeen Asset Managers Jersey Limited* [2006] EWHC (Ch) 3249 (U.K.), contained in Appendix A. Should BH purport to assert a claim of privilege over any other specific documents sought, BH's failure to produce a privilege log should result in a waiver of the privilege asserted. *See, e.g., Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992) ("[T]he failure to comply with Rule 45(e)(2) may result in a finding that the privilege has been waived."); *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) ("As other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege."); *Grossman v. Schwarz*, 125 F.R.D. 376, 386-87 (S.D.N.Y. 1989) ("[F]ailure to comply with the explicit requirements of Rule 45(e) will be considered presumptive evidence that the claim of privilege is without factual or legal foundation").

In sum, BH lacks a valid objection to complying with the Subpoena under U.K. or U.S. law. Accordingly, Mr. Martin-Artajo respectfully respects that the Court issue an Order compelling BH to comply with the Subpoena, by producing the requested documents.

## II.  The Status of Discovery and a Proposed Amendment to the Scheduling Order

### A.  Document Discovery

The Parties: Discovery as between the parties is complete, subject to the duty to supplement under Federal Rule of Civil Procedure 26(e) and the reservation of the Defendants' right to seek additional documents or information as discovery proceeds.

JPMorgan: In April and May 2014, the SEC produced to the Defendants most of the documents that JPMorgan had produced to the SEC during its investigation of JPMorgan in the London Whale matter. JPMorgan has also continued to produce documents to the Defendants which

The Honorable George B. Daniels
July 6, 2016
Page 9

have been requested by them. Recently, JPMorgan produced to the parties the balance of documents that it had previously produced to the FCA and the transcripts of the interviews of James Brown and Keith Stephan, taken before the FCA.

### B. Depositions

Since the last conference on October 19, 2015, the deposition of Mr. Grout was completed, over nine days, from May 2 through May 12, 2016, in Paris, France. Mr. Grout's counsel examined him for three days, in addition to a short redirect examination on the ninth day, and the SEC examined Mr. Grout for five days. Mr. Martin-Artajo's deposition was completed over eight days, from June 8 through June 17, 2016, in Madrid, Spain. We examined Mr. Martin-Artajo for three days, and the SEC examined him for five days. We conducted a brief redirect examination of Mr. Martin-Artajo after the SEC completed its examination.

The deposition of Mr. Iksil is scheduled to commence on September 12, 2016. The duration is the subject of a dispute with Mr. Iksil. Defendants seek to reserve up to five days for Mr. Iksil's deposition, while Mr. Iksil claims the parties should be limited to a total of three days. The Court has referred the resolution of this dispute to Magistrate Judge Peck and a conference is set for July 20, 2016.

Following Mr. Iksil's deposition, the depositions of the remaining embargoed witnesses will be taken. They include (i)  (ii) (iii) (iv) (v) and (vi) . All are current or former JPMorgan employees. The parties are in the process of scheduling the depositions of a handful of other former JPMorgan employees. Defendants anticipate that short rebuttal examinations of the Defendants will be needed after the embargoed depositions are completed.

Finally, due to the progress the parties have made in discovery, we believe it would be an appropriate time to submit for the Court's consideration the attached proposed amended scheduling order and case management plan. *See* Exhibit 11. We have sent the draft order to the SEC and counsel for Defendant Grout for their consideration as well.

Based on the foregoing, we seek the following relief:

(i) an Order granting Mr. Martin-Artajo's request for an Order compelling Baker Hostetler LLP to produce documents responsive to the Subpoena; and

(ii) an amended Scheduling Order and Case Management Plan in the form attached hereto.

We look forward to discussing these matters with the Court at the upcoming conference.

The Honorable George B. Daniels
July 6, 2016
Page 10

Respectfully submitted,

*Bill Leone /vp*

Bill Leone

Enclosures

cc:    Via ECF to All Counsel of Record
       Via Email to Counsel for Plaintiff, Co-Defendant Julien Grout, and Mr. Bruno Iksil