# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

Jonathan B. New
direct dial: 212.589.4650
jnew@bakerlaw.com

July 18, 2016

**BY HAND AND ECF**

The Honorable Andrew J. Peck
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 20D
New York, New York 10007-1312

Re:     *SEC v. Javier Martin-Artajo and Julien G. Grout, No. 13-Civ-5677 (GBD) (AJP)*:
        Opposition to Defendant Javier Martin-Artajo's Request for an Order Compelling
        Production of Documents

Dear Judge Peck:

        We write in opposition to defendant Javier Martin-Artajo's July 6, 2016 Request for an
Order Compelling the Production of Documents ("July 6 Letter Brief") and to request that the
Court, instead, schedule a pre-motion conference as required by Local Civil Rule 37.2.  At such
conference, the Court may set an appropriate briefing schedule to allow the parties to fully brief
the relevant issues and submit evidence from experts in U.K. law to assist the Court in
determining the applicable foreign law.  Any such briefing schedule should take into account the
letter from the U.K. Financial Conduct Authority (the "FCA"), which we have attached as
Exhibit 1, in which the FCA opposes production of certain of the documents sought by defendant
and asks the Court to provide it with sufficient time to "properly consider its position and take
further action if appropriate."

        On December 17, 2015, defendant took the highly unusual step of serving a subpoena
(the "Subpoena") on non-party Bruno Iksil's U.S. counsel, Baker & Hostetler LLP ("Baker"),
broadly seeking documents exchanged between Mr. Iksil and the FCA in connection with the
FCA's now-disbanded investigation of Mr. Iksil's conduct as a member of the Chief Investment
Office ("CIO") in the London Branch of JPMorgan Chase Bank N.A.  However, as detailed in
defendant's July 6 Letter Brief, defendant is principally concerned with only three documents in
the possession of Baker: (1) a Preliminary Investigation Report (the "PIR") that was drafted by
the FCA investigative team; (2) a legal brief submitted to the FCA by Mr. Iksil's U.K. counsel in
response to the PIR; and (3) a draft "Warning Notice" that was provided to Mr. Iksil's U.K.

The Honorable Andrew J. Peck
July 18, 2016
Page 2

counsel by the FCA in the course of confidential "without prejudice" settlement communications between the FCA and Mr. Iksil's U.K. counsel (collectively, the "BH FCA Documents"). In addition, defendant seeks production of any other "without prejudice" documents that Baker may possess that were exchanged in the course of settlement discussions.[1]

To the extent the Court considers defendant's premature motion to compel, it should be denied. Under U.K. law, Baker is prohibited from disclosing the BH FCA Documents under penalty of potential criminal sanctions in the U.K. The BH FCA Documents contain and reference confidential information that JPMorgan Chase & Co. ("JPMorgan") and its current and former employees provided to the FCA. Section 348(1) of the Financial Services and Markets Act of 2000 ("FSMA") (contained in Part 2 of Appendix A to the July 6 Letter Brief) prohibits Baker from disclosing this information without the consent of the party or parties who produced the confidential information to the FCA. Neither JPMorgan nor the individual employees interviewed by the FCA have provided their consent for Baker to disclose the BH FCA Documents to defendant. In addition, the draft Warning Notice, along with any other "without prejudice" documents exchanged as part of settlement discussions, is protected from disclosure under applicable U.K. law. The U.K. has a strong public policy of encouraging settlement discussions between regulators and individuals under investigation. This "without prejudice" privilege is so important to the U.K.'s public interest that the FCA requested we submit the attached letter to the Court on its behalf (Ex. 1), urging the Court to reject defendant's motion to compel disclosure of these documents.

In addition to the compelling reasons under U.K. law for denying defendant's motion to compel, the Subpoena is fatally flawed under U.S. law. The Subpoena seeks information that is irrelevant to the parties' claims and defenses in this litigation and imposes a burden upon non-party Baker that far outweighs any value the sought information has to this case. Defendant admits that he already possesses all of the documents that JPMorgan provided to the FCA for use in its investigation, as well as all of the relevant transcripts of FCA interviews, including a transcript of Mr. Iksil's interview. Thus, defendant already has all of the factual evidence that the FCA reviewed as part of its investigation and that it referred to in its PIR and draft Warning Notice. Although defendant suggests that the BH FCA Documents are discoverable for potential impeachment purposes, defendant has previously acknowledged that he possesses voluminous impeachment materials including a transcript of Mr. Iksil's prior testimony to the FCA, "dozens of lengthy recorded calls and chats" in which Mr. Iksil participated, and several hundred emails and documents on which "his name appears." (Letter from Bill Leone to Hon. George B. Daniels (May 20, 2016), ECF No. 126.) The remaining portions of the FCA's "preliminary" report and the legal arguments of Mr. Iksil's UK counsel do not contain any potential non-cumulative sources of information related to Mr. Iksil's credibility. Defendant's subpoena appears to be nothing more than a fishing expedition, designed to harass Mr. Iksil by attempting to obtain for questioning at his deposition and/or trial irrelevant preliminary views in the draft

---

[1] We understand through our meet-and-confer conferences with defendant's counsel and subsequent letter exchanges that defendant has all of the documents the FCA produced to Mr. Iksil in connection with the FCA's interview of Mr. Iksil, the draft Warning Notice, and the PIR, and are only seeking the BH FCA Documents and confidential "without prejudice" settlement communications.

The Honorable Andrew J. Peck
July 18, 2016
Page 3

Warning Notice and PIR that ultimately were neither adopted nor pursued by the U.K. regulator. With no factual basis warranting this discovery, defendant's motion should be denied under Federal Rule of Civil Procedure 26(b)(1) ("Rule 26(b)(1)") alone.

## I.   <u>Background</u>

Although Baker respectfully requests the opportunity to submit a fuller briefing on the merits of defendant's motion to compel, certain factual assertions and legal arguments in defendant's letter brief require an immediate response.  In particular, defendant has painted a misleading picture of the FCA investigation at issue and the relevant steps in the FCA process.[2] Contrary to defendant's characterization, the FCA never initiated any "proceeding" against Mr. Iksil and the scope of its investigation was much broader than the allegations contained in this SEC enforcement action.

███████████████████████████████████████████████████████████ FSMA
Section 168 sets a low threshold for when the FCA may appoint investigators to review a matter, stating that investigators may be appointed if "it appears" to the FCA that "there are circumstances suggesting that," among other things, a regulatory offence or breach has occurred. (contained in Part 2 to Appendix A.)  In this case, the FCA appointed investigators to examine ███████████████████████████████████████████████████████████████████
██████████████████

Moreover, the FCA's investigation concerned a different regulatory regime and applied different legal standards than those at issue in this enforcement proceedings.  In particular, the FCA  investigated  whether ████████████████████████████████████████████████████████████████████████████████████████████████████ These standards of liability are markedly different than the SEC's burden of proof in this case, rendering the FCA's preliminary findings in the draft Warning Notice and the PIR, and Mr. Iksil's legal argument in response to the PIR, irrelevant to the parties' claims and defenses.

On July 3, 2013, the FCA, in connection with its investigation, conducted a compulsory interview of Mr. Iksil.  After the interview, the FCA and Mr. Iksil entered into "without prejudice" settlement discussions.  During the course of those discussions the FCA provided Mr. Iksil's U.K. counsel with a draft of a proposed Warning Notice that the FCA Enforcement Division would submit for consideration by the FCA Regulatory Decisions Committee in the event that, at the conclusion of the investigation, the FCA Enforcement Division recommended the initiation of enforcement proceedings against Mr. Iksil.  The draft Warning Notice contains a summary of potential allegations against Mr. Iksil and includes references to documents

---

[2] For the Court's convenience, the FCA's Enforcement Information Guide, which provides general guidance on the FCA's enforcement process, is attached as Part 1 to Appendix A.

The Honorable Andrew J. Peck
July 18, 2016
Page 4

JPMorgan produced to the FCA and to transcripts of interviews the FCA conducted of certain current and former JPMorgan employees (collectively, the "Confidential Information").  The settlement discussions concluded without any resolution of the FCA investigation.

On February 5, 2015, the FCA provided Mr. Iksil's U.K. counsel with the PIR and invited Mr. Iksil to submit a confidential brief in response  The factual allegations contained in the PIR are based upon the Confidential Information.  On March 6, 2015, Mr. Iksil's U.K. counsel submitted legal argument in opposition to the PIR, which also references Confidential Information.[3]

███████████████████████████████████████████████████████████

Contrary to the assertions in defendant's July 6 Letter Brief, the conclusion of the FCA's investigation of Mr. Iksil in this manner is neither a "noteworthy" nor "relevant" fact.  Defendant fails to mention in his letter brief that the FCA similarly discontinued its investigations of both defendants in this case without initiating any enforcement proceedings against them.  Moreover, as defendant is well aware, the U.S. Department of Justice and the SEC both investigated the facts and circumstances at issue in this case and declined to pursue any civil or criminal charges against Mr. Iksil (as opposed to the defendants).  Thus, the FCA's decision to end its investigation of Mr. Iksil without taking any further action provides no basis for defendant's requested discovery.

## II.   Defendant's Motion to Compel Should Be Denied

### A.   FSMA Section 348 Prohibits Disclosure of the BH FCA Documents

Defendant is not entitled to the discovery he seeks under the Subpoena.  First, FSMA Section 348(1) prohibits Baker from disclosing the BH FCA Documents absent the proper consents required under the statute.  This Court should defer to U.K. law and deny defendant's motion to compel the production of the BH FCA Documents.

FSMA Section 348(1) prohibits the disclosure of confidential information "by a primary recipient, or by any person obtaining the information directly or indirectly from a primary recipient, without the consent of the person from whom the primary recipient obtained the information and, if different, the person to whom it relates."  Financial Services and Markets Act, 2000, c. 8, § 348(1) (U.K.).  Information is "confidential" under FSMA Section 348(1) if it "relates to the business or other affairs of any person" or was received by the FCA for the purpose of discharging its function.  *Id.* at § 348(2).  Unauthorized disclosure of materials

---

[3] Baker also has in its possession ministerial-type communications between the FCA and Mr. Iksil's U.K. counsel, including correspondence related to scheduling Mr. Iksil's July 3, 2013 interview, cover emails from U.K. counsel to the FCA that attached edited call and chat transcripts for use at Mr. Iksil's interview (but not the attachments), and correspondence related to the timing and service of various documents such as the draft Warning Notice, the PIR, and Mr. Iksil's response to the PIR.  These documents are clearly not relevant to any of the claims or defenses in this case and defendant has not requested that Baker produce such documents in response to the Subpoena.

The Honorable Andrew J. Peck
July 18, 2016
Page 5

protected under FSMA Section 348(1) is a criminal offense under FSMA Section 352(1) (contained in Part 3 to Appendix A) and may result in imprisonment for up to two years and a fine. Financial Services and Markets Act, 2000, c. 8, § 352(2). Under U.K. law, FSMA Section 348's confidentiality requirements trump any conflicting obligation to disclose documents in other civil proceedings. *Tchenguiz v. Director of the Serious Fraud Office* [2014] 1 W.L.R. 1476, 1484 (Q.B.) (U.K.), contained in Part 4 to Appendix A.

The BH FCA Documents contain quotes from and references to the documents JPMorgan provided to the FCA and the transcripts of interviews the FCA conducted of certain current and former JPMorgan employees. These documents and transcripts are "confidential" and prohibited from disclosure under FSMA Section 348(1), absent consent by the source of the confidential information, JPMorgan and the interviewees.

Defendant misleadingly suggests in his July 6 Letter Brief that JPMorgan and the FCA have consented to the disclosure of the BH FCA Documents. In fact, in a letter dated May 10, 2016, counsel for JPMorgan clarified that it was not consenting to such disclosure by Baker to defendant. A copy of that May 10, 2016 letter and related correspondence is attached as Exhibit 3. Nor has the FCA ever consented to Baker's disclosure of the BH FCA Documents, despite the fact that its consent is irrelevant. Accordingly, FSMA Section 348(1) prohibits Baker from disclosing the BH FCA Documents.

Defendant's arguments against the applicability of FSMA Section 348(1) to the BH FCA Documents are spurious at best. Defendant argues that FSMA Section 348 is territorial in its application and does not apply to disclosure in the U.S. However, the FCA's disclosure of the draft Warning Notice and PIR to Mr. Iksil's U.K. counsel, and Mr. Iksil's submission of legal argument in opposition to the PIR, all occurred in the U.K. Defendant's citation to *Air-India v. Wiggins* [1980] 1 W.L.R. 815 (H.L.) (U.K.), which concerned conduct that happened entirely outside the U.K. under a different statute, the Diseases of Animals Act of 1950, is inapposite.

Defendant also argues that Baker is not prohibited from disclosing the BH FCA Documents under FSMA section 348(1) because the Confidential Information referenced in the BH FCA Documents was produced to the parties during discovery in this case. However, information is only exempted from the disclosure prohibitions of FSMA section 348(1) if the information (i) has been made available to the public or (ii) is "in the form of a summary or collection of information so framed that it is not possible to ascertain from it information relating to any particular person." Financial Services and Markets Act, 2000, c. 8, § 348(4) (U.K.). Information does not cease to be confidential under FSMA Section 348 merely because the person seeking disclosure of the information already has obtained it from another source.

Having established that production of the BH FCA Documents is prohibited under FSMA Section 348, the Court should defer to U.K. law and deny defendant's motion to compel non-party Baker to produce the BH FCA Documents. *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 158 (S.D.N.Y. 2011) (holding that an order compelling a non-party to produce documents in violation of foreign law should be imposed "only in extreme circumstances") (internal citations and quotations omitted); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116

The Honorable Andrew J. Peck
July 18, 2016
Page 6

F.R.D. 517, 529 (S.D.N.Y. 1987) (declining to order a Swiss non-party to produce certain documents that were protected by Swiss bank secrecy laws, finding "the reduced degree of importance of the requested discovery" to be "[m]ost important").

### B.     "Without Prejudice" Settlement Communications Between the FCA and Mr. Iksil are Protected From Disclosure Under U.K. Law

Mr. Iksil's U.K. counsel and the FCA engaged in "without prejudice" settlement negotiations in an effort to resolve the investigation. In that context, the FCA provided a draft of a proposed Warning Notice and exchanged correspondence with Mr. Iksil's U.K. counsel. Under U.K. law, documents arising from "without prejudice" communications with a U.K. regulatory agency in the course of a regulatory investigation are protected from disclosure in third-party proceedings unless the content of any negotiated finding is put at issue in those proceedings, which cannot be the case here as the FCA and Mr. Iksil ultimately did not reach a settlement. *See Prop. Alliance Group Ltd. v. The Royal Bank of Scotland Plc* [2016] 1 W.L.R. 361, 383 (U.K.), contained in Part 3 to Appendix A to July 6 Letter Brief. Accordingly, the Court should not compel production of these documents.

Defendant argues that the "without prejudice" protection over settlement communications between the FCA and an individual cannot be asserted in a subsequent case where neither the individual nor the FCA is a party. Defendant's position has no support under U.K. law and is contrary to the strong U.K. public policy in favor of maintaining confidentiality over "without prejudice" settlement communications. As the FCA states in its letter to the Court:

> Maintaining privilege (and therefore confidentiality) in without prejudice communications is of paramount importance to the FCA because the disclosure of without prejudice communications to third parties has the potential to undermine the FCA's settlement process, and as a consequence the FCA's ability to discharge its statutory operational objectives in which there is a wider public interest. The ability of the FCA to conduct settlement discussions on a without prejudice and confidential basis is vitally important to the success of settlement discussions.

(Ex. 1.) It follows that this strong U.K. public policy of protecting the FCA's settlement discussions with individuals under investigation applies in subsequent proceedings regardless of the identity of the parties involved.

Finally, defendant erroneously argues that any privilege attached to the settlement communications has been waived because Baker has not produced a privilege log. During several meet-and-confer conferences and in subsequent letter correspondence with defendant's counsel, Baker identified the withheld documents as a draft Warning Notice produced by the FCA to Mr. Iksil's U.K. counsel and certain correspondence between them in the context of settlement negotiations. Local Civil Rule 26.2(c) states, "when asserting privilege on the same

The Honorable Andrew J. Peck
July 18, 2016
Page 7

basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category." That is exactly what Baker did. A privilege log is unnecessary and unduly burdensome given the small amount of documents being withheld on the basis of the "without prejudice" privilege. However, Baker will provide one if the Court believes it is necessary to evaluate Baker's objection to the Subpoena.

## C.     The Subpoena Does Not Comply With Federal Rule of Civil Procedure 26(b)(1)

The Court need not even reach the foreign law reasons for denying defendant's motion to compel. Defendant's Subpoena also fails to comply with U.S. law as it seeks material that is not relevant to any party's claims or defenses and is disproportional to the needs of this case.

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 CIV.1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Under Rule 26(b)(1), the scope of discovery is defined as information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality entails several factors, including whether the burden of compliance outweighs the discovery's likely benefit.

Defendant has not shown that the BH FCA Documents and "without prejudice" settlement communications are relevant to the claims and defenses in this case. While defendant argues that "the underlying facts and alleged misconduct in [the FCA's investigation against Mr. Iksil] are the same as those in this case—the alleged mismarking of the SCP to hide losses in the first quarter of 2012," this is simply not the case. The FCA's factual investigation was ██████████ ████████████████ The specific U.K. regulatory offenses under investigation also differed from those at issue in this U.S. enforcement proceeding. Defendant has not demonstrated why he is entitled to information involving matters not relevant to this litigation.

It appears that defendant's primary basis for discovery of the BH FCA Documents and "without prejudice" settlement communications is that he believes that they are somehow relevant for cross-examination purposes. However, the scope of impeachment discovery is constrained by the same relevance standard under Rule 26(b)(1) applicable to any other discovery. *See, e.g.*, *Currie v. City of New York*, No. 10 CV 486 FB, 2012 WL 832256, at *2 (E.D.N.Y. Mar. 12, 2012) (noting that "[g]enerally, parties may utilize discovery to obtain information for impeachment purposes," but that "such discovery relating to a witness' credibility must be reasonably likely to lead to admissible evidence.") (internal citations and quotations omitted); *Hamilton v. Kerik*, No. 01CV6934GELHBP, 2002 WL 31834428, at *4 (S.D.N.Y. Dec. 17, 2002) (noting that "facts relevant to credibility are discoverable," but holding that plaintiff's interrogatory seeking documents regarding prior disciplinary incidents was overbroad in that it failed to distinguish between incidents relevant to credibility versus those that were not).

The Honorable Andrew J. Peck
July 18, 2016
Page 8

Defendant is not seeking any prior statements by Mr. Iksil or access to factual evidence that they have not already obtained that might bear on Mr. Iksil's credibility. Rather, they are seeking the legal arguments of Mr. Iksil's counsel and the preliminary views of a foreign regulatory investigation with regard to the application of certain facts to U.K. regulatory principles. Notably, these preliminary views were neither publicly adopted nor pursued by the regulator. The scope of discovery is not so broad as to require the production of a witness's prior legal arguments. *Cf. JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."). Nor can the provisional views of a foreign regulatory investigation, which were never adopted by the regulatory agency, be considered relevant to the credibility of a witness.

Nonsensically, defendant suggests that the BH FCA Documents and "without prejudice" settlement communications may yield evidence of Mr. Iksil's bias and motive to testify in a particular way due to his cooperation agreements with the SEC and DOJ. As defendant already possesses a transcript of Mr. Iksil's interview with the FCA he already knows what Mr. Iksil has told the FCA. Nevertheless, defendant suggests that somehow Mr. Iksil may have said something to the FCA that was inconsistent with his statements to the SEC and DOJ and speculates that these inconsistencies will be revealed by the BH FCA Documents.[4] Putting aside the fact that the inference that defendant would have this Court draw is outrageous and unfounded, it provides no basis for discovery of the PIR and draft Warning Notice, let alone the legal arguments of Mr. Iksil's counsel. *See Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 463 (S.D.N.Y. 1988) ("It would obviously be intolerable for the party seeking disclosure to embark on an examination of every statement ever made by a witness in the hope of unearthing a falsehood.").

Even if the discovery sought by defendant was relevant, it is disproportionate to the needs of this case. Defendant has already obtained in discovery (1) a transcript of Mr. Iksil's prior testimony to the FCA, (2) the other Confidential Information referenced in the BH FCA Documents, and (3) "dozens of lengthy recorded calls and chats" in which Mr. Iksil participated and several hundred emails and documents on which "his name appears" that were generated while he was employed at JPMorgan (see Letter from Bill Leone to Hon. George B. Daniels (May 20, 2016), ECF No. 126). Defendant will also have the opportunity to depose Mr. Iksil before trial in the U.S. and cross-examine him at trial should he be called as a witness. Defendant's assertion that there is some "veil of secrecy" around Mr. Iksil is absurd; he possesses volumes of material concerning Mr. Iksil's prior statements and conduct. On the other hand, Baker could be exposed to criminal sanctions in the U.K. for producing documents pursuant to the Subpoena. Defendant's need for the BH FCA Documents and "without prejudice" settlement communications is clearly outweighed by non-party Baker's burden of producing them. Defendant's motion to compel should be denied on this basis alone.

---

[4] To the extent that defendant questions why Mr. Iksil has not provided copies of the BH FCA Documents and "without prejudice" communications to the SEC and DOJ he need not speculate. Mr. Iksil is prohibited from disclosing these documents for the reasons set forth in this letter.

The Honorable Andrew J. Peck
July 18, 2016
Page 9

* * * * *

    Baker respectfully requests that the Court schedule this matter for a pre-motion conference as required by Local Civil Rule 37.2 at which time an appropriate briefing schedule may be set.  In the event the Court considers the merits of defendant's premature motion to compel, it should be denied for all of the reasons set forth above.

Respectfully submitted,

Jonathan B. New

Enclosures

cc:    All counsel of record (by ECF and email)